UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN FILUSH | : | NO.:  3:02CV1934 (SRU) |
| v. | : | |
| TOWN OF WESTON | : | NOVEMBER 25, 2003 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

The defendant, **TOWN OF WESTON**, hereby submits this Memorandum in Support of its Motion for Protective Order dated November 25, 2003, requesting that this Court issue an Order precluding the plaintiff from inquiring on the subject of discussions that occurred during Weston Police Commission executive sessions during his depositions of Commissioners Peter Ottomano, William J. Brady and Richard Saltz.

**I.    BACKGROUND:**

By way of Notices of Deposition dated November 13, 2003 and November 18, 2003, the plaintiff has noticed the depositions of Weston Police Commissioners Ottomano, Brady and Saltz.  (Copies attached hereto as **Exhibit A.**)

The plaintiff has represented through counsel that he intends to examine Commissioners Ottomano, Brady and Saltz concerning discussions that occurred during executive session of the Weston Police Commission.

## II.  LAW AND ARGUMENT:

### A.  The Material is Confidential Under Connecticut Law.

Fed. R. Civ. P. Rule 26(c) reads, in part:

"Upon motion by a party … from whom discovery is sought, … the court in which the action is pending … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had; …."

In the instant case, the plaintiff, upon information and belief, intends to examine Weston Police Commissioners Ottomano, Brady and Saltz, on the subject of discussions that occurred during Weston Police Commission executive sessions. At both common law and through statute, executive session discussions are ordinarily privileged. Black v. Southwestern Water Conserv., 74 P.3d 462 (Colo.App. 2003) (The privileges for attorney-client communication and attorney work product established by common law have been incorporated into the Open Records Act. Internal citations omitted)

"The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." Wilson v. Freedom of Information Comm'n, 181 Conn. 324, 328, 435 A.2d 353 (1980).  The general rule under the act is disclosure, subject to certain public policy exceptions.  Id. at 329.  As Representative Martin B. Burke, who sponsored the bill which was enacted, expressly stated on the floor of the House, the intent of the act 'is to make every public record and every public meeting open to the public at all times with certain specified exclusions.'"  18 H.R. Proc., Pt. 8, 1975 Sess., p. 3907.

Pursuant to Connecticut General Statute § 1-225 (a), "[t]he meetings of all public agencies, except executive sessions, as defined in subdivision (6) of section 1-200, shall be open to the public."  (Emphasis added.)  Connecticut General Statute § 1-200(6) defines "executive sessions" as "a meeting of a public agency at which the public is excluded for one or more of the following purposes:  (A) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting."

This subsection creates an exception from the Freedom of Information Act's open meeting provisions to permit a public agency to deliberate in executive session for purposes of discussion concerning the appointment of a public official.  Royce v. Freedom of Information Comm'n, 2001 Ct. Sup. 7389, Judicial District of New Britain,

(June 11, 2001, Owens, J.), citing, Board of Education v. Freedom of Information Commission, 213 Conn. 216 (1989).

    C.G.S. § 1-231(a) provides that "at an executive session of a public agency, attendance shall be limited to members of said body and persons invited by said body to present testimony or opinion pertinent to matters before said body provided that such persons' attendance shall be limited to the period for which their presence is necessary to present such testimony or opinion and, provided further, that the minutes of such executive session shall disclose all persons who are in attendance except job applicants who attend for the purpose of being interviewed by such agency." There is no dispute that the Police Commission discussed the suitability of the candidates in executive session and filled the vacancy in public session.

    The defendant submits that the content of the executive session discussions is privileged from discovery. In this case, the plaintiff seeks to examine the Police Commissioners concerning the confidential process of selecting a suitable candidate for promotion. This process entails private and confidential discussions regarding each candidate. Many of the candidates are known by the Commissioners and confidentiality is necessary to protect the integrity of the proceedings and the ability of the group to work with the unsuccessful applicant in the future. Occasionally sensitive issues are discussed which could include potentially embarrassing information regarding the candidates. The sanctity of the confidential nature of these

4

discussions is paramount to ensure not only unhindered discourse, but also to protect a candidate's privacy interests and reputation in the very small community of Weston.

The Connecticut legislature created an exception in the Freedom of Information Act, which specifically permits a public agency to deliberate in executive session for purposes of discussion concerning the appointment of a public official. C.G.S. § 1-200(6). By doing so, qualified candidates seeking government employ are encouraged to apply knowing that their privacy rights and reputations are protected. Correspondingly, confidentiality ensures that candid discussions in executive session will not be chilled by the prospect of discovery. Absent exceptionally compelling circumstances, the confidentiality of executive session should not be pierced.

    **B.**    **The information that is sought regarding the August 2002 promotion is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.**

The Collective Bargaining Agreement requires that the Police Commission make all appointments. Candidates for promotion must first successfully complete a written examination and an oral examination. The two portions of the examination are weighted equally. A value of seniority is also added to the score. The names of the three candidates with the highest scores are submitted to the Police Commission. See Collective Bargaining Agreement, attached as **Exhibit B**.

In 2002, Officer Filush was a candidate for promotion to the rank of Sergeant. He completed the written and oral examination and was ranked fourth among the candidates. See Candidate Promotion List, attached as **Exhibit C**. Therefore, Officer Filush's candidacy was not deliberated in executive session for purposes of discussion concerning the 2002 appointment of a police sergeant. For that reason, any inquiry into executive session discussions is wholly irrelevant to the case at hand and should be precluded.

    **C.**    **The information that is sought regarding the March 2000 promotion is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.**

In 2000, Officer Filush was a candidate for promotion to the rank of Sergeant. He completed the written and oral examination and was ranked second among the candidates. See Candidate Promotion List, attached as **Exhibit D**. As one of the top three candidates, Officer Filush's candidacy was discussed concerning the appointment of a police sergeant.

The defendant avers that the plaintiff should be prohibited from examining Commissioners Ottomano, Brady and Saltz, concerning executive session discussions relating to the selection of the candidate for appointment to the position of Sergeant in March 2000. The material the plaintiff seeks to elicit is both immaterial and irrelevant to the subject matter of this case. Fed.R.Civ.P. 26(b)(1) reads, in part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the time of trial if the discovery reasonably appears calculated to lead to the discovery of admissible evidence.

Secondly, Officer Filush was not discriminated against on the basis of his age as evidenced by the fact that Officer Mooney, who received the promotion, is five years older than the plaintiff[1]. Four out of five Police Commissioners have submitted sworn affidavits testifying to the fact that they have no personal knowledge of an age-biased remark being made by Chief Land. See attached Commissioner Affidavits, attached as **Exhibit E**.

Office Filush was not discriminated against on the basis of his disability.

Commissioner Goldberg[2] testified:

Q. Has the Commission ever discussed Officer Filush's claim of dyslexia?

A. The only thing the Commission ever discussed was there was a problem with one of the sergeant's exams in the past, and the Commission made reference to some extra time or after the fact that he required more time because of a problem, but it was never – the first time I ever heard of it discussed was when I read the charge – that's the first time I had any knowledge of what the disability was or the accommodations he requested that we make. I never heard anybody talk about it.

---

[1] Officer Terrence Mooney's date of birth is 9/25/48; John Filush's birthday is 10/20/53.
[2] Goldberg is a Commissioner closely affiliated with Union members, including Officer Filush. He has, on information and belief, disclosed much of the discussions to the Plaintiff already.

See deposition of Louis S. Goldberg, p. 192-93, attached as **Exhibit F**.[3]

      **D.**      **The information that is sought regarding the September 1990, December 1991 and September 1995 promotions is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.**

The plaintiff should be prohibited form examining Commissioners Ottomano, Brady and Saltz regarding Weston Police Commission executive session deliberations concerning the promotional appointments in September 1990, December 1991 and September 1995. Those discussions should be prohibited on the grounds that they are time barred and wholly irrelevant to the issues addressed in the complainant's charge. The plaintiff's claims of discrimination occurred more than 180 days prior to the plaintiff's filing of his discrimination claim with the State of Connecticut Commission on Human Rights and Opportunities and are, therefore, time-barred. The plaintiff's claims of discrimination brought pursuant to the Americans with Disabilities Act were dismissed on May 6, 2003.

In National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), the Court stated, "[a] discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days

---

[3] One or more other commissioners may testify that the accommodations was discussed. To the extent that the Court allows cross-examination on this limited topic, the record should be kept under seal in order to protect the confidentiality of the Commission's internal deliberations.

8

of the date of the act or lose the ability to recover for it."  In this case, the plaintiff filed his Affidavit of Illegal Discriminatory Practice with the Connecticut Commission on Human Rights & Opportunities on November 6, 2002.  See Affidavit of Illegal Discriminatory Practice, attached as **Exhibit G**.  Pursuant to Conn. Agencies Regs. § 46a-54-34a, a complaint must be filed within one hundred eighty (180) days after the alleged act of discrimination.  Therefore, any discriminatory act occurring prior to May 11, 2002 (one hundred eighty days before November 6, 2002) is not actionable and time barred.

This is not a hostile work environment continuing violation case.[4]  "Discrete acts such as termination, <u>failure to promote</u>, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice.""  <u>Id</u>. at 114 (emphasis added).

In 1990, 1991 and 1995 the plaintiff alleges that the defendant discriminated against him on the basis of his disability and age.  Regardless of the fact that the

---

[4] Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996).  ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993).

plaintiff was too young to have an actionable claim of age discriminating in 1990 or 1991, or that he was not diagnosed with dyslexia until January 2000[5], the plaintiff is unable to establish a prima facie case of disability discrimination[6].  See Report of Kimberly Sass, attached as **Exhibit H**.

The plaintiff is alleging discrete acts of discrimination surrounding promotional examinations.  Each alleged discriminatory act in 1990, 1991 and 1995 is not actionable because they did not take place within the timely filing period.  National Railroad Passenger Corporation v. Morgan, 536 U.S. at 114.

## III. CONCLUSION:

The plaintiff should be precluded from examining Commissioners Ottomano, Brady and Saltz concerning deliberations that took place in executive session.  The information sought is not relevant and will not have a reasonable tendency to show that Officer Filush's failure to achieve promotion was due to age or disability bias.

Based on the foregoing, the defendant in the above matter respectfully requests that this Court grant its motion for a protective order.

---

[5] The defendant emphatically denies that Officer Filush has any type of learning disorder, including dyslexia.

[6] The period of time for the plaintiff to disclose an expert, October 1, 2003, has long since passed.

DEFENDANT,
TOWN OF WESTON


By_____
   Martha A. Shaw [ct12855]
   Howd & Ludorf
   65 Wethersfield Avenue
   Hartford, CT  06114
   Phone:  (860) 249-1361
   Fax:  (860) 249-7665
   E-Mail:  mshaw@hl-law.com


## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 25th day of November, 2003.


Gary Phelan, Esquire
Klebanoff & Phelan, P.C.
Corporate Center West
433 South Main Street, Suite 117
West Hartford, CT  06110


   _____
   Martha A. Shaw