UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 DEC -8  P 2: 16

------------------------------------------------- X
JOHN FILUSH,                                     :   CIVIL ACTION NO.
                                                 :   3:02CV1934 (SRU)
                    Plaintiff,                   :
                                                 :
v.                                               :
                                                 :
TOWN OF WESTON,                                  :   DECEMBER 8, 2003
                                                 :
                    Defendant.                   :
------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

I.   **Introduction**

Conn. Gen. Stat. §1-213(b) provides, in relevant part, that

> Nothing in the Freedom of Information Act ["FOIA"] shall be deemed in any manner to: (1)...limit the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state....

After examining that statutory language in <u>Chief of Police, Hartford Police Department v. Freedom of Information Commission</u>, 252 Conn. 377, 746 A.2d 1264 (2000), the Connecticut Supreme Court held that "[t]he most plausible way to effect such an intention is to read the language as meaning that the two issues – disclosability under the [FOIA] and rights under discovery laws – are separate and independent of each other." <u>Id</u>. at 389.  Despite statutory language and case law that could not possibly be any clearer, the Town of Weston argues that the FOIA prohibits John Filush from conducting discovery related to Police Commissioners' executive sessions.

The defendant expands upon that futile argument by claiming that inquiry into the

executive sessions concerning the 1990, 1991, 1995, 2000 and 2002 promotions is "irrelevant and immaterial and not reasonably calculated to the discovery of admissible evidence." See Def. Memo of Law at 2, 5-6, 8. Police Chief Anthony Land told Police Commissioner Louis Goldberg before the August 6, 2002 meeting that morale would improve if the got "rid of the old guys." (Compl. ¶ 52). However, operating on an apparent "majority rule" foundation, because four Police Commissioners besides Commissioner Goldberg have submitted affidavits claiming they have no personal knowledge of any age-biased remarks made by Chief Land, the defendant claims the plaintiff – in an age discrimination case – cannot ask about what, if anything, may have been said in the executive sessions about age.

The defendant specious arguments should be rejected and its Motion for a Protective Order denied.[1]

## II.    The Defendant's Motion for Protective Order Should be Denied.

The defendant filed a Motion for Protective Order on November 25, 2003, requesting that this Court grant a Protective Order pursuant to Fed. R. Civ. P. 26(c) to preclude the plaintiff from examining the Town of Weston's Police Commissioners Peter Ottomano, William J. Brady and Richard Saltz ("Police Commissioners"). The defendant claims that the plaintiff should not be allowed to take the depositions of the Police Commissioners because: (1) the information sought is confidential under Connecticut's FOIA Law, and (2) the information sought regarding the 1995, 2000, and 2002 promotions is "irrelevant and immaterial and not reasonably calculated to the

---

[1] The plaintiff has informed defendant's counsel that he would agree that that inquiry into the Executive Sessions would be conducted pursuant to a Protective Order and, that the plaintiff will not inquire into the 1990 and 1991 promotion process.

2

discovery of admissible evidence." See Def. Memo of Law at 2, 5-6, 8.

Fed. R. Civ. P. 26(c) provides that a party may seek a protective order to narrow the scope of discovery or limit the discovery or dissemination of privileged or confidential materials. The court may make any order protecting a party or person from annoyance, embarrassment, oppression or undue burden or expense. Id.

The Second Circuit has held that "[t]he deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried out in the dark." The Official Committee of Unsecured Creditors of Hechinger Investment Co. of Delaware, Inc. v. Friedman, 2003 U.S. App. LEXIS 23749 at *10 (2nd Cir. 2003) (appeal of district court's order quashing deposition subpoena dismissed as moot) **(See attached Exhibit 1)**, quoting Schlagenhauf v. Holder, 379 U.S. 104, 114-15 (1964). The Second Circuit elaborated that, "the rules provide for the taking discovery, including by oral depositions, 'regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" Id., quoting Fed. R. Civ. P. 26(b)(1).

The defendant, as the party requesting the protective order, has the burden of demonstrating good cause. See Fed. R. Civ. Proc. 26(c); In re Agent Orange Product Liability Litigation, 821 F.2d 139, 145 (2d Cir.), cert. denied, 484 U.S. 953 (1987) (if good cause is not shown, discovery materials should not receive judicial protection).

A.   Filush is Seeking Information that is not Protected by Any Privilege

The defendant claims that Filush should not be allowed to take the depositions of the Police Commissioners because the plaintiff intends to examine the Police

3

Commissioners on the subject of discussions that occurred during Weston Police Commission Executive Sessions, claiming that "[a]t both common law and through statute, executive session discussions are ordinarily privileged." See Def. Memo of Law at 2.

The Connecticut Supreme Court has held that it is the duty of every witness to respond to a subpoena and, unless privileged, testify to factual matters relevant to a controversy. Town of Thomaston v. Ives, 156 Conn. 166, 172, 239 A.2d 515 (1968). While the defendant concocts an "executive session privilege," it has failed to provide even one Connecticut or Federal case law which has endorsed such a privilege. Instead, the defendant cites Black v. Southwestern Water Conservation District, 2003 Colo. App. LEXIS 698, 74 P.3d 462 (Colo. App. 2003) **(See attached Exhibit 2)**, noting that "[t]he attorney-client privilege is codified in Colorado by statute [the Open Records Act] and operates to protect communications between attorney and client relating to legal advice. Id. at *8. However, the Colorado Appellate Court merely affirmed the lower court's decision that a public agency need not disclose documents protected under the attorney-client privilege and did not expand the law in any way to apply a privilege to executive sessions which are confidential under the Colorado Open Records Act.[2]

The defendant is unable to point to a privilege that would prevent the plaintiff from taking of the Police Commissioners' depositions. Instead, it relies on the language of Connecticut's Freedom of Information Act, Conn. Gen. Stat. §1-200 et seq.,

---

[2]The plaintiff does not dispute the existence of the attorney-client privilege. The attorney-client privilege is well established in the common law and one of the earliest privileges recognized. See e.g., Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (citations omitted.) However, unlike the public agency in Black, the defendant has not claimed the attorney-client privilege as the basis for its protective order.

4

("Connecticut's FOIA"), as its proof that, because executive sessions need not be public, they are therefore "privileged from discovery." See Def. Memo of Law at 4.

Conn. Gen. Stat. § 1-225(a) does require that "[t]he meetings of all public agencies, except executive sessions, as defined in subdivision (6) of section 1-200, shall be open to the public." An "executive session" is defined as a "meeting of a public agency at which the public is excluded for one or more of the following purposes: (A) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting." Conn. Gen. Stat. § 1-200-(6).

The one case which the defendant cites as its support for its premise that a privilege applies to executive sessions is Royce v. Freedom of Information Commission, 2001 Conn. Super. LEXIS 1626 **(See attached Exhibit 3)**. The defendant correctly claims that the court held that a public agency may deliberate in executive session to discuss filling the vacancy of a public official. Id. at *6. However, the issue of whether a discussion in executive session is privileged under the Federal Rules of Civil Procedure was neither raised by the plaintiff, nor discussed by the Connecticut Superior Court in Royce.

No court in Connecticut, federal or state, has ever held that an "executive session privilege" exists. Rather, the Connecticut Supreme Court has held that the Connecticut FOIA and disclosure under the laws of discovery "are separate and independent of each other." Chief of Police, Hartford, Police Department v. Freedom of Information Commission, 252 Conn. 377, 388-89, 746 A.2d 1264 (2000) (court ruled that police affairs internal affairs investigation records had to be disclosed in discovery

5

proceedings in federal court after individual's requests under Connecticut FOIA requests and discovery requests in the U.S. District Court, District of Connecticut were denied). The Connecticut Supreme Court elaborated that "nothing in the [Connecticut FOIA] shall be deemed to limit the rights of litigants under the laws of discovery...." Id. at 389.

The United States Supreme Court has held that the federal Freedom of Information Act[3], 5 U.S.C. § 522, ("Federal FOIA"), "creates no privileges." Chamber of Commerce of the United States v. Legal Aid Society of Alameda County, 423 U.S. 1309, 1310-11 (1975); citing Verrazzano Trading Corp. v. United States, 349 F. Supp. 1401, 1403 (U.S. Custom Ct. 1972) (exemptions from federal FOIA's public information requirement does not create a privilege). As a result, trial courts have also declined to create a new privilege under the Federal FOIA in regards to the discovery process. See e.g., Consumers Union of United States, Inc. v. Veterans Administration, 301 F. Supp. 796, 806, (S.D.N.Y. 1969) (court compelled public agency to release hearing test records because they were not protected by privilege or Federal FOIA exception), *appeal dismissed*, 436 F.2d 1363 (2d Cir. 1971); Association for Women in Science v. Califano, 566 F.2d 339, 342, (D.C. Cir. 1977) (court held agency's forms not subject to discovery under the Federal Rules of Civil Procedure because of confidential report privilege applied); Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1343, (D.C. Cir. 1984) (reversed and remanded, reasoning that public agencies were not given sufficient time to present their privilege claims); Pleasant Hill Bank v. United

---

[3] The Connecticut Supreme Court has held that it is appropriate to look to the federal FOIA, for guidance in construing Connecticut's FOIA. Board of Trustees of Woodstock Academy v. Freedom of Information Commission, 181 Conn. 544, 553, 436 A.2d 266 (1980).

States, 1973 U.S. Dist. LEXIS 15273 at *5 (W.D. Mo. 1973) (government information that is exempt under the Federal Freedom of Information Act is not privileged without an additional showing that disclosure is contrary to the public interest) **(See attached Exhibit 4)**. As a result, courts have consistently held that neither the Connecticut FOIA nor the Federal FOIA create a privilege.

The United States Supreme Court has been reluctant to expand common law privileges. In University of Pennsylvania v. EEOC, 493 U.S. 182 (1990), the Court declined to extend the privilege to the University of Pennsylvania when it sought to claim a "peer review materials" privilege to protect against the disclosure of documents used the tenure process of its professors. Id. at 189. While the university claimed that a "'chilling effect' on candid evaluations and discussions of candidates [would] result," the quality of the peer evaluations would decline, and "[c]ompelling disclosure of materials 'also will result in divisiveness and tension, placing strain on faculty relations and impairing the free interchange of ideas that is a hallmark of academic freedom,'" Id. at 197, the Court reasoned that "[i]f there is a 'smoking gun' to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files," Id. at 193. The Supreme Court held that confidential material pertaining to other tenure candidates could demonstrate some pattern of discrimination and therefore, "[t]he peer material itself must be investigated to determine whether the evaluations are based in discrimination and whether they are reflected in the tenure decision." Id. (internal quotation omitted).

The Town of Weston's arguments mirror the University of Pennsylvania's in that the defendant is claiming the need for a privilege to protect the "confidential process of

7

selecting a suitable candidate for promotion" from the "chilling effect of discovery." See Def. Memo of Law at 5. The crux of the defendant's argument seeks to not only allow "unhindered discourse, but also to protect a candidate's privacy interests and reputation in the very small community of Weston." See Def. Memo of Law at 4-5. However, like the professor in <u>University of Pennsylvania</u>, Filush should be permitted to take the defendant Police Commissioners' oral testimony on any conversations related in any way to promotion decisions by the Police Commissioner. For example, it will also allow the plaintiff to ask the Police Commissioners if they overheard Chief Land's statements, in early August, 2002, prior to a Selectmen's meeting to discuss the issue of additional hiring that morale would improve if they got "rid of the old guys" and "some of the dinosaurs." (Compl. ¶¶ 52, 54). The plaintiff also alleges that during the Police Commissioners' monthly meeting, in response to Commissioner Goldberg's question to Chief Land asking why the plaintiff had not been selected in serving as the defendant's Field Training Officer, Chief Land told Commissioner Goldberg that the plaintiff was not interested in the position and subsequently stated, "You know his bad attitude." (Compl. ¶ 54).

The defendant's attempt to apply a non-existent privilege should be rejected and its motion for protective order should be denied.

    B.    <u>The Material Sought by the Plaintiff is Relevant and Reasonably Calculated to the Discovery of Admissible Evidence</u>

Fed. R. Civ. P. 26(b)(1) states, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party...For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

8

Although the Federal Rules of Civil Procedure do not directly define the term "relevant," the Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The district court, when considering a discovery dispute involving a contention that discovery requests seek information that is not "relevant," will have to determine whether the information requested relates to the claims and defenses asserted in the pleadings. Fed. R. Civ. P. 26(b)(1) Advisory Committee's note (2000).

Relevance for discovery purposes is broadly and liberally construed. See e.g., Herbert v. Lando, 441 U.S. 153, 177 (1979) ("deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials"); Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevance under Fed. R. Civ. P. 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"[4]); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (term "reasonably calculated" in the quoted provision means "any possibility that the information sought may be relevant to the subject matter of the action" (internal quotation omitted)).

---

[4] The 2000 amendments to Rule 26(b) now permit discovery regarding any unprivileged matter relevant to the "claim or defense" of any party, as opposed to permitting that discovery may be had on any unprivileged matter relevant to any issue that is or may be in the case. However, a broader interpretation still applies to discovery under the "relevant to the claim or defense" standard. See Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000). The district court may also, for good cause, order discovery of any matter relevant to the "subject matter involved in the action" – the standard of relevance prior to the 2000 amendments. Fed. R. Civ. Proc. 26(b)(1).

The District of Connecticut has drawn the same conclusion, holding that "[a]s a general proposition, the discovery rules contained in the Federal Rules of Civil Procedure are to be construed broadly." Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998).

The test of relevance for discovery purposes is broader than that applied to the admissibility of evidence at trial. Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 615 (2d Cir. 1964) (district court order that defendants produce tax documents was proper). See also Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (admissibility at trial is not standard for resolution of discovery disputes).

While the scope of pretrial discovery is broad, it must seek information that may bear on some issue that the district court will have to decide in the course of bringing the case to its ultimate conclusion. Oppenheimer Fund, Inc., 437 U.S. at 350-354.

The district court has a broad range of discretion to determine relevance. Herbert, 441 U.S. at 177 (district courts have power to restrict discovery when justice requires protection from annoyance, embarrassment, oppression, or undue burden or expense). However, "an order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable…" Investment Properties International, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972) (reversed district court's order preventing depositions).

Information is discoverable if it is relevant to the claims or defenses of any party and, therefore, inadmissibility at trial does not bar a discovery request. See Fed. R. Civ. P. 26(b)(1). See also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 29-30 (1984), quoting Fed. R. Civ. P. 26(b)(1) (court has discretion to grant a protective order in

overseeing the discovery process); <u>The Official Committee of Unsecured Creditors of Hechinger Investment Co. of Delaware, Inc.</u>, 2003 U.S. App. LEXIS at *10.

Inadmissible hearsay evidence is discoverable. See <u>Technograph, Inc. v. Texas Instruments, Inc.</u> 43 F.R.D. 416, 418 (S.D.N.Y. 1967) (deponent compelled to answer even though deponent had no personal knowledge); <u>Lowe's of Roanoke, Inc. v. Jefferson Standard Life Ins. Co.</u>, 219 F. Supp. 181, 190 (S.D.N.Y. 1963) (deponent directed to answer even though the responsive answer might draw upon hearsay statements).

Likewise, a strong public policy against the admission of evidence at trial is not a bar to discovery. See <u>McQuade v. Michael Gassner Mechanical & Electrical Contractors, Inc.</u>, 587 F. Supp. 1183, 1190 (D. Conn. 1984) (defendants permitted to discover contents of tapes even though contents were potentially excludable from evidence, and their disclosure punishable under federal statute).

While Fed. R. Civ. P. 26(b)(1) states that inadmissible evidence may be discovered, it requires that discovery appear "reasonably calculated to lead to the discovery of admissible evidence." The defendant has not offered any support of its bald assertion that the depositions of the Police Commissioners is not reasonably calculated to lead to the discovery of admissible evidence.

The plaintiff properly seeks the depositions of the Police Commissioners because he seeks material that is both relevant and reasonably calculated to the discovery of admissible evidence.

1. <u>Discussions in Executive Sessions may be Relevant to the Plaintiff's Claim that he was not Promoted to Sergeant in Retaliation Against him because he Sought an Accommodation</u>

Filush believed he had a learning disability and sought accommodations for his learning disability before both the 2000 and 2002 promotional exams. (Compl. ¶¶28-55). Filush claims that the defendant retaliated against him because he sought an accommodation in violation of Title VII of the ADA, 42 U.S.C. §12203, and Conn. Gen. Stat. §46a-60(a)(4). (Compl. ¶¶75-77, 88-90). Therefore, the question of whether retaliation played any role in the 2000 and 2002 promotional process was a factor in that process is certainly relevant. However, the defendant claims Filush does not have a prima facie case because he could not show he has a "disability," as defined by the Americans with Disabilities Act ("ADA) and Section 504 of the Federal Rehabilitation Act of 1973 ("Section 504"). Even if the defendant succeeds in its argument that Filush does not have a "disability," he can still maintain a retaliation claim under the ADA. See <u>Sarno v. Douglas-Elliman-Gibbons-Ives, Inc.</u>, 183 F.3d 155, 159-60 (2d Cir. 1999). See also, <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 190-91 (3rd Cir. 2003).

2. <u>The Information that the Plaintiff Seeks Regarding the 1995, 2000, and 2002 Promotions is Relevant and Reasonably Calculated to the Discovery of Admissible Evidence because he has Alleged a Pattern of Undue Influence in the Promotion Process.</u>

Filush has alleged that Chief Land manipulated the promotional process against Filush as part of his discriminatory scheme. (Compl. ¶¶14-15, 25, 37, 56).

According to Article XXVI of the Town of Weston and Weston Police Local #1493 and Council #15, AFSCME, AFL-CIO Collective Bargaining Agreement ("Collective Bargaining Agreement"), "[a]ppointments to the rank of Sergeant and/or the position of Detective shall be made by the Police Commission." See Collective Bargaining

Agreement, **attached as Exhibit 5**.

On July 10, 2002, the then Chairman of the defendant's Police Commission, Police Commissioner Ottomano, sent a memorandum to the defendant's Police Commissioners and Chief Land. **(See attached Exhibit 6)**. In his memorandum, Police Commissioner Ottomano stated:

> By statute (§ 7-276) we are elected to have general management and supervision of the police department...and of the property and equipment...make all needful regulations for the government thereof...prescribe suitable penalties...including suspension or removal from office of any officer...power of appointment, <u>promotion</u> and removal of the officers... (emphasis added).
>
> As a commission, we are not doing our jobs if we routinely defer to the chief on all issues under the guise of letting him run the department. That would make our jobs easy, but eliminate our statutory purpose." **(See attached Exhibit 6)**.

The plaintiff alleges that although he has qualified four times for promotional consideration, the Police Commission, in violation of the Collective Bargaining Agreement and its statutory authority, has allowed Chief Land to exert influence over the defendant's promotion process. (Compl. ¶ 62). As support for his allegations, the plaintiff asserts that the defendant's Police Commission has enabled this manipulation of the defendant's promotion process by allowing Chief Land to: (1) choose the panel members for the oral portion of the promotional examinations (Compl. ¶ 14);(2) attend the panel members' adjustment of the promotion candidates' scores during the 1995 Sergeant's exam (Compl. ¶ 25); (3) attend the Police Commission's selection process during the 2000 Sergeant's exam (Compl. ¶ 37); and (4) attend the oral portion of the 2002 Sergeant's exam (Compl. ¶ 56).

Apparently recognizing the substantial influence Chief Land had over the

defendant's promotional process, Police Commissioner Ottomano sent a memorandum to the defendant's Police Commissioners on May 3, 2002, suggesting six new procedures in the Candidate Interview Procedure. **(See attached Exhibit 7)**. And, on June 4, 2002, the defendant's Police Commissioners considered its hiring and promotion procedures and voted all in favor to approve the new procedures[5]. (Compl. ¶ 42). See Police Commission Minutes, June 4, 2002, attached **as Exhibit 8**.

When the plaintiff asked "[w]hy on or about June 4, 2002, the Town of Weston Board of Police Commissioners considered its hiring/promotion procedures and approved new procedures..." in its written interrogatories, the defendant merely stated, "[t]he defendant lacks first hand knowledge on why a member of the Police Commission promulgated a change to its hiring/promotion procedures." Def. Response to Plaintiff's Interrogatory 24, dated February 28, 2003. **(See attached Exhibit 9)**. The defendant's lack of knowledge illustrates why deposing the Police Commissioners is relevant and reasonably calculated to lead to the discovery of admissible evidence. The plaintiff would like to ask the Police Commissioners about any knowledge that they may have about his claim that the Police Commission had allowed Chief Land to influence the defendant's promotion process during any of the promotional exams. Police Commissioner Ottomano drafted the memorandum suggesting that the promotion procedures be changed and, Police Commissioners Brady, Ottomano, and Saltz voted in favor of adopting the change. The plaintiff should be allowed to inquire what the

---

[5] The six procedures approved were to: (1) disseminate and review applications/resumes of each candidate prior to the day of the interviews; (2) interview each candidate in the presence of the full Commission with the same members asking the same questions for uniformity; (3) hold comments on the candidates until the deliberation period following all the interviews; (4) acquire the recommendation of the Chief, including his rankings of the candidates; (5) enter into executive session to deliberate on the ranking of the top three candidates, achieving at least 2/3 consensus; and (6) come out of the executive session to announce the rankings. (Compl. ¶ 42).

14

reasons were behind that change.

3. <u>The Information Filush Seeks Regarding the 2000 and 2002 Promotions is Relevant and Reasonably Calculated to the Discovery of Admissible Evidence because he has Alleged Unlawful Discrimination in the Promotion Process Based, in Part, on his Learning Disability.</u>

Filush alleges that the defendant failed to accommodate his disability and denied him the ability to be promoted to Sergeant in 2000 and 2002, in part, due to unlawful discrimination on the basis of his learning disability (Compl. ¶¶ 71, 73-74, 78-79, 83, 87, 89-90).[6]

On January 6, 2000, the plaintiff disclosed his learning disability to Chief Land and requested testing accommodations for the 2000 Sergeant's exam. (Compl. ¶ 28). Although the plaintiff ranked second among the top three for consideration for promotion to Sergeant, the Police Commission, with Chief Land sitting in, chose another officer for the position. (Compl. ¶ 37). On July 24, 2002, the plaintiff requested testing accommodations for the 2002 Sergeant's exam. (Compl. ¶ 51). The plaintiff was not considered by the Police Commission for promotion to Sergeant because he was ranked fourth and only the top three were considered for promotion. (Compl. ¶ 51). However, on August 13, 2002, Chief Land had instructed one of the panel members for the oral portion of the Sergeant's exam to ask "some questions dealing with the areas of technical knowledge of the tasks assigned to the 'Staff Support' sergeant" and had given the officer, who was ultimately promoted, special assignments similar to the duties of a "Staff Support" sergeant such as upgrading the computer systems and authoring a procedure and paperwork guide. (Compl. ¶¶ 55, 57).

---

[6] Filush is not precluded during discovery from asking questions about whether his learning disability was a factor in the defendant's promotional decisions regardless of whether the expert witness hired by the defendant believes he has a learning disability.

15

The depositions of the Police Commissioners are relevant and reasonably calculated to lead to the discovery of admissible evidence because, even if the Police Commission did not consider the plaintiff as eligible for the Sergeant's position in 2002 when it considered the top three candidates, because as Police Commissioner Ottomano has stated, the Police Commission, by statute, is responsible for the promotion of officers. **(See attached Exhibit 6)**. The depositions of Police Commissioners Brady, Ottomano, and Saltz are highly relevant in that the plaintiff should be allowed to discover if they were aware of his learning disability or any discussions about his learning disability, including his requests for testing accommodations.

4. <u>The Information that the Plaintiff Seeks Regarding the 2000 and 2002 Promotions is Relevant and Reasonably Calculated to the Discovery of Admissible Evidence because he has Alleged Unlawful Discrimination in the Promotion Process Based, in Part, on his Age.</u>

The plaintiff alleges that the defendant denied him the ability to be promoted to Sergeant in 2000 and 2002, in part, due to unlawful discrimination on the basis of his age (Compl. ¶¶ 81-82, 92-93).

In early August 2002, prior to a Selectmen's meeting in which the issue of additional hiring for the Weston Police Department would be discussed, there was a discussion between Chief Land and the Commission members about the morale problem in the Police Department. (Compl. ¶ 52). Chief Land told Police Commissioner Lou Goldberg, in the presence of Police Commissioners Peter Ottomano, William Brady, and Richard Saltz that morale would improve if they got "rid of the old guys" and "some of the dinosaurs." (Compl. ¶ 52).

The plaintiff needs to inquire further into the substance and detail of the

16

conversation, in particular, because he has claimed that he has been subjected to unlawful discrimination, due in part, to his age. Accordingly, the taking of the Police Commissioners' depositions would provide relevant material that is reasonably calculated to lead to the discovery of admissible evidence.

## III. CONCLUSION

For all the foregoing reasons, the plaintiff requests that this Court deny the defendant's motion for protective order.

THE PLAINTIFF,
JOHN FILUSH

By_____

Gary Phelan (CT 03670)
Tanya Wolanic (CT 24252)
Gary Phelan, L.L.C.
433 South Main Street, Suite 117
West Hartford, CT 06110

## CERTIFICATION OF SERVICE

I certify that a copy of the foregoing was mailed first-class, postage prepaid on December 8, 2003 to:

Michael Rose, Esq.
Martha A. Shaw, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114-1190

_/s/ Tanya Wolanic_
Tanya Wolanic