```
                              FILED
                         2004 MAR 30  A 8:46
                         U.S. DISTRICT COURT
                         BRIDGEPORT, CONN
```

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN FILUSH | CIVIL ACTION NO. |
| PLAINTIFF, | 3:02CV1934(SRU) |
| v. | |
| TOWN OF WESTON | |
| DEFENDANT. | March 19, 2004 |

## THIRD AMENDED COMPLAINT

Plaintiff, John Filush, by and through his undersigned attorney, alleges and states as follows:

**PRELIMINARY STATEMENT**

1.    The plaintiff, John Filush, a police officer employed by the Town of Weston, is filing this lawsuit against the defendant, the Town of Weston, to recover lost wages and benefits, compensatory damages, punitive damages and attorney's fees and costs as a result of the defendant's unlawful disability and age discrimination, retaliation against him, and its disclosure of confidential medical information.

**JURISDICTION AND VENUE**

2.  Jurisdiction is conferred upon this court because this action raises a federal question under the Age Discrimination in Employment Act, 29 U.S.C. §§621-34 ("ADEA").

3.  Venue in this district is proper, as the parties both reside in Connecticut and the unlawful employment practices took place in Connecticut.

4.  The plaintiff timely filed his administrative discrimination claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). The CHRO issued him a release of jurisdiction on June 9, 2003 which he received on June 10, 2003. The EEOC issued a Notice of Right to Sue on August 11, 2003.

5.  This amended complaint has been filed within 90 days of the date the plaintiff received the CHRO's Release of Jurisdiction and the EEOC's Notice of Right to Sue, respectively.

**PARTIES**

6.  The plaintiff, John Filush, is a United States citizen residing in Fairfield, Connecticut. He is employed as a police officer with the Town of Weston Police Department. He is 49 years of age.

7.  The defendant, the Town of Weston, is a municipal corporation which provides a variety of public services, including police services, and is located at 56 Norfield Road, Weston, Connecticut 06883. The defendant is an "employer" as defined by the Connecticut Fair Employment Practices Act, 46a-51 et. seq. ("CFEPA"), and an "employer," as defined by the ADEA.

**FACTS**

8. The plaintiff began working for the defendant on February 12, 1978 as a police officer.

9. The plaintiff was diagnosed with a learning disability known as dyslexia in January 2000. The plaintiff's visual memory skills are also impaired. The plaintiff experiences a diminished ability to rapidly execute any written task and requires extended time in all standardized testing situations.

10. At all relevant times, the plaintiff had a chronic impairment.

11. The plaintiff sent a confidential memorandum to the Chief of Police, Anthony P. Land, stating that he had a condition that he believed entitled him to certain testing accommodations.

12. Article XXVI Promotions, Section 2 of the union contract between the plaintiff's union, Weston Police Local #1493 and Council #15, AFSCME, AFL-CIO, and the Town of Weston states that candidates "for promotion who successfully complete the written examination shall appear before the oral board chosen by the Police Commission which shall be constituted of three (3) professional police officers of at least one (1) rank higher than the rank being filled and who are residents of Connecticut and neither work or reside within ten (10) miles of the Town of Weston. . . . Such oral panel shall give numerical markings which shall be averaged out amongst those scoring and added to the applicants score . . . ." Candidates written portion of their exam is weighted 50% and the oral portion is weighted 50%. Section 5 states that the "three (3) individuals with the highest number of points shall be considered for appointment to the position of Sergeant or Detective . . . ."

13. On April 16, 1990, the defendant hired Chief Land.

14. The union contract states that the Police Commission (the "Commission") is responsible for choosing panel members for the oral portion of the examinations. The Commission, however, authorized Chief Land to choose the panel members for the oral portion of the promotional examinations. Chief Land regularly chooses his own acquaintances for the panel and attends the Commission's interview of candidates after the oral portion of the exam. Chief Land is also present for the adjustment of the candidates' scores.

15. On or about September 11, 1990, the plaintiff took the Sergeant's exam administered by the defendant. The plaintiff's scores on the combined written and oral portions of the promotional exam placed him among the top three candidates to be considered for the promotion. Chief Land did not attend the oral portion of the exam, but attended the Commission's interview process.

16. The plaintiff was not chosen for the position of Sergeant in 1990. After the administration of this exam, the plaintiff was told by Chief Land that "some people wear their union hats too tight."

17. On or about December 18, 1991, the plaintiff took the Detective's exam administered by the defendant. Seven police officers took the Detective's exam and the plaintiff's scores on the combined written and oral portions of the promotional exam placed him second among the top three candidates for consideration. Chief Land did not attend the oral portion of the exam, but attended the Commission interview process.

18. The plaintiff was not chosen for the position of Detective in 1991. After this exam, Chief Land said to the plaintiff that he should "shave [his] mustache, buy new glasses, and lose weight."

19. On or about January 2, 1992, the plaintiff filed a grievance with regard to the 1991 Detective's examination. The plaintiff objected to the Commission's right to hold interviews for the position of detective after the written and oral portions of the exam were completed by the candidates. The plaintiff's grievance stated that the "second oral" was in conflict with the provisions of Article XXVI, Section 3 of the union contract.

20. On or about February 4, 1992, the plaintiff received a letter from the Chairman of the Board of Police Commissioners, Norman L. Perry. Mr. Perry stated that he did not concur with the plaintiff's January 1992 grievance.

21. On or about February 19, 1992, the Commission held a hearing to consider the plaintiff's January 1992 grievance. The Commission voted unanimously to deny the plaintiff's grievance.

22. On or about March 24, 1994, the plaintiff requested information from Chief Land regarding the questions and oral board members for the December 18, 1991 Detective's exam. During the 1991 Detective's exam, the plaintiff had protested two questions asked. One question concerned community activities and the other was a hypothetical question, which did not fit into the defendant's operations. At the time of the 1991 Detective's exam, the plaintiff also objected to a second oral examination by the defendant before the final selection was made.

23.    On or about March 28, 1994, Chief Land provided the plaintiff with information concerning the oral board members for the December 18, 1991 Detective's exam.

24.    On or about April 19, 1994, an agreement was entered into between the defendant and Council #15, AFSCME, AFL-CIO. The agreement provided that in the event of an appeal of any portion of the promotional exam administered by the defendant, the appeal must be resolved before candidates for promotion can proceed to the next step of the promotional process.

25.    On or about September 14, 1995, the plaintiff took the Sergeant's exam administered by the defendant. The plaintiff's scores on the combined written and oral portions of the promotional exam placed him among the top three candidates for consideration. Chief Land attended when the panel members adjusted the candidates' scores.

26.    The plaintiff was not chosen for the position of Sergeant in 1995.

27.    After the 1995 exam, it was revealed that one of the panel members selected by Chief Land, Chief Daniel Coppinger, knew or recognized one of the applicants, Officer Michael Ferullo. Chief Coppinger, however, failed to remove himself from the panel, as required under Article XXVI, Section 2 of the union contract. As a result, Chief Coppinger's scores were removed from the applicants' scores, in accordance with an agreement entered into on or about October 24, 1995 between Local 2693 and the Town of Weston. Chief Land sent a letter to the President of Local 2693, Officer Dann McInnis, reiterating that the agreement was "for the purpose of eliminating any grievance in regard to the oral portion of the exam process." Officer

January 25, 2000. Chief Land stated that the plaintiff would be allowed 50% more time to answer the questions than the other candidates. Chief Land indicated that he took this action in spite of Dr. Kruger's assertion that he had not been able to perform a thorough assessment and that additional tests were necessary to accurately determine the nature and extent of "any disability" the plaintiff may have.

35. On or about March 20, 2000, the plaintiff sent Chief Land a departmental message indicating that while he was in the patrol office on March 19, 2000, a fellow officer, Officer Peter Ward, questioned the plaintiff about the time extension granted to him for the Sergeant's exam. The plaintiff indicated in this message that Officer Ward also questioned him about the total amount of time available to the plaintiff for the test and what condition did the plaintiff have which allowed him the additional time. The plaintiff stated that he asked Officer Ward where he obtained the information concerning his disability and Officer Ward refused to reveal his source. The plaintiff also stated that Officer Ward commented that he understood that the plaintiff must be "laying the ground work." Based on the incident in the patrol office, the plaintiff requested a meeting with the Town of Weston's ADA representative. The plaintiff also requested that Chief Land's office conduct an investigation to determine how the plaintiff's confidential disability-related information was obtained by Officer Ward and that he be provided a copy of the report. The defendant, however, never conducted any investigation into the matter.

36. On or about March 22, 2000, the plaintiff took the Sergeant's exam administered by the defendant. The defendant allowed the plaintiff one additional hour to complete the exam. Chief Land asked the plaintiff to arrive a half hour early to the

test site to discuss his accommodations with the exam proctor, Mrs. Davey, but she was late. During the exam, Mrs. Davey placed a large clock on the plaintiff's desk to indicate his special time allotment. Six individuals took the exam.

37. The plaintiff ranked second among the top three for consideration for the March 2000 Sergeant's exam. Chief Land did not attend the oral portion of the exam, but sat in the Commission's selection process. Another officer, Officer Terry Mooney, was selected for the position of Sergeant.

38. After the March 2000 Sergeant's exam, Chief Land asked the plaintiff if he would be interested in serving as the Department Training Officer. The Department Training Officer position was typically a patrol officer's duty. Although the plaintiff expressed an interest in assuming the position, Chief Land reorganized the duties of Sergeant and gave the responsibility to Sergeant Terry Mooney.

39. On or about January 25, 2002, the plaintiff sent a departmental message to Chief Land requesting that he serve as a member of the oral board interviewing applicants for the position of Police Officer. The plaintiff made this request because other officers, Officer Mooney and Officer Daubert, had been allowed to sit on previous boards.

40. The plaintiff was not selected to serve as a member for the oral board interviewing candidates for the position of Police Officer because Chief Land indicated that it would not be fair to allow the plaintiff to sit upon the board because Chief Land had received many requests.

41. Chief Land chose his son, Anthony Land, Jr., to sit on the panel for the oral portion of the 2002 Weston Entrance exam for new police hires. The plaintiff

worker at all academic tasks. Dr. Kruger stated that the plaintiff had two children with learning disabilities and that learning disabilities are usually hereditary. At this time, Dr. Kruger was unable to perform a thorough assessment, but stated that the plaintiff's reading recognition skills were in the very low average range which suggested to him that the plaintiff had a learning disability known as dyslexia. Dr. Kruger also stated that the plaintiff's visual memory skills were impaired and that this deficit would slow down the plaintiff's performance on any written task requiring rapid execution. Dr. Kruger suggested that the plaintiff was at a clear disadvantage on any standardized examination to other candidates who were not disabled. Dr. Kruger indicated that a reasonable accommodation for the plaintiff's disability would have to include being provided extended time on examinations.

32.   After receiving information from Dr. Kruger concerning the plaintiff's disability, Chief Land said "you're too smart to have a disability" to the plaintiff.

33.   On or about February 2, 2000, Chief Land sent a memorandum to the plaintiff indicating that the defendant would like to re-schedule the Sergeant's exam. Chief Land also stated that the defendant would like to address the plaintiff's request for accommodations under the ADA, but the defendant would need additional information from Dr. Kruger. Specifically, the defendant needed to know the nature of the plaintiff's disability and the specific amount of time the plaintiff required to take the written exam.

34.   On or about February 29, 2000, Chief Land wrote a memorandum to the plaintiff confirming the terms under which the plaintiff would take the Sergeant's examination scheduled for March 22, 2000. Chief Land indicated that he spoke with Dr. Kruger and that Dr. Kruger clarified some of his recommendations in his letter dated

objected to Chief Land using his son in choosing new hires for the defendant because Chief Land's son lacked adequate experience. Chief Land's son only had one to two years experience as a police officer for the Town of Easton.

42.     At a Commission meeting held on June 4, 2002, the Commission considered its hiring/promotion procedures. The procedures presented before the Commission were approved by a unanimous vote. The six procedures approved were to: (1) disseminate and review applications/resumes of each candidate prior to the day of the interviews; (2) interview each candidate in the presence of the full Commission with the same members asking the same questions for uniformity; (3) hold comments on the candidates until the deliberation period following all the interviews; (4) acquire the recommendation of the Chief, including his rankings of the candidates; (5) enter into executive session to deliberate on the ranking of the top three candidates, achieving at least 2/3 consensus; and (6) come out of the executive session to announce the rankings.

43.     On or about June 10, 2002, Chief Land sent a memorandum to all officers indicating that the written portion of the Sergeant's exam would be held on July 30, 2002. He requested that all officers who wanted to take the exam should submit a memo to him by June 24, 2002. Chief Land attached to the memorandum the reading list, the written test outline, and the list of general orders on which questions would be asked.

44.     On or about June 14, 2002, Chief Land sent a memorandum to all officers indicating the date of the Sergeant's exam was changed to August 6, 2002.

45. On or about June 15, 2002, the plaintiff filed a grievance indicating that the Commission released a memorandum "Candidate Interview Procedure" on or about June 4, 2002 and that the six procedures to be followed were in violation of Article XXVI of the union contract regarding promotions.

46. On or about June 17, 2002, Chief Land sent a letter to the plaintiff asking for clarification on how the "Candidate Interview Procedure" violated the union contract.

47. On or about June 27, 2002, the plaintiff responded to Chief Land's request for clarification. The plaintiff stated in a memorandum to Chief Land that Article XXVI of the contract had no provision requiring a resume, did not require the full Commission to interview each candidate, did not require ranking of candidates by the Chief, and did not require 2/3 of the Commission to agree on the top three candidates.

48. On or about June 27, 2002, the plaintiff's grievance was submitted to the Commission.

49. On or about June 30, 2002, the plaintiff sent a departmental message to Chief Land indicating that the Chief's office provided study skills materials to officers for the Sergeant's vacancy. The plaintiff requested that the same materials be provided to him.

50. On or about July 3, 2002, Chief Land replied that the only study material he gave anyone was the same study guide disk he loaned the plaintiff for over a year. Chief Land had requested the return of the study guide disk from the plaintiff prior to the exam announcement and stated in his memorandum that he thought the plaintiff "had more than [his] share."

51. On or about July 24, 2002, the plaintiff sent a letter to Chief Land requesting testing accommodations for the Sergeant's exam held on or about August 6, 2002. The plaintiff indicated in his letter that he believed he was entitled to similar testing accommodations that had been previously extended to him. Chief Land did not respond to the plaintiff's request.

52. In early August 2002, a Selectmen's meeting was held to discuss the issue of additional hiring for the Weston Police Department. Prior to the meeting, there was a discussion between Chief Land and the Commission members about the morale problem in the Police Department. Chief Land told Police Commissioner Lou Goldberg that morale would improve if they got "rid of the old guys" and "some of the dinosaurs."

53. On August 6, 2002, the plaintiff took the written portion of the Sergeant's exam administered by the defendant. The defendant allowed the plaintiff one additional hour to complete the exam.

54. On or about the evening of August 6, 2002, the Commission held its monthly meeting. At this meeting, Commissioner Goldberg asked Chief Land about Officer Filush and the Field Training Officer position. Chief Land told Commissioner Goldberg that the plaintiff was not interested in the position and subsequently stated, "You know his bad attitude."

55. On August 13, 2002, Chief Land sent a letter to Lieutenant Mark Grecco regarding the oral portion of the Sergeant's exam which was to be held on August 29, 2002. Chief Land indicated in his letter that the new sergeant for consideration would be assigned as a "Staff Support" function. Chief Land told Lieutenant Grecco to ask, in addition to supervisory questions, "some questions dealing with the areas of technical

knowledge of the tasks assigned to the 'Staff Support' sergeant." Chief Land also indicated in his letter to Lieutenant Grecco that he would like to measure the candidate's long-term commitment and problem solving ability. Chief Land stated that "in-depth" follow up questions would be appropriate. Chief Land did not send similar letters to the other panel members for the August 29, 2002 oral portion of the Sergeant's exam.

56. Chief Land attended the oral portion of the August 2002 exam because the Commission no longer allowed Chief Land to attend the last selection phase. The plaintiff's combined written and oral scores ranked him overall as fourth. The plaintiff did not place in the top three, so he was not considered for Sergeant.

57. Officer Patrick Daubert was chosen to assume the position of Sergeant upon completion of the August 2002 exam. Prior to the August 2002 Sergeant exam, Officer Daubert had been given special assignments by Chief Land similar to the duties of a "Staff Support" sergeant such as upgrading the computer systems and authoring a procedure and paperwork guide. The majority of the questions for the oral portion of the August 2002 Sergeant's exam focused on technology and implementing policies and procedures.

58. After the August 2002 exam, the plaintiff was told by Chief Land that he received lower scores for the oral portion of the exam because he was "less than truthful" on his resume. Chief Land said that the plaintiff listed an incomplete master's program on his resume. The plaintiff told Chief Land that he merely wanted to demonstrate to the panel that he had an interest in continuing education and that he had been accepted into a program prior to his service with the Weston Police Department.

59. On or about September 20, 2002, Officer Dann McInnis, pursuant to the Municipal Employee Relations Act, requested copies of the written materials relating to the candidates' scores in the written and oral portions of the August 2002 promotional exam that both he and the plaintiff took.

60. On or about September 23, 2002, Chief Land responded to Officer McInnis' request by providing him with the panelists' notes from the oral portion of the exam. Chief Land stated that his personal notes would not be provided unless Officer McInnis explained the relevance and necessity of the request for purposes of collective bargaining or contract administration. Chief Land also denied in his letter knowledge of whether any correspondence occurred between the Police Commission and the oral panelists with regard to the exam.

61. On or about October 1, 2002, the Commission met and denied the plaintiff's grievance that was filed on June 15, 2002 regarding the Commission's "Candidate Review Process" by a vote of six to one.

62. The plaintiff performs well on the written portion of the exams with additional time and was the only officer who qualified four times for promotional consideration. However, the defendant, in general, and Chief Land, in particular, has manipulated the oral portion of the examinations to prevent the plaintiff from being promoted. The defendant has allowed Chief Land to be present during Commission interviews, as well as oral portions of the examinations for Sergeant. Chief Land has been allowed to indicate his choices and rankings of the candidates and exert influence over the overall scoring of candidates and the selection of questions for the oral portion of the exam to favor his desired candidate..

63.  The plaintiff has been denied the ability to be promoted, in part, due to his learning disability.

64.  The defendant's actions set forth above were intentional.

65.  As a result of the defendant's refusal to promote him to Sergeant, the plaintiff has lost wages and suffered emotional pain and suffering.

**LEGAL CLAIMS**

**FIRST COUNT – ADEA**

66.  Paragraphs 1-65 are incorporated by reference the same as if fully pled in this Second Count.

67.  The defendant subjected the plaintiff to adverse terms and conditions of employment, including, but not limited to, not promoting him to Sergeant, manipulating the application process for the Sergeant's exam, and refusing to accommodate his learning disability because of his age.

68.  The defendant's action violates the ADEA.

**SECOND COUNT – CONN. GEN. STAT. §46a-60(a)(1)**

69.  Paragraphs 1-65 are incorporated by reference the same as if fully pled in this Third Count.

70.  The plaintiff's learning disability is a chronic impairment.

71.  The defendant failed to keep confidential the plaintiff's medical records.

72.  The defendant violated Conn. Gen. Stat. §46a-60(a)(1) by discriminating against him because of his disability.

**THIRD COUNT – CONN. GEN. STAT. §46a-60(a)(4)**

73. Paragraphs 1-65 are incorporated by reference the same as if fully pled in this Fourth Count.

74. The defendant retaliated against the plaintiff by denying him a fair opportunity for promotion because he, in good faith, requested reasonable accommodations for his learning disability.

75. The defendant's action violates Conn. Gen. Stat. §46a-60(a)(4).

**FOURTH COUNT – CONN. GEN. STAT. §46a-60(a)(1)**

76. Paragraphs 1-65 are incorporated by reference the same as if fully pled in this Fifth Count.

77. The defendant subjected the plaintiff to adverse terms and conditions of employment, including, but not limited to, not promoting him to Sergeant, manipulating the application for the Sergeant's exam, and refusing to accommodate his learning disability because of his age.

78. The defendant's action violates Conn. Gen. Stat. §46a-60(a)(1).

**WHEREFORE,** the plaintiff requests that this Court exercise jurisdiction over his claim and award:

(1) Lost wages and benefits, with interest;

(2) Compensatory damages for physical and emotional distress and loss of enjoyment of life;

(3) Punitive damages;

(4) Liquidated damages;

(5) An order prohibiting the defendant from continuing to manipulate the oral portion of the promotional exams for Sergeant;

(6) Costs and expenses of this action, including reasonable attorney's fees;

(7) Such additional equitable and legal relief as is proper and just.

THE PLAINTIFF,

JOHN FILUSH

By: *[signature]*
Gary Phelan, Esq.
(CT03670)
Gary Phelan, L.L.C.
Corporate Center West
433 South Main Street,
Suite 117
West Hartford, CT 06110
(860) 313-5005