UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN FILUSH | : | NO.: 3:02CV1934 (SRU) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF WESTON | : | APRIL 5, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), the defendant, **TOWN OF WESTON**, submits

the following memorandum of law in support of its Motion for Summary Judgment

dated April 5, 2004.

## STATEMENT OF FACTS

Plaintiff is presently, and has been for the past 26 years, employed by the

Town of Weston ("Town") as a Police Officer.  See Plaintiff's deposition attached

hereto as **Exhibit A**, p. 15.  The plaintiff alleges:

- In 1990, when plaintiff was 36, he took the Sergeant's examination, scored third and was not promoted.   (Roy Hill, who scored second and was 38 at the time, was promoted.)  See 1990 Sergeant's Eligibility List and Exam Scoring, attached hereto as **Exhibit B**; Responses/Objections to Plaintiff's First Set of Interrogatories and Request for Production dated January 3, 2003, pp. 15-16, attached hereto as **Exhibit C**; Third Amended Complaint, ¶¶ 6, 16, 17.

- In 1991, when plaintiff was 38, he took the Detective's examination, scored second and was not promoted.  (Carl Filsinger, who was 44 at the time and the top scorer, was promoted.)  See 1991 Sergeant's Eligibility List and Exam

Scoring, attached hereto as **Exhibit D**; Third Amended Complaint, ¶¶ 6, 17, 18; **Exhibit C**, pp. 15-16.

- In 1995, when plaintiff was 42, he took the Sergeant's examination, scored third and was not promoted. (Mike Ferullo, who was 33 at the time and the top scorer, was promoted.) See Sergeant's Eligibility List and Exam Scoring, attached hereto as **Exhibit E**; Third Amended Complaint, ¶¶ 6, 25, 26; **Exhibit C**, pp. 15-16.

- In 2000, when plaintiff was 46, he took the Sergeant's examination placed second and was not promoted. (Terry Mooney, who was 52 at the time and the top scorer, was promoted.) See Sergeant's Eligibility List and Exam Scoring, attached hereto as **Exhibit F**; Third Amended Complaint, ¶¶ 36, 37; **Exhibit A**, p. 52; **Exhibit C**, pp. 15-16.

- In 2002, when plaintiff was 48, he took the Sergeant's examination placed fourth and was not promoted. (Patrick Daubert, who was 37 at the time and the top scorer, was promoted.) See Sergeant's Eligibility List and Exam Scoring, attached hereto as **Exhibit G**; Third Amended Complaint, ¶¶ 53, 53, 56; **Exhibit A**, p. 48-49; **Exhibit C**, pp. 15-16.

A prerequisite for promotion is the successful completion of a promotional examination. The promotional examination consists of an oral and a written component, with each section given equal weight. See Town of Weston and Weston Police Local #11493 and Council # 15, AFSCME, ALF-CIO ("Collective Bargaining Agreement"), pp. 27-28, attached hereto as **Exhibit H**. A quarter (1/4) point is added to the final combined written and oral score for each full year of service. Id. The Weston Police Commission ("Commission") considers the three candidates with the highest number of points for appointment to the position of Sergeant or Detective. Id.

Plaintiff asserts that he has not been promoted because the Town unlawfully discriminated against him because of his age.  <u>See</u> Third Amended Complaint, ¶¶ 1, 70.  The plaintiff alleges four comments made by Chief Land in support of this contention:

1. In approximately 1991-1993, Chief Land allegedly said to Commissioner Goldberg "they're the old guys…they're the Young Turks".  <u>See</u> deposition transcript of Louis Goldberg, attached as **Exhibit I**, pp. 92-93.

2. Land commented on age-related facts at a Board of Finance meeting in February 2002.  <u>See</u> deposition transcript of Chief Land, attached as **Exhibit J**, pp. 4-7.

3. In August 2002, Chief Land allegedly told Commissioner Goldberg that morale would improve if they got "rid of the old guys" and "some of the dinosaurs."  <u>See</u> Third Amended Complaint, ¶ 52.

4. In August 2002, Chief Land allegedly said he did not want old guys training new guys.  <u>See</u> Affidavit of Louis Goldberg attached hereto as **Exhibit K**, ¶ 9.

Additionally, the plaintiff contends that:

- Chief Land allegedly manipulated the 2002 oral examination by being present during the oral examination and exerting influence over the overall scoring of candidates and selecting the questions for the oral examination.  <u>See</u> Third Amended Complaint, ¶ 62.

- Chief Land made recommendations to the Commission regarding his ranking of the candidates.  <u>See</u> Third Amended Complaint, ¶ 62.

- Chief Land manipulated the application process for the Sergeant's examination.  <u>See</u> Third Amended Complaint, ¶ 70.

3

On August 1, 2002, a group of Police Commissioners were scheduled to attend a Board of Selectman's meeting to request authorization to hire an additional patrol officer.  See deposition transcript of Commissioner Peter Ottomano, p. 12, attached as **Exhibit L**; **Exhibit J**, pp. 20-23.  While waiting for the Selectman's meeting to begin, Commissioner Ottomano took the opportunity to report back on the meeting with Officer Brodacki.  See **Exhibit L**, p. 13.  Commissioner Ottomano met with Officer Brodacki because the Commissioners had been advised that Officer Brodacki was unhappy.  See **Exhibit L**, p. 13.  Officer Brodacki related an example of hazing.  See **Exhibit L**, p. 13.

During the ensuing discussion, Chief Land purportedly said, "if you want to improve morale, get rid of the old guys and hire young ones."  See Third Amended Complaint, ¶ 52; **Exhibit I**, pp. 62, 86.  Chief Land attested that he did not make the remark, that what he said was "the way to cure a hazing problem is to discipline the employee, including fire them."  **Exhibit J**, pp. 21-22.  Significantly, Goldberg conceded that any alleged new/old comment could have referred to plaintiff's seniority as opposed to his age. **Exhibit I**, p. 208.  The Commissioner's present during the discussion unanimously admitted that they had no recollection of Chief Land making an age-biased comment.  **Exhibit L**, pp. 15-16; see deposition transcript of William Brady attached as **Exhibit M**, pp. 11-12, 15; **Exhibit N**, p. 8,

Affidavits of Commissioners Saltz, Ottomano, Brady and Gralnick attached hereto as **Exhibit O**.

On January 6, 2000, plaintiff sent a memorandum to Chief Land stating that he believed he had a condition that entitled him to testing accommodations pursuant to ADA.  <u>See</u> January 6, 2000 memorandum from plaintiff to Chief Land, attached hereto as **Exhibit P**.  On July 25, 2000, Dr. Robert Kruger, sent a letter to Chief Land indicating that the plaintiff's reading recognition skills were "suggestive" of dyslexia and the plaintiff is entitled to testing accommodations under the ADA.  <u>See</u> January 25, 2000 letter from Dr. Kruger to Chief Land, attached hereto as **Exhibit Q**.

The plaintiff alleges that beginning in 2000, the Town began discriminating against him on the basis of his disability in the following ways:

- On March 19, 2000, Officer Ward asked the plaintiff why he was allowed to have additional time to take the Sergeant's examination.  The plaintiff claims his confidentiality was breached with respect to his disability related information.  <u>See</u> Third Amended Complaint, ¶ 35; March 19, 2000, Departmental Message from plaintiff to Chief Land, attached hereto as **Exhibit R**.

- The plaintiff alleges he was discriminated against because he was not allowed to speak with the testing company directly.  **Exhibit A**, pp. 55-56.

- In 2000, the plaintiff expressed an interest in the Department Training Officer position, but the position was given to Sergeant Mooney.  Third Amended Complaint, ¶ 38.

- On January 25, 2002, the plaintiff requested to sit on the oral panel for patrol officers, but the plaintiff was not selected. Third Amended Complaint, ¶¶ 39, 40.  (The plaintiff, along with a number of other officers, asked to sit on the oral panel for entry-level officers.  No one with officer rank from inside the Weston Police Department sat on the panel.  Since Chief Land could not accommodate all officers who made the request, only officers from outside the department were selected.  See **Exhibit C**, p. 20.)

- The defendant retaliated against the plaintiff by denying him promotion because he requested accommodations for his learning disability.  Third Amended Complaint, ¶ 77.

The Plaintiff was examined on October 15-16, 2003, by Kimberlee J. Sass, Ph., a neuropsychologist, with respect to the plaintiff's claim of dyslexia.  Dr. Sass provided a comprehensive 37-page report detailing his findings, methodology and the plaintiff's history.  See Neuropsychological Consultation Summary, attached hereto as **Exhibit S**.  Dr. Sass found that the plaintiff does not have a learning disorder and that "no accommodations to promotional testing are necessary to ensure that this officer has a reasonable chance to compete fairly with other candidates for advancement."  Id. p. 37.  The plaintiff testified that his dyslexia has not limited his ability to work in any manner.  See **Exhibit A**, p. 34.

In January 2000, the plaintiff requested testing accommodations and the Town requested medical documentation from his healthcare provider explaining the nature of the plaintiff's disabilities and an explanation of the accommodation needed.  See

Third Amended Complaint, ¶¶ 26 and 27, **Exhibit P**; January 7, 2000 Memorandum from Chief Land to plaintiff, attached hereto as **Exhibit T**.

After receiving Dr. Kruger's report, Chief Land requested additional information from Dr. Kruger, specifically with respect to the nature of the plaintiff's disability and the amount of time needed for the plaintiff to fairly compete for the position.  See February 2, 2000 Memorandum from Chief Land to plaintiff, attached hereto as **Exhibit U**.  On February 16, 2000, Chief Land spoke with Dr. Kruger and it was agreed that the plaintiff would be given 50% more time to take the test than the other candidates.  See Chief Land's memorandum to file, attached hereto as **Exhibit V**; Third Amended Complaint, ¶ 32.  On February 29, 2000, Chief Land sent a Memorandum to the plaintiff confirming he would be given 50% more time to take the written examination.  See February 29, 2000 Memorandum from Chief Land to plaintiff, attached hereto as **Exhibit W**.

When asked if he believed he wasn't promoted in 2000 because he was disabled, the plaintiff responded, "I don't know why I was not promoted."  See **Exhibit A**, p. 57.

The plaintiff also claims the Town disclosed confidential medical information to Officer Peter Ward in March 2000, which related to his purported disability in violation of Conn. Gen. Stat. § 46a-60(a)(1).  See Third Amended Complaint, ¶¶ 71-72; March 19, 2000 Departmental Message from plaintiff to Land attached hereto as **Exhibit R**.

Chief Land investigated plaintiff's complaint and found that plaintiff was the source of information getting out.  See Chief Land's investigation of Plaintiff's March 19, 2002 complaint attached hereto as **Exhibit X**.  When questioned about whether or not he had a discussion with Officer McInnis in the locker room about his disability claim, the plaintiff testified he recalled mentioning that he had dyslexia to Officer McInnis in the locker room.  See **Exhibit A**, pp. 73-75.

The plaintiff is a member of the collective bargaining unit.  See **Exhibit A**, p. 16.  He held a leadership role with the union for approximately 22 years.  See **Exhibit A**, p. 22.  He was president of the union for ten years.  See **Exhibit A**, p. 18. The plaintiff does not believe Chief Land should be able to indicate his rankings of the candidates to the Police Commission because it is not stated that he can do so in the collective bargaining agreement.  **Exhibit A**, pp. 57-58.  Historically, the Commission asks Chief Land what the candidates' strengths and weaknesses are. **Exhibit J**, p. 41.

Chief Land sat in the room during the oral examination for the first time in 2002.  **Exhibit J**, p. 42.  He did not sit in while the oral panel deliberated on scoring the candidates.  **Exhibit J**, p. 43.  The plaintiff believes Chief Land violated the Collective Bargaining Agreement when Chief Land sat in on the oral examination in 2002 because it is not stated that he can do so in the collective bargaining agreement.  **Exhibit A** at pp. 84-87.

The plaintiff testified that he did not believe Chief Land manipulated his score in any way on the 1990 examination.  **Exhibit A**, p. 102.  The plaintiff testified that he had no firsthand knowledge that Chief Land manipulated his score on the 1991 examination.  **Exhibit A**, p. 112.

The plaintiff taped Chief Land without his knowledge while Chief Land was reviewing the plaintiff's work performance.  **Exhibit A**, pp. 105-06.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rules of Civil Procedure 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A "material fact" is one whose resolution will affect the ultimate determination of the case.  Id.  In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However "the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1986); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Assoc., Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. Equimark Commercial Fin. Co. v. C.I.T. Fin. Serv. Corp., 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such

10

evidence must be presented in a manner consistent with its admissibility at trial.  See,

First Nat'l Bank of Clinton, Ill. v. Insurance Co. of N. America, 606 F.2d 760 (7th Cir.

1979) (in ruling on summary judgment motion, the district court properly relied on

documents and exhibits identified by affidavit).  Unsworn statements of the parties,

letters addressed to litigants from third persons, and hearsay which does not fall

under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of

Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398

U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Sec. Serv., Inc.,

854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp.,

1 F.R.D. 720 (S.D.N.Y. 1941).

## LAW AND ARGUMENT

The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits

discrimination on the basis of age against an individual aged 40 or older "with respect

to his compensation, terms, conditions, or privileges of employment."  29 U.S.C.

§§ 623(a)(1), 631(a).

To establish a claim under the ADEA, a plaintiff-employee must show that

"the protected trait (under the ADEA, age) actually motivated the employer's

decision" - that is, the employee's protected trait must have "actually played a role in

[the employer's decision-making] process and had a determinative influence on the

11

outcome." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000)

(quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993)); <u>Renz v. Grey</u>

<u>Advertising, Inc.</u>, 135 F.3d 217, 222 (2d Cir. 1997).

There are two methods of proving such intentional discrimination:

(1) through direct evidence of age discrimination, or (2) more commonly, though the

indirect, burden-shifting approach articulated by the Supreme Court in <u>McDonnell</u>

<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  In order to establish a <u>prima</u>

<u>facie</u> case in a failure-to-promote context, the plaintiff must show that:  1) he belongs

to a protected class, 2) he applied for and was qualified for the position sought, 3) he

was rejected for that position, and 4) the employer granted the promotion to someone

outside of the protected group who was not better qualified than the plaintiff.  <u>See</u>,

e.g., <u>Johnson v. Nordstrom, Inc.</u>, 260 F.3d 727, 732 (7th Cir. 2001), <u>cert</u>. <u>denied</u>, 122

S.Ct. 1299 (2002).

## I.    PLAINTIFF'S EVIDENCE FAILS TO WITHSTAND SUMMARY JUDGMENT UNDER THE DIRECT EVIDENCE STANDARD.

In order to survive summary judgment, a plaintiff must produce either:

(1) "direct evidence" of discriminatory animus, or (2) circumstantial evidence from

which the jury will determine what inferences can be drawn from that evidence.

<u>Ostrowski v. Atlantic Mutual Insurance Companies</u>, 968 F.2d 171, 180,181-82 (2d

Cir. 1992) (<u>quoting</u>, <u>Tyler v. Bethlehem Steel Corp.</u>, 958 F.2d 1176, 1186 (2d Cir.),

cert. denied, 506 U.S. 826 (1992)). However, a jury cannot infer discrimination from thin air.  See Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).  Plaintiff's evidence fails as a matter of law in both respects.

> **A.      Plaintiff Has No Direct Evidence Of Discrimination.**

Courts have frequently pointed out that "direct" evidence rarely exists in employment discrimination cases.  Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ("the entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by.)  "Direct evidence" normally contemplates only those "`statements by a decision-maker that directly reflect the alleged animus and bear squarely on the contested employment decision.'"  Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.2d 30, 35 (1st Cir. 2001) (quoting, Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60-61 (1st Cir. 2000)) (emphasis added).

In the present case, the plaintiff has failed to produce any evidence that he was told he was not promoted because of his age.  Significantly, the plaintiff testified that he did not believe he was discriminated against on the basis of his age with respect to the 1990, 1991, or 2000 Sergeant's examination.  See **Exhibit A**, pp. 101, 109-10, 54.  Moreover, the record is completely bereft of any other evidence that could establish directly, without reliance upon inference or presumption, that plaintiff was not promoted for unlawful reasons.

13

**B.    The Alleged Statement That Morale Would Improve If They Got "Rid Of The Old Guys" And "Some Of The Dinosaurs"[1] Did Not Constitute Direct Evidence Of Age Discrimination.**

Plaintiff has identified *only one* purported discriminatory statement relating to the Town of Weston's hiring process: the remark purportedly made by Land and only heard by Commissioner Goldberg. The statement was allegedly: "if you want to improve morale, get rid of the old guys and hire young ones." See Third Amended Complaint, ¶ 52; **Exhibit I**, pp. 62, 86. The other Police Commissioners present at the time uniformly testified that Chief Land made no discriminatory remark at any time. See Affidavits of Commissioners Ottomano, Brady, Saltz and Gralnick attached as **Exhibit O**. Plaintiff willingly ignores the testimony of four Commissioners present in favor of a different Commissioner's recollection of the alleged remark. In any case, the alleged remark, "if you want to improve morale, get rid of the old guys and hire young ones" neither is direct evidence of discrimination nor is relevant in any way to this case, for three independent reasons.

First, several federal courts have expressly rejected the phrase "out with the old, in with the new", which Chief Land's purported statement is akin to. Courts have rejected the phrase as evidence of age discrimination because such a remark, even when uttered contemporaneously with a termination, has nothing to do with age.

14

Much has been made of the comment of Edwin Brondo who at the time of Plaintiff's termination stated, "out with the old, in with the new." This comment does not constitute a factual issue giving rise to a <u>prima</u> <u>facie</u> case. This colloquial expression is not an age-related utterance. Corporate turnover is a common, if unfortunate event, and "sweeping out the old for the new" does not constitute a basis for an age-discrimination case."

<u>Welch v. First Albany Corp.</u>, 1999 WL 1069525, at *1 (N.D.N.Y. 1999). <u>See</u>

**Exhibit Y**. Similarly, in <u>Vogel v. Travelers Ins. Co.</u>, 1994 WL 474871 (4th Cir. 1994),

the Fourth Circuit was unmoved by a manager's alleged comment that the defendant

wanted a new look, "kind of like 'out with the old and in with the new,'" because that

evidence "refers to isolated comments of questionable probative value which do not

give rise to the level necessary to establish a <u>prima</u> <u>facie</u> case of age discrimination."

<u>Id</u>. at *3.[2]  <u>See</u> **Exhibit Z**.

Second, the alleged remark on August 6, 2002 cannot constitute direct

evidence because it has no temporal proximity to Chief Land's June 10, 2002

announcement of a vacancy in the rank of Sergeant. It has no proximity to plaintiff's

---

[1] Commissioner Goldberg testified that that he did not hear Chief Land say anything about dinosaurs. <u>See</u> **Exhibit I**, p. 62.
[2] That no inference of age bias can be drawn from Chief Land's alleged remark is particularly apparent in light of other record evidence. Chief Land attested that he did not make the remark, that what he said was the way to cure a hazing problem is to discipline the employee, including fire them. See Affidavit of Chief Land attached as **Exhibit CC**, pp. 21-22. Significantly, Goldberg conceded that Land's dislike of plaintiff may have nothing to do with the plaintiff's age and that the alleged comment may have referred to plaintiff's seniority as opposed to his age. **Exhibit I**, pp. 90, 208. The Commissioner's who were present unanimously admitted that they had no

June 15, 2002 "notice of interest", nor the September 11, 2002 Promotional List in which plaintiff did not place in the top three.  <u>See</u> June 10, 2002 vacancy announcement attached as **Exhibit AA**, June 15, 2002 department message from Chief Land to Filush attached as **Exhibit BB, and Exhibit G**.  Similar periods have been held not to be sufficiently contemporaneous to constitute direct evidence.  <u>See</u> <u>Markel v. Board of Regents</u>, 276 F.3d 906, 910 (7th Cir. 2002) (holding that statements made two months before termination were not contemporaneous, and therefore did not constitute circumstantial evidence under the direct method of proof); <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999) ("unless the termination is <u>very closely</u> connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."); <u>Nelson v. J.C. Penney Co.</u>, 75 F.3d 343, 346-47 (8th Cir.) (holding that plaintiff fired one month after he filed age-discrimination charge failed to establish causal link without more evidence than temporal proximity), <u>cert</u>. <u>denied</u>, 519 U.S. 813 (1996).

        Third, even if the alleged remark somehow could be interpreted to have <u>both</u> ageist underpinnings <u>and</u> a temporal connection to plaintiff's failure to place in the top three, the remark is, at best, an isolated comment by a non-decision-maker.  It is undisputed that the Police Commission makes appointments to the rank of Sergeant.

recollection of Chief Land making the comment.  **Exhibit M**, p. 15-16; **Exhibit S**, pp. 11-12, 15; **Exhibit T**, p. 8.

See **Exhibit H**, pp. 27-28.  Chief Land was not a member of the Police Commission.

See **Exhibit I**, p. 43.  Chief Land does not have the authority to promote an officer to

Sergeant.  See **Exhibit H**, pp. 27-28, **Exhibit CC**, ¶ 14.  Furthermore, it is

uncontroverted that Chief Land never directed anyone to utilize age as a factor to

determine whether an employee should be promoted and never even spoke with the

Commission about what decisions they should make.  See **Exhibit A**, pp.93-94;

**Exhibit L**, pp. 6-11; **Exhibit J**, pp. 39-46 **Exhibit CC**, ¶ 6; **Exhibit I**, pp. 44-46;

**Exhibit M**, pp. 18-19; **Exhibit N**, pp.11-14.  Thus, Chief Land's remark is totally

irrelevant.  Woroski v. Nashua Corporation, 31 F.3d 105, 109-10 (2d Cir. 1994)

(evidence of stray discriminatory remarks by employer insufficient to withstand

properly supported motion for summary judgment).  See also, Danzer v. Norden Sys.

Inc., 151 F.3d 50, 56 (2d Cir. 1998) (citing, Woroski for the proposition that "stray

remarks, even if made by a decision-maker, do not constitute sufficient evidence to

make out a case of employment discrimination").

      Chief Land, who is 56 years old and experienced in management and

leadership roles in criminal justice, simply responded to a question regarding hazing

and harassment.  See **Exhibit CC**, ¶ 1, **Exhibit J**, pp. 21-22; **Exhibit L**, pp. 14-15.

Plaintiff has produced no evidence that Chief Land either recommended or

suggested that the Police Commission should base their promotional decision based

on age or any other unlawful criteria.  Rather, the plaintiff conceded he had no

personal knowledge of any ageist comments.  <u>See</u> **Exhibit A**, pp. 121-123.

    Q.  Do you recall anyone making a comment to you about being a dinosaur?
    A.  I don't remember the exact date or time or person.
    Q.  Do you recall the comment being made?
    A.  It is possible that the comment was made.
    Q.  But you don't recall who made the comment?
    A.  No.
    Q.  You don't remember when the comment was made?
    A.  No.
    Q.  And do you know if the comment was made to you?
    A.  Again, without knowing who, when or I just possibly was in the area when a comment like that was made.
    Q.  But you have no firsthand knowledge--
    A.  I don't recall.
    Q.  --of the comment.  Why do you think age played a role in the fact that you haven't been promoted?
    A.  Again, I don't know.
    Q.  Do you think age has played a role in the fact that you haven't been promoted?
    A.  As I previously answered, I'm not certain what played factors in what and why I haven't been promoted and the answer is I don't know.
    Q.  Do you think age has played a role in the fact that you have not been promoted?
    A.  Again, I don't know.

For all these reasons, the alleged remark, "if you want to improve morale, get

rid of the old guys and hire young ones" does not constitute direct or other evidence

of age discrimination.

**C.    Other Alleged Remarks And Incidents Cited By The Plaintiff Do Not Constitute Direct Evidence.**

In a hopeless quest to find direct evidence, plaintiff relies on a spattering of completely irrelevant, alleged comments and incidents which have neither a temporal nor a causal connection to plaintiff's failure to place among the top three candidates for promotion in 2002.

For example, Plaintiff asserts that Chief Land commented on age-related facts at a Board of Finance meeting in February 2002.  Specifically, the plaintiff alleges that during a discussion regarding the costs of overtime and budget projections, Land stated that the average age of Weston police officers is in the forties.  See **Exhibit J**, pp. 4-7.  Such a comment is not direct evidence of discrimination.  See **Exhibit J**, pp. 4-7.

> The ADEA does not prohibit an employer from acting out of concern for excessive costs, even if they arise from age-related facts – such as that employees with long seniority command a higher salary and benefits expensive than new hires.

Woroski v. Nashua Corp., 31 F.3d 105, fn. 2 (2d Cir. 1994), citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 1705-07 (1993) (holding that ADEA does not prohibit employers from acting out of concern for cost, even if cost arises from age-related facts).  Moreover, Plaintiff produced no evidence that Land's comments were contemporaneous in time or causally linked to Plaintiff's application for promotion,

while Land's own testimony about the context of the alleged statements refutes any ageist underpinnings.  See **Exhibit J**, pp. 4-7.

With respect to the alleged statement that Chief Land did not want the "old guys to train the young guys," this statement did not constitute direct evidence of age discrimination.  Commissioner Goldberg stated in his affidavit dated March 28, 2003, that Land commented during the August 6, 2002 Commission meeting that he did not want the "old guys" to train the "young guys" in the department.  See **Exhibit K**. Goldberg testified he hadn't the "faintest idea" if Plaintiff's age was a factor in Plaintiff not being assigned the Field Training Officer position.  See **Exhibit I**, pp. 154-55. Goldberg also testified:

> A.    And the other thing is that I think you asked me somewhere along the line did I ever hear the Chief make an old guy comment about John Filush…. [H]e might have said it again when the issue of the field training officer came up, but <u>I wouldn't swear to that</u>.  I have it in my head that there was a comment made like that, but I can't say that with 100 percent certainty.

<u>Id</u>. at 106 (emphasis added).

Even Plaintiff admits he never formally requested assignment as a Field Training Officer and wasn't sure if he wanted the assignment if it didn't provide for overtime compensation.  See **Exhibit A**, pp. 63-66, 70-73.  Chief Land testified that Plaintiff told him he was not interested in the Field Training Officer position.  See **Exhibit J**, pp. 53-57.  Moreover, any temporal or causal connection between the

alleged statement and the 2002 Promotional Examination is lacking.  <u>See</u> **Exhibit A**, pp. 63-66, 70-73.

With respect to the alleged statement "they're the old guys…they're the Young Turks," this temporally remote remark attributed to Land who had no role whatsoever in the selection of the top three candidates, cannot be used as evidence of age discrimination because it is barred by the statute of limitations.

A prerequisite to commencing an ADEA action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant. 29 U.S.C. § 626(d); <u>Terry v. Ashcroft</u>, 336 F.3d 128, 151 (2d Cir. 2003).  A person claiming to be aggrieved by an unlawful employment practice must file a complaint with the appropriate state administrative agency within 180 days of the alleged discriminatory act.  <u>See</u>, Conn. Gen. Stat. § 46a-82(e).  An employee has 300 days to file a complaint with the EEOC for claims brought under federal law.  These time limits are mandatory.  <u>See</u>, <u>Francis v. City of New York</u>, 235 F.3d 763, 768 (2d Cir. 2000).

Therefore, any discriminatory act that occurred more than 180 days before the plaintiff filed his discrimination charge with the Connecticut Commission on Human Rights and Opportunities is not actionable.  <u>See</u>, <u>Martin v. Kroger Co.</u>, 65 F. Supp.2d 516, 548 (S.D. Tex. 1999).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful

employment practice,'" and must occur within the 180 or 300 day time period.
National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002).

    The plaintiff filed a discrimination charge with the Connecticut Commission on
Human Rights and Opportunities ("CHRO") on November 6, 2002 alleging
discrimination on the basis of his age and disability.  See Charge of Discrimination
attached as **Exhibit DD**.  The CHRO released its jurisdiction over the matter on June
9, 2003.  See, Release of Jurisdiction attached **Exhibit EE**.  As a result, any alleged
incidents of discrimination that occurred prior to January 11, 2002 (300 days prior to
the filing of the complaint) are time-barred under federal law as well as by the
Connecticut Fair Employment Practices Act ("CFEPA").  Therefore, the alleged
statement "they're the old guys…they're the Young Turks" is time barred and wholly
irrelevant.

    The alleged statement "they're the old guys…they're the Young Turks"
occurred in approximately 1991-1993.  See **Exhibit I**, pp. 197-98.  This alleged
incident cannot be considered as evidence in support of an age discrimination claim
under the ADEA or the CFEPA because it occurred more than 300 days prior to the
filing of the administrative complaint.  Furthermore, this expression is not an age-
related statement.  Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir. 1984)
(reference by the president of a company to some younger employees as "young

turks" was not relevant to whether the terminated employee was fired because of his age and remanded the case for a new trial).

Based upon the foregoing, the Plaintiff has presented no direct evidence of any form of age discrimination.

## II.    PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF AGE DISCRIMINATION UNDER THE MCDONNELL DOUGLAS FRAMEWORK.

Given the absence of any evidence under the "direct method," plaintiff's claims must be analyzed under the indirect, McDonnell Douglas framework, whereby a plaintiff must first establish a prima facie case of discrimination.  Holtz v. Rockefeller & Co., 258 F.3d 62, 76 (2nd Cir. 2001).  If a plaintiff is able to establish a prima facie case, the employer need only articulate, not prove, a legitimate, non-discriminatory reason for the challenged action.  James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (citations omitted).  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (This burden is one of production, not persuasion; it "can involve no credibility assessment."); see also, Abdu-Brisson v. Delta Airlines, 239 F.3d 456, 469 (2d Cir. 2001).  When, as shown here, the employer has met its burden of producing an age-neutral reason for the discharge, the presumption of discrimination raised by a prima facie case "drops out of the picture."  Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (quoting, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).  The burden then returns to the plaintiff, who must

23

adduce sufficient evidence to allow a rational fact finder to infer that the employer was motivated in whole or in part by age discrimination.  Id., quoting, Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997) (in banc).

To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that:  1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under "circumstances giving rise to an inference of discrimination."  See Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

As explained below, the plaintiff failed to establish a case of discrimination as a matter of law.  There is simply insufficient evidence to raise a genuine issue of material fact.

### A.    Plaintiff Was Not Qualified For The Position.

The evidence is undisputed that only the three individuals with the highest number of points are considered for appointment to Sergeant.  See **Exhibit H**, p. 28. The plaintiff placed fourth.  See **Exhibit A**, pp.76-77.  Plaintiff conceded during his deposition that Daubert, the promoted candidate, scored higher than him.  See **Exhibit A**, p. 81.  When asked whether Daubert was qualified for the position, the plaintiff responded, "I'm not in a position to judge his qualifications."  Id.

Because the plaintiff did not score in the top three, he was not qualified for appointment and his candidacy was not considered by the Police Commission.  See **Exhibit A**, pp. 93-95; **Exhibit H**, p. 28.

Plaintiff attempts to avoid these undisputable facts by fashioning his own definition of "qualified."  For example, he offers self-serving snippets such as, "I always feel like I'm the best guy in the neighborhood." See **Exhibit A**, pp. 53, 81. This avoidance strategy fails for it constitutes no more than an attack on the negotiated terms, as set forth in the Collective Bargaining Agreement, for the qualifications for promotion.  See **Exhibit H**, pp. 27-28.

Courts have afforded employers considerable latitude in selecting employment qualifications.

> The Second Circuit, in the context of an age discrimination suit, elaborated on the definition of the "qualification" requirement of the McDonnell Douglas prima facie case in Thornley v. Penton Publ'g, 104 F.3d 26 (2d Cir. 1997): "As we understand this element, being 'qualified' refers to the criteria the employer has specified for the position." 104 F.3d at 29. The Court further explained that broad deference should be afforded to employers in selecting hiring criteria: "Absent a showing by the plaintiff that the employer's demands were made in bad faith . . . an employer . . . is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury." Id. (citations omitted).

Jackson v University of New Haven, 228 F. Supp.2d 156, 161 (Conn. 2002).  See also Matos v. Bristol Bd. of Educ., 204 F.Supp.2d 375, 380-81 (D.Conn. 2002) (finding that the plaintiff did not meet the qualification prong of prima facie racial

discrimination case when stated job listing under the collective bargaining agreement was for "most senior qualified applicant" and the plaintiff was not the most senior of qualified applicant pool); Kratz v. College to Staten Island, No. Civ.A 96-CV-0680DGT, 2000 WL 516888, at *2 (E.D.N.Y. Mar. 15, 2000) (reasoning that the plaintiff had not made out a prima facie case under Title VII because "the second prong [regarding qualification] requires [the plaintiff] to meet the posted job qualifications").

Plaintiff has failed to make out a prima facie case of disparate treatment in that he failed to demonstrate that he was qualified for the Sergeant's position.

**B.    The Plaintiff Was Not Subject To An Adverse Employment Action Under Circumstances Giving Rise To An Inference Of Discrimination.**

Plaintiff contends that Daubert, the promoted candidate, was not within the protected class and that constitutes circumstances giving rise to an inference of discrimination.  The plaintiff was 49 years old when he took the 2002 promotional examination.  See **Exhibit C**, pp. 15-16.   Patrick Daubert ranked first; he was 37 years old.  See **Exhibit G**, **Exhibit C**, pp.15-16.   John Troxell ranked second; he was 44 years old.  Id.  Richard Palmiero ranked third; he was 53 years old.  Id.

A plaintiff alleging age discrimination should show that the comparable employee who received more favorable treatment was substantially younger than the plaintiff.  Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984) (The replacement of a

discharged employee by someone a year or two younger hardly indicates that the discharge was motivated in whole or part by the former's age.) See Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 317 (2d Cir. 1999) (noting that "the fact that the replacement is substantially younger than the plaintiff is a more valuable indicator of age discrimination, than whether or not the replacement was over 40").

    Significantly, two of the top three candidates were in the protected age category.  Accordingly, Plaintiff has no evidence that the defendant treated similarly situated, substantially younger employees more favorably.

## III.  EVEN IF PLAINTIFF CAN ESTABLISH A PRIMA FACIE CASE, THE TOWN OF WESTON HAS A LEGITIMATE NON-DISCRIMINATORY REASON FOR ITS ACTION.

    Even if the plaintiff could establish a prima facie case, the Town's decision not to promote him was based on legitimate, non-discriminatory business reasons.

    Plaintiff was not promoted because he was not a qualified applicant for the position for which he applied, as evidenced by the fact that he did not receive the highest ratings from the interviewers for the position and placed fourth overall.  See Exhibit G; Oral Interview Rating Forms attached hereto as Exhibit FF.   Pursuant to the Collective Bargaining Agreement, only the three individuals with the highest number of points are considered for appointment.  See Exhibit H, pp. 27-28.  The Sergeant's examination ratings show that the plaintiff did not receive the highest

ratings from the interviewers and that the individual who was promoted was rated

higher.  See **Exhibit G**; **Exhibit FF**.

Seven individuals competed for the Sergeant's position.  See **Exhibit G**.  The

plaintiff tied for first with John Troxell on the written portion of the examination.  Id.

The plaintiff placed seventh on the oral examination.  Id.  After points were added for

seniority, the plaintiff scored fourth overall.

Three candidates were the top overall scorers and were placed on the

promotional list pursuant to the Collective Bargaining Agreement.  Patrick Daubert,

the promoted candidate, placed fifth on the written test, first on the oral test, and

scored first overall.  Id.  John Troxell, who ranked second overall, tied for first on the

written test and third on the oral examination.  Id.  Richard Palmiero placed third

overall.  Id.  He placed fourth on the written test and fourth on the oral examination.

With 28 years of service, he had 7 seniority points added to his score.  Id.

Three professional officers of at least one rank higher than Sergeant

conducted the oral examination.  See Sergeant's Oral Exam Panel attached hereto

as **Exhibit GG**; **Exhibit H**, p. 27.  Each was a resident of Connecticut and neither

worked nor resided within ten miles of the Town of Weston.  Id.  Chief Land selected

the panel.  **Exhibit M**, p. 20.  Chief Land sent letters to each of the panelists detailing

the process for the oral examinations.  See August 13, 2002 Letter to Lt. Mark

Grecco attached hereto as **Exhibit HH**.  Each panelist brought a list of questions with

28

him and prior to the examination they reviewed the questions for appropriateness to the Weston Police Department.  <u>See</u> **Exhibit J**, pp. 42 – 46; Sergeant's Exam Questions attached hereto as **Exhibit II**.  Although Chief Land was present during the oral examination, he did not participate in the process and he was not present when the panel members deliberated on what scores to award the individuals.  <u>See</u> **Exhibit J,** pp. 42 – 44 and **Exhibit CC** ¶¶ 9-11.  Chief Land was not a member of the oral examination panel and he had no first-hand knowledge of the panel's decision-making process.  <u>See</u> **Exhibit CC**, ¶¶ 7-8.

Significantly, after the scoring was completed, the panelists related to Chief Land that they questioned the plaintiff's credibility because the plaintiff listed an incomplete Master's Degree on his resume.  <u>See</u> **Exhibit CC**, ¶ 12 and Resume of John Filush attached hereto as **Exhibit JJ**.  As further evidence of plaintiff's credibility, the plaintiff testified at deposition that he attended "two or three" classes towards his Master's Degree.  <u>See</u> **Exhibit A**, pp. 35-36.  The plaintiff's Official Transcript shows the plaintiff registered for *one* class 25 years ago and he withdrew from it.  <u>See</u> Official Transcript, University of New Haven Graduate School, attached hereto as **Exhibit KK**.  Accordingly, the plaintiff was not promoted based on legitimate, non-discriminatory business reasons.

IV.    **THE PLAINTIFF CANNOT ESTABLISH PRETEXT FOR DISCRIMINATION.**

The plaintiff cannot establish pretext in this case.  "To demonstrate a 'pretext for discrimination,' the plaintiff must show both that the employer's stated reasons for its actions are false and that prohibited discrimination was the real reason for the employer's decision."  Martin v. Kroeger Co., 65 F. Supp. 2d 516, 547 (S.D. Tex. 1999), citing, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993); see also, Russ v. University of Texas at San Antonio, 139 F.3d 521, 525 (5th Cir. 1998). Pursuant to Hicks, it is not enough for the fact finder to disbelieve the employer; "the fact finder must believe the plaintiff's explanation of intentional discrimination."  Hicks, 509 U.S. at 519.

In this case there is no evidence of pretext.  The Oral Exam Panelists never made any age-based comments.  See **Exhibit CC**, ¶ 13.   The plaintiff testified that the Board of Police Commissioners makes the final determination on who gets promoted and he had no reason to believe they were discriminating against him on the basis of his age.  See **Exhibit A**, pp. 151-52.  The plaintiff may claim that Land made age-based comments, but such comments cannot be evidence of pretext.

In order to constitute evidence of discrimination, remarks must be:  (1) related to plaintiff's protected status; (2) proximate in time to the employment decision at issue; (3) made by an individual with authority over the employment decision at issue; and (4) related to the specific employment decision challenged.  See Krystek v.

University of Southern Miss., 164 F.3d 251, 256 (5th Cir. 1999). "If the comments do not meet these criteria, they are merely 'stray remarks' without probative value when offered either in connection with the plaintiff's *prima facie* case or to demonstrate pretext." Martin, 65 F. Supp. 2d at 549, citing, Boyd v. State Farm Ins. Co., 158 F.3d 326, 329-30 (5th Cir. 1998). "To be probative of discrimination, isolated comments must be contemporaneous with the [challenged employment decision] or causally related to the …decision making process." Geier v. Medtronie, Inc., 99 F.3d 238, 242 (7th Cir. 1996). A comment is supposed to be both proximate and related to the employment decision in question. See Shorter v. ICG Holdings, Inc., 188 F.3d 1204 (10th Cir. 1999). See also Price Waterhouse v, Hopkins, 490 U.S. 228, 278 (1989) (O'Connor, J, concurring)("[S]tray remarks in the workplace. . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.")

In this case, the alleged comments do not meet the above criteria, and are therefore merely "stray remarks." No one with authority over the employment decision at issue made any age-based comments. See **Exhibit CC**, ¶¶ 13, 14; **Exhibit A**, pp. 151-52 and **Exhibit H**, p. 28. ("Appointments to the rank of Sergeant … shall be made by the Police Commission.) There is no evidence that the Oral

Examination Panelist made any age-based remarks.  Significantly, there is no evidence that any remarks were made related to the employment decision at issue.

"[S]tray remarks in the workplace…cannot justify requiring the employer to prove that its decisions were based on legitimate criteria." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989).  The burden is on the plaintiff to establish a causal link between the alleged discriminatory references and the conduct complained of.  See Boyd v. State Farm Ins. Co., 158 F.3d 326, 329-30 (5th Cir. 1998).  The plaintiff cannot satisfy this burden.


V.      THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO CLAIMS UNDER THE CONNECTICUT FAIR EMPLOYMENR PRACTICES ACT.

The Connecticut courts generally look to federal employment discrimination law for guidance in enforcing its own anti-discrimination statute.  See Craine v. Trinity College, 259 Conn. 625, fn. 6, 791 A.2d 518 (2002); Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996); State v Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70, 559 A.2d 1120 (1989).  As with claims under Title VII and ADEA, a claim of discrimination under the Connecticut Fair Employment Practices Act is also analyzed under the McDonnell Douglas burden-shifting paradigm.  See United Technologies Corp. v. CHRO, 72 Conn. App. 212, 221, 804 A.2d 1033 (2002), citing, Erisoty v. Merrow

Machine Co., 34 Conn. App. 708, 710-11, 643 A.2d 898, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994).

The Court dismissed the plaintiff's allegations of disability discrimination brought pursuant to Title II of the American's with Disabilities Act ("ADA") on May 6, 2003. The plaintiff now alleges a state law claim that the defendant discriminated against him because of his disability.

To establish a prima facie case under the McDonnell Douglas-Burdine model, "[t]he plaintiff need prove only four elements by a preponderance of the evidence:  (1) that he belongs to a protected class; (2) that he applied to and was qualified for the position in question; (3) that despite his qualifications, he was rejected; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Ann Howard's Apricots Restaurant v. Commission on Human Rights and Opportunities, 237 Conn. 209, 225 (1996).

## A.    The Plaintiff Does Not Have A Disability As Defined Under The Connecticut Fair Employment Practices Act.

In order to meet the first required element, the plaintiff must prove that he is a member of a protected class.  The plaintiff claims that he was a member of a protected class because he was diagnosed with a learning disability known as dyslexia in January 2000.  See Plaintiff's Third Amended Complaint, ¶ 9.  The plaintiff

was not diagnosed with dyslexia or any learning disability and he has never sought treatment.  See **Exhibit Q, S and Exhibit A**, p. 27.

Connecticut General Statutes, § 46a-51(19) defines a person with a "learning disability" as:

> An individual who exhibits a severe discrepancy between educational performance and measured intellectual ability and who exhibits a disorder in one or more of the basic psychological processes involved in an understanding or in using language, spoken or written, which may manifest itself in a diminished ability to listen, speak, read, write, spell or do mathematical calculations.

The plaintiff was evaluated by defendant's expert, Neuropsychologist Kimberlee J. Sass, over a two-day period in October 2003.  See **Exhibit S**.  The plaintiff's scores on listening comprehension, oral expression, reading, writing, and mathematics were within normal limits.  Id. at pp. 32-35.   Dr. Sass found that the plaintiff had a "clinically significant weakness " in his ability to write what he hears, however "he successfully accommodates those weaknesses at this time.  Id. at pp. 34, 36.  Further, the plaintiff testified that his alleged condition has not limited his ability to work in any manner.  See **Exhibit A**, p. 34; see also, **Exhibit S**, p. 36. Noticeably, the plaintiff testified he has had ample time to finish all the written promotional examinations he has taken.  See **Exhibit A**, pp. 48-49.

The plaintiff cannot establish a prima facie case of discrimination under the CFEPA because there is no evidence that plaintiff exhibits a "severe discrepancy

between educational performance and measured intellectual ability and exhibits a

disorder in one or more of the basis psychological processes involved in

understanding or in using language…"  C.G.S., § 46a-51(19).  See **Exhibit S**.

> **B.**    **The Defendant Is Entitled To Summary Judgment As To The Plaintiff's Retaliation Claim Under CFEPA.**

The CFEPA prohibits an employer from "discriminat[ing] against any person

because he has opposed any discriminatory employment practice or because he has

filed a complaint…"  C.G.S. § 46a-60(4).

"In order to establish a prima facie case of retaliation, [the plaintiff] must

show that:  (1) he engaged in an activity protected by the [the statute]; (2) the

employer was aware of this activity; (3) the employer took adverse employment

action against him; and (4) a causal connection exists between the alleged adverse

action and the protected activity." Treglia v. Manlius, 313 F.3d 713, 720 (2d Cir.

2002).

If a prima facie case is set forth, then the employer has the burden of

demonstrating a legitimate, non-discriminatory reason for its actions.  In order to

avoid summary judgment, the plaintiff must then set forth evidence showing that the

employer's articulated reasons are pretext for its true discriminatory motive.  See

Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996), citing, Tomka v. Seiler

Corp., 66 F.3d 1295, 1313, 1308 (2d Cir. 1995).

      **1.**     **The plaintiff cannot establish a <u>prima facie</u> case of retaliation.**

In this case, the plaintiff cannot establish a <u>prima facie</u> case of retaliation.  The defendant concedes that the plaintiff was engaged in protected activity when he filed his CHRO complaint on November 6, 2002, and that it was aware of said protected conduct.  <u>See</u> Plaintiff's Third Amended Complaint, ¶ 4.  The defendant contends, however, that there is no evidence of a causal connection between the plaintiff's filing of the CHRO complaint and the alleged failure to promote, which occurred two months <u>earlier</u> in September 2002.  As such, there is no causal connection between the filing of the CHRO claim and the failure to promote.

The plaintiff claims that the defendant retaliated against him by denying him a fair opportunity for promotion because he requested testing accommodations for his alleged learning disability on January 6, 2000.  <u>See</u> Plaintiff's Third Amended Complaint, ¶ 74, **Exhibit P and Exhibit A**, pp. 55-56, 76-78. The plaintiff admits that the defendant provided him with ample extended time to take the tests.  <u>See</u> **Exhibit A**, pp. 48-49. The plaintiff has failed to produce any evidence of a causal connection between the plaintiff's January 6, 2000 request for testing accommodations and the April 17, 2000 and September 2002 promotional examinations.  That fact alone sounds the death knell for plaintiff's claim that he was not promoted because he requested testing accommodations.

The plaintiff alleges that on March 20, 2000, he requested Chief Land investigate how the plaintiff's confidential disability-related information was obtained by another officer.  See Third Amended Complaint, ¶ 35 and **Exhibit W**.  Chief Land investigated plaintiff's complaint and found that plaintiff was the source of information getting out.  See Chief Land's investigation of Plaintiff's March 19, 2002 complaint attached hereto as **Exhibit X**.  When questioned about whether or not he had a discussion with Officer McInnis in the locker room about his disability claim, the plaintiff testified he recalled mentioning that he had dyslexia to Officer McInnis in the locker room.  See **Exhibit A**, pp. 73-75.  The plaintiff has failed to produce any evidence of a causal connection between the plaintiff's March 2000 request for an investigation into purported release of confidential medical information and the April 2000 and September 2002 promotional examinations.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001), quoting, O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001).  Twenty months, four months and even three months have all been held to be insufficient.  See e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001); Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir.1997); Hughes v. Derwinski,

967 F.2d 1168, 1174-75 (7th Cir. 1992).  Action taken, as here, months and years

after the alleged protected activity, does not suggest causality.

**2.     The Town of Weston has a legitimate, non-
discriminatory reason for its action.**

Despite the fact that plaintiff is not disabled, the plaintiff was not promoted in

2000 because he was not the best qualified candidate.  <u>See</u> **Exhibit L**, pp. 8-10.  As

noted above in Section II, the plaintiff was not promoted in 2002 because he did not

score in the top three and was therefore not qualified for promotion.  Accordingly, the

plaintiff's claims of discrimination and retaliation under Connecticut state law must fail

for the same reasons as the plaintiff's claims under ADEA.

## VI.    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS.

In addition and the alternative, this Court, having decided that the plaintiff has

failed to state a valid federal claim, should decline to exercise jurisdiction over the

pendant state law claims.  <u>See</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S.

715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996) ("[I]f the federal claims are dismissed

before trial, even though not insubstantial in the jurisdictional sense, the state law

claim should be dismissed as well."); <u>Lennon v. Miller</u>, 66 F.3d 416, 426 (2d Cir.

1995) (same).

38

## VII.    LIQUIDATED, PUNITIVE DAMAGES AND ATTORNEY'S FEES MAY NOT BE RECOVERED AGAINST THE TOWN OF WESTON.

ADEA § 626(b), incorporating the corresponding provisions of the Fair Labor Standards Act, mandates the payment of liquidated damages in an amount equivalent to a plaintiff's award for back pay and benefits where the statutory violation was "willful."  Violations of ADEA are "willful" "if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Co. v. Biggins, 507 U.S. 604, 614 (1993) (citations and quotations omitted).  There is no evidence Land had knowledge his purported remarks were violative of the ADEA.

The plaintiff seeks punitive damages from the Town of Weston under Conn. Gen. Stat. § 46a-104.  Conn. Gen. Stat. § 46a-104 does not provide for a recovery of punitive damages.  Section 46a-104 (civil action for discriminatory employment) provides that "[t]he court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs."

The Appellate Court has held that it is impermissible to award punitive damages against a municipality on public policy grounds. Hartford v. International Assn. of Firefighters, Local 760, 49 Conn. App., 816-17, 717 A.2d 258 (1998).  "In

Connecticut punitive damages are to be measured by the reasonable attorney's fees and costs"; Ford v. Blue Cross & Blue Shield of Connecticut, Inc., 216 Conn. 40, 59 n. 4, 578 A.2d 1054 (1990).

Accordingly, plaintiff's claim for punitive damages and attorney's fees should fail.

**VIII.    CONCLUSION.**

For the foregoing reasons, the defendant, **TOWN OF WESTON**, respectfully requests that the Court grant its motion for summary judgment.

DEFENDANT,
TOWN OF WESTON

By_____
Martha A. Shaw [ct12855]
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
Phone:  (860) 249-1361
Fax:  (860) 249-7665
E-Mail:  mshaw@hl-law.com

## CERTIFICATION

   This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 5th day of April, 2004.


Gary Phelan, Esquire
Klebanoff & Phelan, P.C.
Corporate Center West
433 South Main Street, Suite 117
West Hartford, CT  06110


               _____
               Martha A. Shaw