UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN FILUSH | : | NO.: 3:02CV1934 (SRU) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF WESTON | : | APRIL 5, 2004 |

**LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a)(1) of the Local Rules of Civil Procedure, the defendant, **TOWN OF WESTON**, respectfully submits the following material facts in support of its Motion for Summary Judgment:

1. Plaintiff is presently, and has been for the past 26 years, employed by the Town of Weston ("Town") as a Police Officer.  See **Exhibit A**, p. 15.

2. In 1990, when plaintiff was 36, plaintiff took the Sergeant's examination, scored third and was not promoted.  (Roy Hill, who scored second and was 38 at the time, was promoted.)  See **Exhibit B**; **Exhibit C**, pp. 15-16; Third Amended Complaint, ¶¶ 6, 16, 17.

3. In 1991, when plaintiff was 38, plaintiff took the Detective's examination, scored second and was not promoted.  (Carl Filsinger, who was 44 at the

        time and the top scorer, was promoted.)  See **Exhibit D**; Third Amended Complaint, ¶¶ 6, 17, 18; **Exhibit C**, pp. 15-16.

4. In 1995, when plaintiff was 42, plaintiff took the Sergeant's examination, scored third and was not promoted.  (Mike Ferullo, who was 33 at the time and the top scorer, was promoted.)  See **Exhibit E**; Third Amended Complaint, ¶¶ 6, 25, 26; **Exhibit C**, pp. 15-16.

5. In 2000, when plaintiff was 46, plaintiff took the Sergeant's examination placed second and was not promoted.  (Terry Mooney, who was 52 at the time and the top scorer, was promoted.)  See **Exhibit F**; Third Amended Complaint, ¶¶ 36, 37; **Exhibit A**, p. 52; **Exhibit C**, pp. 15-16.

6. In 2002, when plaintiff was 48, he took the Sergeant's examination placed fourth and was not promoted.  (Patrick Daubert, who was 37 at the time and the top scorer, was promoted.)  See **Exhibit G**; Third Amended Complaint, ¶¶ 53, 53, 56; **Exhibit A**, pp. 48-49; **Exhibit C**, pp. 15-16.

7. A prerequisite for promotion is the successful completion of a promotional examination.  The promotional examination consists of an oral and a written component, with each section given equal weight.  See **Exhibit H**, pp. 27-28.

8. A quarter (1/4) point is added to the final combined written and oral score for each full year of service.  See **Exhibit H**, pp. 27-28.

9. The Weston Police Commission ("Commission") considers the three candidates with the highest number of points for appointment to the position of Sergeant or Detective. See **Exhibit H**, pp. 27-28.

10. Plaintiff asserts that he has not been promoted because the Town unlawfully discriminated against him because of his age. See Third Amended Complaint, ¶¶ 1, 70.

11. On August 1, 2002, a group of Police Commissioners were scheduled to attend a Board of Selectman's meeting to request authorization to hire an additional patrol officer. See **Exhibit L**, p. 12; **Exhibit J**, pp. 20-23.

12. While waiting for the Selectman's meeting to begin, Commissioner Ottomano took the opportunity to report back on meeting with Officer Brodacki. See **Exhibit L**, p. 13.

13. Commissioner Ottomano met with Officer Brodacki because the Commissioners had been advised that Officer Brodacki was unhappy. See **Exhibit L**, p. 13.

14. Officer Brodacki related an example of hazing. See **Exhibit L**, p. 13.

15. Chief Land stated "the way to cure a hazing problem is to discipline the employee, including fire them." **Exhibit J**, pp. 21-22.

16. Goldberg conceded that any alleged "new/old" comment could have referred to plaintiff's seniority as opposed to his age. **Exhibit I**, p. 208.

17. Commissioners Saltz, Ottomano, Brady and Gralnick were present during the discussion and unanimously attested that they had no recollection of Chief Land making an age-biased comment. **Exhibit L**, pp. 15-16; **Exhibit M**, pp. 11-12, 15; **Exhibit N**, p. 8, **Exhibit O**.

18. On January 6, 2000, plaintiff sent a memorandum to Chief Land stating that he believed he had a condition that entitled him to testing accommodations pursuant to ADA. See **Exhibit P**.

19. On July 25, 2000, Dr. Robert Kruger, sent a letter to Chief Land indicating that the plaintiff's reading recognition skills were "suggestive" of dyslexia and the plaintiff is entitled to testing accommodations under the ADA. See **Exhibit Q**.

20. The plaintiff alleges he was discriminated against because he was not allowed to speak with the testing company directly. **Exhibit A**, pp. 55-56.

21. On January 25, 2002, the plaintiff requested to sit on the oral panel for patrol officers, but the plaintiff was not selected. Third Amended Complaint, ¶¶ 39, 40.

22. No one with officer rank from inside the Weston Police Department sat on the panel. Since Chief Land could not accommodate all officers who made the request, only officers from outside the department were selected. See **Exhibit C**, p. 20.

23. The Plaintiff was examined on October 15-16, 2003 by Kimberlee J. Sass, Ph., a neuropsychologist, with respect to the plaintiff's claim of dyslexia. Dr. Sass provided a comprehensive 37-page report detailing his findings, methodology and the plaintiff's history.  See **Exhibit S**.

24. Dr. Sass found that the plaintiff does not have a learning disorder and that "no accommodations to promotional testing are necessary to ensure that this officer has a reasonable chance to compete fairly with other candidates for advancement."  See **Exhibit S**, p. 37.

25. The plaintiff testified that his dyslexia has not limited his ability to work in any manner.  See **Exhibit A**, p. 34.

26. In January 2000, the plaintiff requested testing accommodations and the Town requested medical documentation from his healthcare provider explaining the nature of the plaintiff's disabilities and an explanation of the accommodation needed.  See Complaint, ¶¶ 26 and 27, **Exhibit P**; **Exhibit T**.

27. After receiving Dr. Kruger's report, Chief Land requested additional information from Dr. Kruger, specifically with respect to the nature of the plaintiff's disability and the amount of time needed for the plaintiff to fairly compete for the position.  See **Exhibit U**.

28. On February 16, 2000, Chief Land spoke with Dr. Kruger and it was agreed that the plaintiff would be given 50% more time to take the test than the other candidates.  See **Exhibit V**; Third Amended Complaint, ¶ 32.

29. On February 29, 2000, Chief Land sent a Memorandum to the plaintiff confirming he would be given 50% more time to take the written examination.  See **Exhibit W**.

30. When asked if he believed he wasn't promoted in 2000 because he was disabled, the plaintiff responded, "I don't know why I was not promoted." See **Exhibit A**, p. 57.

31. The plaintiff also claims the Town disclosed confidential medical information to Officer Peter Ward in March 2000.  See Third Amended Complaint, ¶¶ 71-72; **Exhibit R**.

32. Chief Land investigated plaintiff's complaint and found that plaintiff was the source of information getting out.  See **Exhibit X**.

33. When questioned about whether or not he had a discussion with Officer McInnis in the locker room about his disability claim, the plaintiff testified he recalled mentioning that he had dyslexia to Officer McInnis in the locker room. See **Exhibit A**, pp. 73-75.

34. The plaintiff is a member of the collective bargaining unit.  See **Exhibit A**, p. 16.

35. He held a leadership role with the union for approximately 22 years.  See **Exhibit A**, p. 22.

36. He was president of the union for ten years.  See **Exhibit A**, p. 18.

37. The plaintiff does not believe Chief Land should be able to indicate his rankings of the candidates to the Police Commission because it is not stated that he can do so in the collective bargaining agreement.  **Exhibit A**, pp. 57-58.

38. Historically, the Commission asks Chief Land what the strengths and weaknesses of the candidates are.  **Exhibit J**, p. 41.

39. Chief Land sat in the room during the oral examination for the first time in 2002.  **Exhibit J**, p. 42.

40. Chief Land did not sit in while the oral panel deliberated on scoring the candidates.  **Exhibit J**, p. 43.

41. The plaintiff believes Chief Land violated the Collective Bargaining Agreement when Chief Land sat in on the oral examination in 2002 because it is not stated that he can do so in the Collective Bargaining Agreement.  **Exhibit A**, pp. 84-87.

42. The plaintiff testified that he did not believe Chief Land manipulated his score in any way on the 1990 examination.  **Exhibit A**, p. 102.

43. The plaintiff testified that he had no firsthand knowledge that Chief Land manipulated his score on the 1991 examination. **Exhibit A**, p. 112.

44. The plaintiff taped Chief Land without his knowledge while Chief Land was reviewing the plaintiff's work performance. **Exhibit A**, pp. 105-06.

45. The plaintiff testified that he did not believe he was discriminated against on the basis of his age with respect to the 1990, 1991, or 2000 Sergeant's examinations. See **Exhibit A**, pp. 101, 109-10, 54.

46. Chief Land announced a vacancy in the rank of Sergeant on June 10, 2002. See **Exhibit AA**.

47. The plaintiff sent a Departmental Message to Chief Land dated June 15, 2002, stating he was interested in taking the promotional examination. **Exhibit BB**.

48. The Police Commission makes appointments to the rank of Sergeant and Chief Land was not a member of the Commission. See **Exhibit H**, pp. 27-28; **Exhibit I**, p. 43.

49. Chief Land does not have the authority to promote an officer to Sergeant. See **Exhibit H**, pp. 27-28, **Exhibit CC**, ¶ 14.

50. Chief Land never directed anyone to utilize age as a factor to determine whether an employee should be promoted and never even spoke with the Commission about what decisions they should make. See **Exhibit A**, pp.93-

94; **Exhibit L**, pp. 6-11; **Exhibit J**, pp. 39-46 **Exhibit CC**, ¶ 6; **Exhibit I**, pp. 44-46; **Exhibit M**, pp. 18-19; **Exhibit N**, pp.11-14.

51. Chief Land is 56 years old.  See **Exhibit CC**, ¶ 1.

52. Plaintiff conceded he had no personal knowledge of any ageist comments. See **Exhibit A**, pp. 121-123.

53. Goldberg testified he did not have the "faintest idea" if Plaintiff's age was a factor in Plaintiff not being assigned the Field Training Officer position.  See **Exhibit I**, pp. 154-55.

54. Plaintiff admitted he never formally requested assignment as a Field Training Officer and was not sure if he wanted the assignment if it did not provide for overtime compensation.  See **Exhibit A**, pp. 63-66, 70-73.

55. Plaintiff told Chief Land he was not interested in the Field Training Officer position.  See **Exhibit J**, pp. 53-57.

56. The plaintiff filed a discrimination charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on November 6, 2002, alleging discrimination on the basis of his age and disability.  See **Exhibit DD**.

57. The CHRO released its jurisdiction over the matter on June 9, 2003.  See **Exhibit EE**.

58. The alleged statement "they're the old guys…they're the Young Turks" occurred in approximately 1991-1993. See **Exhibit I**, pp. 197-98.

59. The plaintiff placed fourth on the 2002 promotional examination. See **Exhibit A**, pp.76-77; **Exhibit G**.

60. Plaintiff conceded during his deposition that Daubert, the promoted candidate, scored higher than him. See **Exhibit A**, p. 81.

61. When asked whether Daubert was qualified for the position, the plaintiff responded, "I'm not in a position to judge his qualifications." See **Exhibit A**, p. 81.

62. Because the plaintiff did not score in the top three, he was not qualified for appointment and his candidacy was not considered by the Police Commission. See **Exhibit A**, pp. 93-95; **Exhibit H**, p. 28.

63. Patrick Daubert ranked first on the 2002 promotional examination; he was 37 years old. See **Exhibit G**, **Exhibit C**, pp.16-16.

64. John Troxell ranked second on the 2002 promotional examination; he was 44 years old. See **Exhibit G**, **Exhibit C**, pp.16-16.

65. Richard Palmiero ranked third on the 2002 promotional examination; he was 53 years old. See **Exhibit G**, **Exhibit C**, pp.15-16.

66. Plaintiff did not receive the highest ratings from the interviewers for the position and placed fourth overall. See **Exhibit G**; **Exhibit FF**.

67. The Sergeant's examination ratings show that the plaintiff did not receive the highest ratings from the interviewers and that the individual who was promoted was rated higher.  See **Exhibit G**; **Exhibit FF**.

68. Seven individuals competed for the Sergeant's position.  See **Exhibit G**.

69. The oral examination was conducted by three professional officers of at least one rank higher than Sergeant and who were residents of Connecticut that neither worked nor resided within ten miles of the Town of Weston.  See **Exhibit GG**; **Exhibit H**, p. 27.

70. Chief Land selected the oral panel.  **Exhibit M**, p. 20.

71. Chief Land sent letters to each of the panelists detailing the process for the oral examinations.  See **Exhibit HH**.

72. Each panelist brought a list of questions with him and prior to the examination they reviewed the questions for appropriateness to the Weston Police Department.  See **Exhibit J**, pp. 42 – 46; **Exhibit II**.

73. Although Land was present during the oral examination, he did not participate in the process and he was not present when the panel members deliberated on what scores to award the individuals.  See **Exhibit J,** pp. 42–44 and **Exhibit CC** ¶¶ 9-11.

74. Chief Land was not a member of the oral examination panel and he had no first-hand knowledge of the panel's decision-making process.  See **Exhibit CC**, ¶¶ 7-8.

75. After the scoring was completed, the panelists told Chief Land that they questioned the plaintiff's credibility because the plaintiff listed an incomplete Master's Degree on his resume.  See **Exhibit CC**, ¶ 12, **Exhibit JJ**.

76. The plaintiff testified at deposition that he attended "two or three" classes towards his Master's Degree.  See **Exhibit A**, pp. 35-36.

77. The plaintiff's Official Transcript shows the plaintiff registered for *one* class 25 years ago and he withdrew from it.  See **Exhibit KK**.

78. The Oral Exam Panelists never made any age-based comments.  See **Exhibit CC**, ¶ 13.

79. The plaintiff testified that the Board of Police Commissioners makes the final determination on who gets promoted and he had no reason to believe they were discriminating against him on the basis of his age.  See **Exhibit A**, pp. 151-52.

80. No one with authority over the employment decision at issue made any age-based comments.  See **Exhibit CC**, ¶¶ 13, 14; **Exhibit A**, pp. 151-52 and **Exhibit H**, p. 28.

81. The plaintiff was not diagnosed with dyslexia or any learning disability.  See **Exhibit Q, S and Exhibit A**, p. 27.

82. The plaintiff has never sought treatment for dyslexia.  See **Exhibit A**, p. 27.

83. The plaintiff testified he had ample time to finish all the written promotional examinations he has taken.  See **Exhibit A**, pp. 48-49.

84. The plaintiff was not promoted in 2000 because he was not the best-qualified candidate.  See **Exhibit L**, pp. 8-10.

        DEFENDANT,
        TOWN OF WESTON

By_____
  Martha A. Shaw [ct12855]
  Howd & Ludorf
  65 Wethersfield Avenue
  Hartford, CT  06114
  Phone:  (860) 249-1361
  Fax:  (860) 249-7665
  E-Mail:  mshaw@hl-law.com

## **CERTIFICATION**

       This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 5th day of April, 2004.

Gary Phelan, Esquire
Klebanoff & Phelan, P.C.
Corporate Center West
433 South Main Street, Suite 117
West Hartford, CT  06110

 

_____
Martha A. Shaw