FILED

2004 JUL 26 A 9:34

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN FILUSH,

    Plaintiff

v.

TOWN OF WESTON,

    Defendant

CIVIL ACTION NO.:
302CV1934(SRU)

July 23, 2004

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    PRELIMINARY STATEMENT**

The defendant, Town of Weston ("Town") has filed a motion for summary judgment under Fed. R. Civ. P. 56(c) to dismiss John Filush's claims in its entirety, contending that: (1) the plaintiff has not established a prima facie case of discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) the defendant has a legitimate non-discriminatory reason for its actions and the plaintiff cannot establish pretext; (3) the plaintiff does not have a "disability" as defined by the Connecticut Fair Employment Practices Act ("CFEPA"); and (4) the plaintiff did not establish a prima facie case of retaliation. For the reasons discussed below, however, the defendant's motion for summary judgment should be denied and the plaintiff should be allowed to present his case to a jury. In particular, there are material questions of fact as to whether the plaintiff was "qualified" for consideration to the position of Sergeant and whether Chief Anthony Land influenced the Town of Weston's Board of Commissions' selection process in August 2002 for the Sergeant's position.

**II.    FACTS**

John Filush, the plaintiff, has worked for the Town of Weston ("Defendant") as a Police Officer for 26 years, since 1978. Third Amended Complaint ("Complaint"), ¶ 8. In those 26 years Officer Filush has applied for promotion to Sergeant or Detective, has

1

taken the required examination five times and each time he was denied promotion. The most recent Sergeant opening was given to Patrick Daubert, a 37-year-old individual with just (7) seven years on the Town of Weston Police Force.

### A. Failure To Promote

#### (1) Procedure for Promotions

The procedure to promote an officer to Sergeant or Detective is set forth in Article XXVI Promotions, Section 2 of the contract between Officer Filush's union, Weston Police Local #1493 and Council #15, AFSCME, AFL-CIO, and the defendant, Town of Weston for July 1, 1999–June 30, 2004 ("collective bargaining agreement")(annexed as Exhibit 1); Complaint ¶12. Candidates for promotion must first take a written examination and then an oral examination with a panel of three (3) professional police officers. Complaint ¶ 12. The panel scores the oral portion of the examination, which is then added to the applicant's written score. Complaint ¶ 12. The oral and written portions of the examination are weighted equally. Complaint ¶ 12. The three (3) top scorers are then considered for promotion to Sergeant or Detective. Complaint ¶ 12.

The collective bargaining agreement states that the Police Commission ("the Commission") chooses the panel members for the oral portion of the examination. Complaint ¶ 14. However, the Commission authorized Chief Land to choose the panel for the oral portion of the promotional examination. Complaint ¶ 14. In addition to the written and oral examinations outlined in the collective bargaining agreement, promotional candidates also had to attend an interview with the Commission, at which Chief Land would be present. Complaint ¶ 14. Chief Land was also present for the adjustment of the candidates' scores. Complaint ¶ 14.

#### (2) 1990 Sergeant's Examination

On September 11, 1990, Officer Filush took the Sergeant's examination administered by the defendant. Complaint ¶ 15. Officer Filush, who was 36 years old at the time, had the third highest combined written and oral score among promotional candidates. Complaint ¶ 15. After the Commission's interview, attended by Chief Land, Officer Filush was not promoted to Sergeant. Complaint ¶¶ 15-16. Instead Roy Hill, who had the second highest overall examination score and was 38 years old, was

2

promoted. Exhibit 2; 1990 Sergeant's Eligibility List. Officer Filush was later told by Chief Land that "some people wear their union hats too tight." Complaint ¶ 16.

### (3) 1991 Detective's Examination

On December 18, 1991, Officer Filush took the Detective's examination administered by the defendant. Complaint ¶ 17. Officer Filush's combined written and oral score placed him second among all promotional candidates. Complaint ¶ 17. Again, Chief Land attended the Commissions' interview with the promotional candidates. Complaint ¶ 17. Despite earning one of the top three combined scores for the second time, Officer Filush was once again not promoted. Complaint ¶ 18. Carl Filsinger, the top scorer, who was 44 years old, was promoted. Exhibit 3; 1991 Sergeant's Eligibility List. After the examination, Chief Land told Officer Filush that he should "shave [his] mustache, buy new glasses, and lose weight." Complaint ¶ 18.

On January 2, 1992, Officer Filush filed a grievance with the Commission. Complaint ¶ 19. Officer Filush's concern was that the defendant was not following procedure for promotion as it is set forth in the union contract. Complaint ¶ 19. The union contract explicitly calls for a written and oral examination, but made no mention of an interview by the Commission; Officer Filush's contention was that the Commission's interview was, in effect, a "second oral" and was therefore in conflict with the union contract. Complaint ¶ 19.

In February 1992 Officer Filush received a letter from the Chairman of the Board of Police Commissioners, Norman L. Perry, stating that he did not agree with Officer Filush's grievance. Complaint ¶ 20. Later that month, about February 19, 1992, the Commission held a hearing to consider Officer Filush's grievance. Complaint ¶ 21. The Commission voted unanimously that its interviews did not conflict with the union contract and, therefore, denied Officer Filush's grievance. Complaint ¶ 21.

### (4) 1995 Sergeant's Examination

On September 14, 1995, when Officer Filush was 42 years old, he took the Sergeant's examination administered by the defendant. Complaint ¶ 25. Officer Filush's combined written and oral score was the third highest score among promotional candidates. Complaint ¶ 25. Chief Land attended when the panel adjusted the candidates' scores. Complaint ¶ 25. Officer Filush was not promoted to Sergeant in

3

1995. Complaint ¶ 26. Instead, Mike Ferullo, who was 33 years old and the top scorer, was promoted. Exhibit 4; 1995 Sergeant's Eligibility List.

After the 1995 examination, it was revealed that one of the three panel members selected by Chief Land, Chief Daniel Coppinger, knew or recognized one of the applicants, Officer Michael Ferullo. Complaint ¶ 27. Chief Coppinger did not remove himself from the panel as the collective bargaining agreement required. Complaint ¶ 27. To alleviate this violation of procedure, Chief Coppinger's scores were removed from the applicant's scores, as agreed to in October 1995 by Local 2693 and the defendant. Complaint ¶ 27. Officer Ferullo's ranking was not affected by the removal of Chief Coppinger's scores and Officer Ferullo was promoted to Sergeant. Complaint ¶ 27.

### (5) 2000 Sergeant's Examination

On March 22, 2000, Officer Filush took the Sergeant's examination administered by the defendant. Complaint ¶ 36. Officer Filush, who was 46 years old, ranked second on the combined written and oral scores. Complaint ¶ 37. Chief Land again attended the Commission's selection process. Complaint ¶ 37. Officer Filush was not promoted in 2000. Officer Terry Mooney, who had the top score and was 52 years old was promoted to Sergeant. Complaint ¶ 37. After the March 2000 Sergeant's examination, Chief Land asked Officer Filush if he was interested in serving as the Field Training Officer, the Field Training Officer being, typically, a patrol officer's duty. Complaint ¶ 38. Officer Filush responded affirmatively, that he was interested in the position of Field Training Officer. Complaint ¶ 38. Chief Land then reorganized the duties of the Sergeant and gave the Field Training Officer position to Sergeant Mooney. Complaint ¶ 38.

In June 2002 the Commission revised its promotional procedures. Complaint ¶ 42. There were six new procedures approved: (1) disseminate and review applications and resumes of each candidate prior to the interview day; (2) interview each candidate in the presence of the full commission with the same members asking the same questions for uniformity; (3) hold comments on the candidates until the deliberation period following all the interviews; (4) acquire the recommendation of the Chief, including his ranking of the candidates; (5) enter into executive session to deliberate on the ranking of the top three candidates, achieving at least a 2/3 consensus; and (6) come out of the executive session to announce the rankings. Complaint ¶ 42.

On June 15, 2002 Officer Filush filed a grievance stating that the new "Candidate Interview Procedure" decided on by the Commission violated the union contract. Complaint ¶ 45. Chief Land sent Officer Filush a letter requesting clarification on how the Candidate Interview Procedure violated the collective bargaining agreement. Complaint ¶ 46. Officer Filush responded to Chief Land in a memo dated June, 27, 2002. Complaint ¶ 47. Officer Filush told Chief Land that the collective bargaining agreement neither required a resume nor provided for an interview by the full commission, a ranking by the chief or a 2/3 consensus of the commission on the top three candidates. Complaint ¶ 47.

In early August 2002 there was a meeting to discuss additional hiring for the Weston Police Department. Prior to the meeting, there was a discussion between Chief Land and the Commission members about the morale problem in the Police Department. Complaint ¶ 52. Chief Land suggested to Police Commissioner Louis Goldberg that morale would improve if they got "rid of the old guys." Complaint ¶ 52; Exhibit 5; Louis Goldberg Deposition Transcript at 6.

### (6) 2002 Sergeant's Examination

On August 6, 2002, Officer Filush took the written portion of the Sergeant's examination administered by the defendant. Complaint ¶ 53. That evening the Commission held its monthly meeting. Complaint ¶ 54. At the Commission's meeting, Commissioner Goldberg asked Chief Land about Officer Filush and the Department Training Officer position. Complaint ¶ 54. Chief Land told Commissioner Goldberg that Officer Filush was not interested in the position and said "you know his bad attitude." Complaint ¶ 54.

On August 13, 2002, Chief Land sent a letter to Lieutenant Mark Grecco regarding the oral portion of the Sergeant's examination, which was to be held on August 29, 2002. Complaint ¶ 55. Chief Land's letter indicated that the new Sergeant would be assigned many "staff support" duties. Complaint ¶ 55. Chief Land's letter suggested, in light of the staff support duties, that "some questions dealing with the areas of technical knowledge of the tasks assigned to the Staff Support Sergeant" ought to be asked. Complaint ¶ 55. Chief Land also suggested in his letter that "in-depth" follow up questions would be appropriate. Complaint ¶ 55. Subsequently, the majority of the

questions for the oral portion of the August 2002 Sergeant's examination focused on technology and implementing policies and procedures. Complaint ¶ 57.

Chief Land attended the oral portion of the August 2002 examination, presumably because the Commission no longer allowed Chief Land to attend the final selection phase. Complaint ¶56. John Filush and John Troxell both scored an 85.00 on the written portion of the 2002 Sergeant examination, tying for the highest score. Exhibit 6; 2002 Sergeant's Examination Scores. Patrick Daubert, who received the promotion, received a written score of 79.00 (the fourth highest score). See Exhibit 6. Officer Daubert scored a 96.33 on the oral portion of the examination, making him the highest ranked candidate and ultimately the candidate promoted. John Filush scored a 71.14 on the oral portion of the examination, making him the lowest ranked candidate for that portion of the examination. See Exhibit 6. Prior to the August 2002 Sergeant's examination, Officer Daubert had been given special assignments by Chief Land similar to the duties of a Staff Support Sergeant. Complaint ¶ 57. Filush had the highest written score, but his combined written and oral scores ranked him as fourth among promotional candidates, making him ineligible for promotion. Complaint ¶ 56

After the oral portion of the examination, Chief Land told Officer Filush that his oral score had been reduced because he was "less than truthful" on his resume. Complaint ¶ 58. Chief Land mentioned that Officer Filush had an incomplete Master's Program on his resume. Complaint ¶ 58. Officer Filush explained to Chief Land that he had been accepted into a program prior to his service with the Weston Police Department and he included it on his resume merely to demonstrate to the panel his interest in continuing education. Complaint ¶ 58. Officer Filush's resume does not claim that he received his Master's Degree. Rather, it states," University of New Haven, Masters Program – Public Administration – not completed." Exhibit 7; Officer John Filush's Resume.

In October 2002, the Commission met and, by a vote of six to one, decided that the Candidate Interview Procedure it had implemented did not violate the collective bargaining agreement. Complaint ¶ 61. The Commission denied Officer Filush's grievance. Complaint ¶ 61.

6

**B. Chief Land's Discriminatory Age-Related Comments**

Over the years that Officer Filush has been working for the defendant, Chief Land has repeatedly demonstrated his favoritism for younger Police Officers and disdain for older police officers. For example, in the early 1990's, in a conversation with Louis Goldberg, who, at the time was serving as the State of Connecticut's Commissioner of the Department of Motor Vehicles, Chief Land referred to the members of the Connecticut Police Chief Association as "those other guys, they're the old guys. These guys...[the members of the Connecticut Police Executive Forum to which he belonged] they're on the leading edge, they're the young Turks." See Exhibit 5 at 93.

### (1) Chief Land's Assertion that the Police Department Needed to "Get Rid of the Old Guys and Hire Young Guys"

In August 2002, just before the Commission was to choose a candidate to promote to Sergeant, Chief Land made derogatory comments about older police officers at a meeting with the Board of Selectmen. Exhibit 8; Affidavit of Louis Goldberg, ¶ 5. During a discussion concerning department morale, Chief Land asserted that the way to improve morale would be to "get rid of the old guys and hire young ones." See Exhibit 5 at 61-63, 74-75; Exhibit 8, ¶ 5. Given the context in which the comment was made, Louis Goldberg, who was serving at that time as a Police Commissioner for the Town of Weston, interpreted Chief Land to refer to Officer Filush and another veteran officer, Dan McInnis[1]. See Exhibit 5 at 89.

### (2) Field Training Officer's Position

On August 6, 2002, one week after Chief Land's assertion that the department needed more "young guys," the Commissioners had a discussion about why Officer Filush had been denied the Field Training Officer position. See Exhibit 8, ¶ 9. Chief Land indicated that he did not want the "old guys" even to train the "young guys." See Exhibit 8, ¶ 9.

**C. Request For Reasonable Accommodations**

### (1) Accommodations for March 2000 Sergeant's Examination

---

[1] Officer McInnis has also filed an age discrimination claim under ADEA and the CFEPA that is currently pending in the District of Connecticut. McInnis v. Town of Weston, No. 3:03CV01803 (JBA).

In January 2000, Officer Filush submitted a letter to Chief Land requesting accommodations for the March 2000 Sergeant's examination. Exhibit 9; January, 2000 Request for Reasonable Accommodations. Chief Land sent Officer Filush a letter in response to Officer Filush's request. Exhibit 10; January, 2000 Letter from Chief Land to John Filush. In his letter Chief Land expressed his displeasure at the timing of Officer Filush's request, indicating that almost one month had passed between the notice announcing the Sergeant's examination and Officer Filush's request for accommodations. See Exhibit 10. In this same letter Chief Land requested documentation of Officer Filush's disability. See Exhibit 10.

Later that month in January, 2002, Officer Filush supplied Chief Land with a letter from Dr. Robert S. Kruger, Ph. D., who is a Psychologist. Exhibit 11; Dr. Kruger's January, 2000 Letter to Chief Land. Dr. Kruger determined that Officer Filush required extra time on his examination as a testing accommodation. See Exhibit 11. During a conversation between Chief Land and Dr. Kruger, Dr. Kruger suggested that Officer Filush would require twice the allotted time to take the examination. Complaint ¶ 34. Chief Land stated that he would allow the plaintiff an additional 50% of the allotted time. Complaint ¶ 36.

### (2) Accommodations for August 2002 Sergeant's Examination

In July 2002, Officer Filush sent a letter to Chief Land requesting testing accommodations for the August 2002 Sergeant's examination. Complaint ¶ 51; Exhibit 12; July, 2002 Request for Accommodations. Chief Land did not respond to Officer Filush's request. Complaint ¶ 51. Ultimately, Officer Filush was allowed one additional hour to take the August 2002 Sergeant's examination. Complaint ¶ 53.

### III. STANDARD OF REVIEW

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c).

A court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only where 'no reasonable trier of fact could find in favor of the nonmoving party.'"

Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). According to the Second Circuit, a court may only grant summary judgment "if it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." Terry v. Ashcroft 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted). The motion for summary judgment should be denied when the "record taken as a whole [would] …lead a rational trier of fact to find" for the nonmoving party. Mack v. Otis Elevator Co, 326 F.3d 116, 123 (2d Cir. 2003).

On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Collins v. Christopher, 48 F. Supp. 2d 397, 401 (S.D.N.Y. 1999) (citing Brandy v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988). "When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury." Richardson v. Metropolitan District Commission, 2003 WL 21727781, *3 (D. Conn. 2003).

Summary judgment is not appropriate in the present case because there are genuine material issues of material fact that warrant a denial of summary judgment.

## IV. LEGAL ARGUMENT

### A. PLAINTIFF'S EVIDENCE OF DISCRIMINATION WHICH ARE TIME-BARRED CAN STILL BE CONSIDERED AS BACKGROUND EVIDENCE OF DISCRIMINATION.

The defendant argues that the majority of the plaintiff's allegations are time barred. The defendant surprisingly relies on National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002) as the basis of its argument. The Supreme Court's decision permitting plaintiffs in employment discrimination cases to introduce background evidence of discrimination which occurred before the statutory filing period was not restricted only to hostile work environment claims. Rather, the Supreme Court in Morgan stated that Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. at 122. The same principal the Court recognized in Morgan concerning the use of background evidence applies here.

9

Officer Filush is not seeking to put forth background evidence to demonstrate continuity but, rather, is offering this evidence to support his claim that the respondent denied him a promotion in September 2002 due, in part, to his age.

The plaintiff has never been promoted to Sergeant. The last date the plaintiff was denied a promotion was on or about September 1, 2002. See Complaint ¶52. Both the plaintiff's Connecticut Commission on Human Rights and Opportunities ("CHRO") and its Equal Employment Opportunity Commission ("EEOC") complaint forms indicated the September 1, 2002 denial for promotion as the last date that discrimination took place. The plaintiff's complaint was filed with the CHRO and EEOC on or about November 5, 2002. Because the plaintiff's complaint was filed in November, 2002, he is well within the 180-day filing period with the CHRO and the 300-day filing period for the EEOC.

Chief Land's comments in or around 1992 to Commissioner Goldberg referring to police officers as "those other guys, they're the old guys. These guys...they're on the leading edge, they're the young Turks" is admissible to show Chief Land's long term bias against older police officers. So is Chief Land's February 2002 statements to the Board of Finance committee, where Chief Land told the board members "officers are getting up there in age ... our average is 40-something." Exhibit 13; Videotape of February, 2002 Town of Weston Board of Finance Committee Meeting. Chief Land also stated that "new" employees were more desirable because they "get less vacation and take less sick time." See Exhibit 13. Chief Land commented that he had officers on "disability" and mentioned that some officers planned to retire. See Exhibit 13. Chief Land's January 2000 statement to Officer Filush stating "you're too smart to have a disability" is also admissible to demonstrate Chief Land's bias against older disabled officers. Complaint ¶32

**B. THERE ARE QUESTIONS OF FACT AS TO WHETHER THE DEFENDANT'S FAILURE TO PROMOTE THE PLAINTIFF WAS DUE TO THE PLAINTIFF'S AGE.**

The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§621 et. seq. makes it unlawful for an employer to discriminate against an employee because of an individual's age. In order to establish a prima facie case for discriminatory

failure to promote, a plaintiff must demonstrate: (1) membership in a protected class; (2) application for promotion to a position for which he was qualified; (3) rejection for the promotion; and (4) circumstances giving rise to an inference of discrimination. Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 386 (2d Cir. 2000). Claims under the ADEA may be established through the presentation of either "direct evidence" or "circumstantial" evidence. Ostrowski v. Atlantic Mutual Insurance, 968 F.2d 171, 182 (2d Cir. 1992)

### (1) Direct Evidence Is Not Needed For A Plaintiff To Prove His Prima Facie Case

The defendant acknowledges that "courts have frequently pointed out that 'direct' evidence rarely exists in employment discrimination cases." See Defendant's Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem. of Law") at 13, citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, despite this observation, the defendant invests substantial time concluding that because there is no direct evidence in this case, summary judgment should be granted. Direct evidence is not needed, however, for a plaintiff to prove his prima facie case for purposes of summary judgment.

The Second Circuit has observed that "strictly speaking, the only 'direct evidence' that a decision was made 'because of an impressible factor would be an admission by the decisionmaker such as 'I fired him because he was too old.' Even a highly-probative statement like '[y]ou're fired, old man' still requires the fact finder to draw the inference that the plaintiff's age had a causal relationship to the decision." Ostrowski v. Atlantic Mutual Insurance, 968 F.2d 171, 181 (2d Cir. 1992). In Rosen v. Thornburg, 928 F.2d 528 (2d Cir. 1991), the Second Circuit Court of Appeals also observed that, "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." Id. at 533.

It is not surprising that "the plaintiff has failed to produce any [direct] evidence that he was told he was not promoted because of his age." Def. Mem. of Law at 13. It is unlikely that Chief Land or anyone else in the Town would directly tell Officer Filush that he was repeatedly past over for promotions because he was too old. It is even less surprising that Officer Filush did not have "firsthand knowledge" that he was being

11

discriminated against on the basis of his age. Officer Filush did not testify, however, as the defendant claims, that "he did not believe he was discriminated against on the basis of his age ...." Def. Mem. of Law at 13. In Danzer v. Nordan Systems, Inc., 151 F.3d 50 (2d Cir. 1998), the Second Circuit observed in an ADEA case that "[i]n discrimination cases the only direct evidence available very often centers on what the defendant allegedly said or did. Since the defendant will rarely admit to having said or done what is alleged, and since third-party witnesses are by no means always available, the issue frequently becomes one of assessing the credibility of parties." Id. at 57 (citation omitted). The Second Circuit's observation in Danzer echoes its previous recognition in Rosen that "[e]mployment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." 928 F.2d at 533.

    **(a)**     <u>**Chief Land's statement that morale would improve if they got "rid of the old guys" could constitute direct evidence of age discrimination**</u>

The defendant first challenges the credibility of Commissioner Goldberg, who stated in both a sworn affidavit and during his deposition that Chief Land commented that morale would improve if they got "rid of the old guys." See Exhibit 5 at 74; Exhibit 8, ¶5. The defendant contends that "the other Police Commissioners present at the time uniformly testified that Chief Land made no discriminatory remark at any time." See Def. Mem. of Law at 14. Actually, the only thing that the other Police Commissioners "uniformly" testified to was that they "don't remember" any age related comments being made by Chief Land. Exhibit 14; Affidavits of Police Commissioners (other than Louis Goldberg). The other Police Commissioners' inability to recall whether Chief Land made the age-related comments overheard by Commissioner Goldberg does not prove that Chief Land never made those statements. In fact, the Police Commissioners also acknowledged that numerous conversations were taking place while the Commission waited in the hallway and an empty room to meet with the Board of Selectman. Surprisingly, the defendant also relies on Chief Land's self-serving proclamation that he never made such age-related statements. However, the issue of whether Chief Land made these age-related comments is a question of fact for the jury. Holtz v. Rockerfeller & Co., 258 F.3d 62, 78 (2d Cir. 2001).

The defendant contends that the remark, "'if you want to improve morale, get rid of the old guys and hire young ones' neither is direct evidence of discrimination nor is relevant in any way to this case, for three independent reasons." See Def. Mem. of Law at 14.

1. <u>The defendant argues that courts have rejected the phase "out with the old, in with the new"</u>

According to the defendant, "several federal courts have expressly rejected the phrase "out with the old, in with the new." Def. Mem. of Law at 14;(citing only two cases to support this proposition: <u>Welch v. First Albany Corp.</u>, 1999 WL 1069525 (N.D.N.Y.)(annexed as Exhibit 15) and <u>Vogel v. Travelers Ins. Co.</u>, 1994 WL 474871 (4th Cir. 1994). The Second Circuit has not rejected the phrase "out with old, in with the new" as evidence of discrimination.

As the defendant contends, the Northern District of New York in <u>Welch v. First Albany Corp.</u>, 1999 WL 1069525, at *1 (N.D.N.Y.), stated that the phrase "out with the old, in with the new" did not constitute a factual issue giving rise to a <u>prima facie</u> case. However, the defendant failed to mention that the court inferred that the statement coupled with other facts could create a factual issue for the jury, stating "[t]his colloquial expression is not an age-related utterance. Corporate turnover is a common, if unfortunate event, and 'sweeping out the old for the new' does not constitute a basis for an age-discrimination case. Moreover, there are no other reasonable inferences or facts coupled with this statement to create a factual issue for a jury." <u>Id</u>. at *1.

In <u>Danzer v. Norden Systems, Inc.</u>, 151 F.3d 50 (2d Cir. 1998) the Second Circuit relied, in part, on a supervisor's derogatory reference to age to reverse a district court's decision granting an employer's motion for summary judgment in an ADEA case. The plaintiff's supervisor referred to his current staff as "alta cockers," which is a Yiddish term meaning "old fogies." <u>Id</u>. at 53. The Second Circuit concluded that, in light of other indicia of age discrimination which had been presented, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." <u>Id</u>. at 56.

2. <u>The defendant argues that there is no "temporal proximity"</u>

According to the defendant, "the alleged remark on August 6, 2002 cannot