constitute direct evidence because it has no temporal proximity to Chief Land's June 10, 2002 announcement of a vacancy in the rank ... June 15, 2002 'notice of interest' ... or September 11, 2002 Promotional List ...." Def. Mem. of Law at 15-16. However, less than four (4) weeks after he made the age-related comments, on the August 29, 2002 oral portion of the examination, Chief Land devised interview questions and participated in the interview process which resulted in Officer Filush finishing last in the oral portion of the examination (one candidate did not receive any score) after tying for first on the written portion of the examination over which Chief Land had no influence.

Chief Land stated that the department needed to get "rid of the old guys" and, seven days later, on August 13, 2002, sent a letter to Lieutenant Mark Grecco telling him what type of questions to ask on the oral portion of the examination. Complaint ¶55. Less than two weeks after that, Chief Land sat in on the oral portion of the 2002 Sergeant's examination.

If the court concludes that temporal proximity is a factor in its analysis, neither the June 10, 2002 announcement of the vacancy for Sergeant position nor the plaintiff's June 15, 2002 "notice of interest" are relevant dates because those are not the discriminatory actions being challenged. Rather, the relevant time period began on August 6, 2002, when Chief Land told the Commission to "get rid of the old guys" and ended five (5) weeks later with the announcement of the September 11, 2002 promotional list which excluded the plaintiff.

In Danzer v. Nordan Systems, Inc., 151 F.3d 50 (2d Cir. 1998), for example, the Second Circuit rejected the defendant's argument that the court should not consider, on a motion for summary judgment, a supervisor's derogatory age-related comments made well over a year before the plaintiff was terminated. Id. at 55-56.

The Second Circuit has repeatedly recognized in retaliation cases, where the question of temporal proximity often arises, that time periods ranging from one month to eight months between the protected behavior and the retaliatory action established temporal proximity. See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir. 1999) (discriminatory acts within one month of receipt of disposition notices may be retaliation for initiation of lawsuit more than one year earlier); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than

two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights agency provided prima facie evidence of a causal connection between protected activity and retaliation); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); see also Hernandez v. Kellwood Co., 99 Civ. 10015, 2003 WL 22309326 at *20 (S.D.N.Y.) (annexed as Exhibit 16) (where plaintiff was fired five months after filing her EEOC charge, court found "a close enough temporal connection to establish the forth prong of the prima facie case"); Suggs v. Port Auth. of New York & New Jersey, 97 Civ. 4026, 1999 WL 269905 at *6 (S.D.N.Y.) (annexed as Exhibit 17) (six-month gap between EEOC charge filing and termination close enough to raise inference of retaliation).

      3.      <u>The defendant argues that the remark is "an isolated comment by a non-decisionmaker"</u>

The defendant erroneously states, "it is uncontroverted that Chief Land never directed anyone to utilize age as a factor to determine whether an employee should be promoted and never even spoke with the Commission about what decision they should make." See Def. Mem. of Law at 17. Chief Land devised the type of questions that would be asked on the oral portion of the 2002 Sergeant's examination. Chief Land sent a letter to Lieutenant Mark Grecco on August 13, 2002 informing him that the new Sergeant for consideration would be assigned as a "Staff Support" function. Chief Land told Lieutenant Grecco to ask, in addition to supervisory questions, "some questions dealing with the areas of technical knowledge of the tasks assigned to the 'Staff Support' sergeant." Complaint ¶55. Chief Land also indicated in his letter to Lieutenant Grecco that he would like to measure the candidate's long-term commitment and problem solving ability. Chief Land stated that "in-depth" follow up questions would be appropriate.

Prior to the 2002 Sergeant's examination, Chief Land gave 37- year-old Officer Daubert special assignments that included duties similar to those of a "Staff Support." It was not surprising when Officer Daubert scored the highest on the oral portion of the examination.

Chief Land's participation was not limited to preparing questions for the oral portion of the 2002 Sergeant's examination. Chief Land sat in on the oral portion of the examination. Complaint ¶62. He also ranked the candidates scores and was permitted to give his "opinion" to the Commissioners. Complaint ¶62. Chief Land's opinion was given great weight, as Commissioner Brady noted, "it's going to be his person." Exhibit 18; Deposition Transcript of William Brady at 18.

Chief Land did not have to "direct anyone to utilize age as a factor" because there is evidence from which a jury could conclude that he already did that. Only the top three candidates were presented to the Commission for consideration. The Commission was not part of the process of how those candidates came before them. Chief Land had the ability, and exercised that ability, to influence the oral examination scores and, as a result, also influenced who would be the top three candidates from whom the Sergeant position would be filled.

The defendant contends that the Town of Weston should escape liability because the Commission decides who will be Sergeant. The defendant claims that Chief Land's age-related remark, "get rid of the old guys," is "irrelevant" presumably because he is not a decisionmaker. Def. Mem. of Law at 16-17.

In Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999), the Second Circuit held that, "[t]he impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision ... [t]his is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." Id. at 450 (internal quotes omitted).

Chief Land clearly played a "meaningful role" in determining who would "qualify" to be considered for the position of Sergeant.

### (b) Chief Land's other age-related remarks and incidents cited by the plaintiff are evidence of discrimination

The defendant contends that any other statements made by Chief Land, presumably other than "get rid of the old guys," do not constitute direct evidence, are irrelevant or are time barred. Def. Mem. of Law at 19-23. The plaintiff relies on the following statements by Chief Land, not as direct evidence to establish a prima facie case

16

of discrimination but to show discriminatory bias by a person with great influence over the decision-making process: (1) Chief Land's statement to Commissioner Goldberg where he referred to the members of the Connecticut Police Chief Association as "those other guys, they're the old guys. These guys... [the members of the Connecticut Police Executive Forum] they're on the leading edge, they're the young Turks." See Exhibit 5 at 93; (2) Chief Land's February 2002 statement to the Board of Finance Committee Members, "officers are getting up there in age ... our average is 40-something." See Exhibit 13; (3) Chief Land's February 2002 comment during the Board of Finance meeting – while discussing his concerns about the fact that Weston's police officers were getting "up there" in age - that "new" employees "get less vacation and take less sick time." See Exhibit 13; (4) Chief Land's August 2002 statement to Commissioner Goldberg that "he did not want old guys training new guys." See Exhibit 8, ¶9.

The United States Supreme Court has allowed otherwise time barred evidence in to establish discrimination. In National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002), the Supreme Court permitted plaintiffs in employment discrimination cases to introduce background evidence of discrimination which occurred before the statutory filing period. Morgan was not restricted only to hostile work environment claims. Rather, the Supreme Court in Morgan stated that Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. at 122.

Despite the defendant's contention, Chief Land's age-related comments are not "irrelevant." Rather, they are permissible illustrations of the deep rooted age-based bias of Chief Land.[2]

### (2) The Plaintiff Has Satisfied His Burden Under McDonnell Douglas v. Green

The McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) burden shifting framework is used to assess discrimination claims under the ADEA. Id. at 802.

---

[2] In a transparent attempt to persuade the court that Chief Land could not discriminate based on age because he is in the protected category under the ADEA, the defendant disclosed in its Motion for Summary Judgment, its Local Rule 56(a)(1) Statement and in its accompanying Exhibits that Chief Land is presently 56 years of age. See Def. Mem. of Law at 17; Def. Local Rule 56(a)(1) Statement ¶51; Def. Exhibit CC. However, in Danzer, 151 F.3d at 50 (2d Cir. 1998), the Second Circuit observed in an ADEA case that "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable." Id. at 55.

17

Under the McDonnell Douglas framework, when the plaintiff has no direct evidence, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. In order to establish a prima facie case of discrimination, the plaintiff must show: (1) membership within the protected class; (2) qualification for the employment; (3) an adverse employment decision; and (4) circumstances that give rise to an inference of discrimination. Id. The burden of proof that a plaintiff must meet at the prima facie stage in order to survive summary judgment is de minimis. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 504 (1993). The plaintiff has met each of the four prongs of a prima facie claim under the ADEA. In 2002, the plaintiff was excluded from the final three candidates for the promotion to Sergeant under circumstances which give rise to an inference of age discrimination at a time when he was 48 years old and, therefore, within the protected class of over 40 years of age under the ADEA.

### (a) **Plaintiff was qualified for the position of Sergeant**

The defendant would like this court to believe that the issue of "qualification" is cut and dry. According to the defendant, "[t]he evidence is undisputed that only the three individuals with the highest number of points are considered for appointment to Sergeant." Def. Mem. of Law at 24. Because the plaintiff "did not score in the top three, he was not qualified for appointment and his candidacy was not considered by the Police Commission." Def. Mem. of Law at 25. What the defendant fails to mention was that the plaintiff has alleged that Chief Land influenced the candidates final scores and, hence, their qualifications for promotion. If, as the plaintiff alleges, Chief Land's bias against older police officers influenced the applicants' scores, the plaintiff arguably would have been "qualified"[3] for the position of Sergeant. Therefore, there is a question of fact as to whether Sergeant Land's derogatory comments about older police officers, in general, and John Filush, in particular, had any impact on the oral examination scores and the subsequent selection of the three finalists for Sergeant position.

Chief Land personally orchestrated the questions to be asked on the 2002 examination. On August 13, 2002, Chief Land sent a letter to Lieutenant Mark Grecco regarding the oral portion of the Sergeant's examination which was to be held on August 29, 2002. Chief Land indicated in his letter that the new sergeant for consideration would

---

[3] The plaintiff would have scored in the top three and been qualified for appointment to Sergeant.

18

be assigned as a "Staff Support" function. Chief Land told Lieutenant Grecco to ask, in addition to supervisory questions, "some questions dealing with the areas of technical knowledge of the tasks assigned to the 'Staff Support' sergeant." Complaint ¶55. Chief Land also indicated in his letter to Lieutenant Grecco that he would like to measure the candidate's long-term commitment and problem solving ability. Chief Land stated that "in-depth" follow up questions would be appropriate. Chief Land did not send similar letters to the other panel members for the August 29, 2002, oral portion of the Sergeant's examination. Chief Land attended the oral portion of the August 2002 examination because the Commission no longer allowed Chief Land to attend the deliberation phase. Complaint ¶55.

The plaintiff and John Troxell both scored an 85.00 on the written portion of the 2002 Sergeant examination, producing the highest score. Patrick Daubert, who received the promotion, received a written score of 79.00 (the fourth highest score). Officer Daubert scored a 96.33 on the oral portion of the examination, making him the highest ranked candidate and ultimately the candidate promoted. Officer Daubert's oral examination score was not surprising since, prior to the August 2002 Sergeant examination, the 37- year-old Officer Daubert had been given special assignments by Chief Land similar to the duties of a "Staff Support" Sergeant such as upgrading the computer systems and authoring a procedure and paperwork guide. Complaint ¶57. The majority of the questions for the oral portion of the August 2002, Sergeant's examination focused on technology and implementing policies and procedures. Complaint ¶57. Chief Land's actions and statements illustrate discriminatory conduct against the plaintiff because the evidence reflects that he favored the 37-year-old police officer to the detriment of the 48-year-old plaintiff.

There is a question of fact as to whether Chief Land had the ability to manipulate the candidates' scores, which resulted in Officer Daubert being better prepared for the oral portion of the examination. Therefore, there is a question of fact as to whether the plaintiff was not among the top three candidates, not because he was not qualified, but because of Chief Land's bias against older police officers. According to Commissioner Peter Ottomano, "the chief [Land] would participate in that last session where he not only be present during the interview process but also during the deliberation process. So my

19

concern was that there would be an inclination on the part of the chief, and maybe human nature being what it is certain board members might be overly influenced by the chief's attendance in that final deliberation process." Exhibit 19; Deposition Transcript of Peter Ottomano at 7. Commissioner Ottomano compared Chief Land's involvement in the promotion process to that of an intruder to a jury deliberation, stating "it was like a jury having an extra person in the room when the jury is supposed to be making the decision and no one else but the jury is supposed to be making the decision." See Exhibit 19 at 7; (see also Exhibit 20; Deposition of Richard Saltz at 13 (Q: "why was [Land] asked to be there [deliberation process]. A: "From my perspective was to give me some insight as to sort of the personnel view of the three candidates."); Exhibit 18 at 18 (Q: "why would [Land] be here when you are either interviewing candidates or selecting the best candidate?" A: "It's going to be his person. He's the manager. The person is going to work for him. There is no reason why he shouldn't be here"). There is a question of fact as to whether comments made by the "intruding juror," Chief Land, played a role in Officer Filush's dramatic decline from being tied for first after the written portion of the examination to fourth after the oral portion of the examination.

In Hurd v. JCB International Credit Co. LTD., 923 F. Supp. 492 (S.D.N.Y. 1996), the plaintiff alleged that the defendant intentionally used an arbitrary method of evaluating worker success in order to favor the younger men in her department. The defendant relied on its arbitrary performance evaluation in justifying promoting a younger, less experienced worker over the plaintiff and later claimed that the plaintiff was not "qualified" for the position. Id. at 502. In Hurd, the court refused to conclude that the plaintiff was unqualified claiming, "one cannot overlook the fact that at the heart of plaintiff's case is her charge that the evaluation scheme was itself biased and thus should not be used as a way to disprove her qualifications for the job." The court concluded that "plaintiff raises serious questions about the validity of the methodology employed by defendant that certainly raise a genuine issue of fact that it was utilized in such a way to single her out for poor evaluations in favor of the other salespersons who were – for most of plaintiff's tenure with defendant – all younger men." Id. at 501; see also Greene v. State of New York, 1998 WL 264838, *6 (S.D.N.Y.)(annexed as Exhibit 21)("Since Plaintiff has pointed out a sufficient basis from which a trier of fact could

conclude [Plaintiff's performance] evaluations were done in bad faith, the Court cannot utilize them to find that Plaintiff was not 'otherwise qualified' as a matter of law").

The Town of Weston is trying to do the same thing the defendant attempted and failed to do in Hurd --- deflect attention away from its discriminatory hiring process and point to arbitrary assessments to claim the plaintiff was not qualified. These are questions properly left for a jury.

### (b) The plaintiff was subjected to an adverse employment action under circumstances giving rise to an inference of age discrimination

The plaintiff was passed over for a promotion in 2002 that was given to Patrick Daubert, who was twelve (12) years younger than the plaintiff. According to the defendant, "a plaintiff alleging age discrimination should show that the comparable employee who received more favorable treatment was substantially younger than the plaintiff." Def. Mem. of Law at 26. The defendant cited to the Second Circuit's decision in Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984), which held that "the replacement of a discharged employee by someone a year or two younger hardly indicates that the discharge was motivated in whole or part by the former's age." Def. Mem. of Law at 27. However, Mr. Daubert was not merely a year or two younger than the plaintiff. Rather, he was twelve (12) years younger than the plaintiff. In fact, Officer Daubert was the least experienced candidate for promotion (only seven years on the police force compared to the plaintiff's twenty-four years of experience).

When evaluating what would constitute an inference of discrimination, the Second Circuit in Haskell concluded that "[r]eplacement of a 60 year old by a 35 year old or even a 45-year-old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old outside it." 743 F.2d at 122. Clearly, the Second Circuit would think that an age differential of twelve (12) years would be significant enough to suggest an inference of discrimination.

It is well settled that, while the ADEA prohibits discrimination against a person aged 40 and older, it is irrelevant if one person in the protected class loses out to another person in the protected class so long as she lost out on the basis of her age. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996).

21

Under the ADEA, an inference of age discrimination cannot be made when the age differential between the plaintiff and her replacement is "insignificant" or when the individual hired is "only slightly younger." Tarshis v. The Riese Organization, 211 F.3d 30, 38 (2d Cir. 2000) (citing O'Connor, 517 U.S. at 312-13). However, in the Second Circuit "[a] difference of eight years between the age of the person discharged and his replacement is not insignificant." Tarshis, 211 F.3d at 38. Therefore, the twelve year age gap between Officer Filush and Officer Daubert is also not insignificant.

In Rose v. James River Paper Company, 2 F.Supp.2d 245, 251-52 (D. Conn. 1998), Judge Goettel held that there was sufficient evidence to "permit a rational factfinder to infer a discriminatory motive" because, among other things, management made age related comments to the effect that older managers would have to be replaced and the plaintiff's job duties were split between two younger workers. Id. at 252. The plaintiff contended that his supervisor repeatedly asked him when he planned on retiring.

In Gallo v. Prudential Residential Services, 22 F.3d 1219, 1227 (2d Cir. 1994), the court found that the plaintiff established an inference of discrimination where the employer chose to re-assign or hire several younger employees with less experience than plaintiff. Id. at 1227.

The case presently before the court is similar to the Second Circuit's decision in Ferrell v. Leake & Watts, 83 Fed. Appx. 342 (2d Cir. 2003) (annexed as Exhibit 22), reversing the district court's decision granting summary judgment. The plaintiff, a veteran special education teacher for thirty years, was terminated after a new principal took over. In granting summary judgment to the defendant, the District Court reasoned that: (1) Plaintiff was replaced by two teachers over forty, who were also in the protected class; (2) Plaintiff did not show how the defendant's alleged departure from established procedures affected the decision to dismiss her; (3) the new principal was entitled to make her own decision about plaintiff's merits as a teacher; and (4) Plaintiff did not demonstrate that the vice-principal who purportedly made age related comments (Plaintiff is "too old to be in a classroom") had final say with respect to her employment. Id. at 346.

The Second Circuit in Ferrell rejected the lower court's reliance on Ekwegbalu v. Cent. Parking Sys., 2000 WL 1371335, 2000 U.S. Dist. LEXIS 13545 (S.D.N.Y. 2000)

22

(annexed as Exhibit 23) which stated that "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Instead, the Ferrell Court endorsed its reasoning in Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999), that, "[t]he impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision ... [t]his is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." Id. at 450 (internal quotes omitted). Ferrell determined that the vice-principal "did play just such a meaningful role in the promotion process, and that her evaluations of [Plaintiff's] classroom performance ... contributed substantially to the ultimate adverse employment decision." 83 Fed. Appx. at 346. The Second Circuit concluded that "although the other circumstances surrounding Plaintiff's termination may not independently give rise to the conclusion that she was fired on account of her age, they do, taken together with [the vice-principal's] remark, support an inference of discrimination." Id.

In the present case, the plaintiff has presented sufficient evidence giving rise to an inference of discrimination: (1) Patrick Daubert, was twelve years younger than the plaintiff and awarded the promotion to Sergeant in 2002; (2) Patrick Daubert was less experienced than the plaintiff (seven years of service compared to the plaintiff's twenty-four years of service); and (3) Chief Land influenced the examination process by preparing questions for the oral portion of the 2002 examination, attending the oral portion of the examination and submitting his ranking and choice of candidates to the Commission. Chief Land also made discriminatory, age-related remarks, such as:

- In the early 1990's, in a conversation with Commissioner Goldberg, Chief Land referred to the members of the Connecticut Police Chief Association as "those other guys, they're the old guys. These guys...[the members of the Connecticut Police Executive Forum] they're on the leading edge, they're the young Turks." See Exhibit 5 at 93.

- In February 2002, Chief Land told the board members of the Board of Finance Committee, "officers are getting up there in age ... our average is 40-something." See Exhibit 13.

23

- In February 2002, Chief Land also insinuated during the Board of Finance meeting that "new" employees were more desirable because they "get less vacation and take less sick time." See Exhibit 13.

- In August 2002, Chief Land told Commissioner Goldberg that morale would improve if they got "rid of the old guys." Complaint ¶52, See Exhibit 5 at 74-75.

- In August 2002, Chief Land told Commissioner Goldberg that "he did not want old guys training new guys." See Exhibit 8, ¶9.

In evaluating whether the plaintiff established that the adverse action occurred under circumstances giving rise to an inference of discrimination, Judge Mark Kravitz cautioned that the court must be "mindful that the burden on [Plaintiff] is extremely minimal at this stage, and that all evidence must be viewed in the light most favorable to Plaintiff." Foster-Bey v. Potter, 296 F. Supp. 2d 195, 205 (D. Conn. 2003). Officer Filush has satisfied his de minimis burden of establishing an inference of age discrimination. It is up to a jury to weigh the credibility and reliability of the witnesses.

### (3) Filush Does Not Have To Show Either That He Was Subjected To Disparate Treatment Based On His Age Or That The Defendant's Purported Non-Discriminatory Reason For Its Actions Was False

If the employer articulates a non-discriminatory reason for the adverse employment action, "the presumption of discrimination raised by the prima facie case 'simply drops out of the picture.'" Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 134-135 (2d Cir. 2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993)). The burden then shifts back to the plaintiff to offer evidence that would allow a reasonable factfinder to conclude that age, and not the proffered reason, was the real reason for the adverse employment action. Id. at 135. The plaintiff may rely on evidence supporting her prima facie case as well as supportable inferences that may be drawn from the false or erroneous character of the employer's proffered reason for that adverse action. Id. (citation omitted). The plaintiff is not required to prove that age was the only or principal factor in the adverse employment action. Id. Rather, the plaintiff is only required to show that age was a substantial motivating factor or at least one of the factors which led to the adverse employment action. Id. (citation omitted).

24

The defendant argues that the plaintiff's ADEA claim should be dismissed because he failed to show either that the plaintiff was subjected to disparate treatment based on age or that the defendant's purported non-discriminatory reason for the adverse employment action was false.

In Holtz v. Rockerfeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001), the Second Circuit held that evidence of disparate treatment is neither an essential element of a prima facie case of discrimination nor necessary at the pretext state of the McDonnell Douglas analysis. Id. at 78 (citations omitted). In Owens v. New York City Housing Authority, 934 F.2d 405 (2d Cir.), cert. denied, 502 U.S. 964 (1991), for example, the Second Circuit held that evidence of an employer's remarks reflecting a discriminatory motive was enough to establish a question of fact as to whether the employer's articulated reasons for its actions was pretextual. Id. at 410.[4]

A plaintiff may be able to avoid summary judgment by showing that the employer's purported non-discriminatory reason for the adverse employment action was false. However, a plaintiff's inability to show that the employer's purported non-discriminatory reason for its actions does not necessarily mean that the employer is automatically entitled to summary judgment. Rather, a plaintiff's burden of persuasion at the summary judgment stage "may often be carried by reliance on that evidence comprising the prima facie case, without more." Holtz v. Rockerfeller & Co., Inc., 258 F.3d 62, 79 (2d Cir. 2001) (citations omitted).

The plaintiff has presented evidence that his supervisor, Chief Land: (1) stated in a meeting of Police Commissioners around one month before interviewing the plaintiff for the Sergeant position to "get rid of the old guys and hire young ones;" (2) stated during the same month that he did not want the "old guys" training the "young guys;" (3) participated in or around August, 2002 the process where candidates for the vacant Sergeant position were interviewed by the Police Commission; and (4) expressed concern

---

[4] The defendant also argues that the defendant could not be liable under the ADEA because in addition to the 37-year-old Patrick Daubert, Richard Palmiero, at 53 years of age, and John Troxell, at 44 years of age, were two of the final three candidates for the Sergeant's position in September, 2002. However, the fact that individuals over 40 were not excluded from the list of final candidates is not dispositive. See Carlton v. Mystic Transportation, 202 F.3d 129, 138 (2d Cir. 2000); Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 39 (2d Cir. 1994). Rather, the only issue before the court is whether John Filush's age was a motivating factor in the events which culminated in his failure to be included in the list of candidates for the Sergeant position that eventually was offered to the 37-year-old Patrick Daubert.

25

that the Town's Police Force was getting "up there" in age and that the veteran police officers used more vacation and sick time than newer police officers. That evidence, without more, raises a question of fact as to whether John Filush's age was a motivating factor in his poor oral examination score which led to his exclusion from being a finalist for the Sergeant's position that eventually was offered to the 37-year-old Patrick Daubert.

> (4) **There Is A Question Of Fact As To Whether The Defendant's Purported Non-Discriminatory Reason For Excluding Filush From The List Of The Three Candidates To Promotion To Sergeant In September, 2002 was Pretextual**

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory business rationale for the adverse employment action. See Viola v. Phillip's Medical System of North America, 42 F.3d 712, 716 (2d Cir. 1994). One way for a plaintiff to avoid summary judgment is by showing that the reason offered by the employer was not its true reason but was a pretext for discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143. See also James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). The plaintiff may "establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging [him] is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." Gallo v. Prudential Residential Services Ltd., Partnership, 22 F.3d at 1225.

The defendant's non-discriminatory reason for not promoting the plaintiff is two-fold. First, the defendant parrots its earlier argument that because the plaintiff was not one of the top three candidates for the 2002 promotion, he was not "qualified" for the position of Sergeant. There is a question of fact as to whether the reason the plaintiff did not score in the top third was due to Chief Land's discriminatory animus towards older police officers, in general, and the plaintiff, in particular.[5] Second, the defendant calls the plaintiff's credibility into issue for listing an incomplete Master's Degree on his resume. Chief Land told the plaintiff he received a lower score on the oral portion of the examination because of his "less than truthful" resume. Complaint ¶58. The plaintiff explained to Chief Land that he merely wanted to demonstrate to the panel that he had an

---

[5] See Section VI; subsection B(2)(a).