FILED

2004 AUG 18 P 2: 15

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN FILUSH | : | NO.: 3:02CV1934 (SRU) |
| v. | : | |
| TOWN OF WESTON | : | AUGUST 18, 2004 |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S, TOWN OF WESTON, MOTION FOR SUMMARY JUDGMENT

1.   The plaintiff argues first (Br. pp. 9-10) that comments attributed to Chief Land in 1992 and 2002 (prior to the statutory filing period) are "admissible to show Chief Land's long-term bias against older police officers." Those claims are time-barred and are not actionable. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S.Ct. 2061 (2002).

The continuing violation doctrine is a limited remedy that permits a plaintiff under certain circumstances to recover for specific types of conduct that violates Title VII even though some of that conduct occurred outside the 300-day filing period. Morgan, 536 U.S. at 115. The continuing violation doctrine does not apply to discrete claims of disparate treatment and retaliation; those claims are time-barred unless a charge is filed within 300 days. Id. ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."); see also Elmenayer v. ABF Freight

System, 318 F.3d 130 (2d Cir. 2003), <u>Peters v. City of Stamford</u>, 2003 WL 1343265 * 4 (D. Conn.), attached as **Exhibit A**.

Here, the failure to promote the plaintiff in September 2002 was a discrete employment action. <u>Morgan</u>, 536 U.S. at 114. Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." <u>Id</u>. Accordingly, the continuing violation doctrine does not apply. Furthermore, the plaintiff does not allege a hostile work environment. <u>See</u> Third Amended Complaint. In sum, plaintiff may not recover for any discrete act for claims brought under federal law that was not asserted within the 300-day limitations period or for any discrete act for claims brought under state law that was not asserted within the 180-day limitations period.[1]

2.      Plaintiff's subjective interpretation of what happened and his speculative conclusions do not rise to the proof necessary to meet the evidentiary threshold for a <u>prima facie</u> case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). Plaintiff relies on not less than 89 references to the allegations in his Complaint as

---

[1] A person claiming to be aggrieved by an unlawful employment practice must file a complaint with the appropriate state administrative agency within 180 days of the alleged discriminatory act. <u>See</u> Conn. Gen. Stat. § 46a-82(e). An employee has 300 days to file a complaint with the EEOC for claims brought under federal law. These time limits are mandatory. <u>See Williams v. Commission on Human Rights and Opportunities</u>, 54 Conn. App. 251, 255 (1999).

2

"evidence" to show there is a factual dispute. (Br. pp. 1 – 40). This is insufficient to preclude summary judgment. Id.

When a motion for summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. Id. Mere conclusory allegations will not suffice. Instead, the non-moving party must present "sufficient probative evidence" to show that there is a factual dispute. Fed.R.Civ.P. 59 (e). Larson v. The Prudential Insurance Company of America, 151 F. Supp.2d 167, 171 (D. Conn. 2001). See also Bickertaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999)("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.")

If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial, then summary judgment is appropriate. Larson 151 F. Supp.2d at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

3.     Plaintiff has failed to establish an essential element of his prima facie case of age discrimination; Officer Filush was not qualified for promotion. The undisputed evidence demonstrates that the Police Commission did not consider plaintiff's candidacy because he was not qualified for promotion when he did not score in the top three. See Plaintiff's Local Rule 56(a)(2) statement, at ¶¶ 7-9, see also **Exhibit A** attached to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, pp. 93-95.

Without producing any proof, Officer Filush contends that by virtue of the fact that he tied for first on the written examination and came in sixth on the oral examination the oral examination must have been manipulated by Chief Land. Br. pp. 14-16). Plaintiff claims that but for Chief Land "influencing the oral examination scores," plaintiff would have placed in the top three and then been qualified for promotion. (Br. p. 14-16) This premise is, however, fatally flawed. Besides the fact that there is no evidence that the Police Commission would have promoted Officer Filush to Sergeant had he placed in the top three, there is no evidence that Chief Land manipulated the scores.

In support of his argument, plaintiff contends that Chief Land influenced his oral examination score by (a) "devising the questions" (Br. p. 14-15, 18, 27-28); (b) giving Sgt. Daubert "special assignments" (Br. p. 15, 19); or (c) "participating in the

interview process" (Br. p. 14, 27-28). Plaintiff fails to cite to any evidence to substantiate these allegations and instead relies on pure speculation.

      a.    There is no evidence supporting plaintiff's assertion that Chief Land "devised interview questions." The evidence shows that the process used for the selection of the questions during the 2002 oral examination was the same process used since 1991. See **Exhibit J**, pp. 42- 46, attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment. Chief Land testified that the panelists drafted the questions and that his participation was limited to making sure enough questions were asked, reviewing of the questions for suitability to the Town of Weston and recording the questions the panelists actually asked. Id. Notably, Plaintiff admits in his Local Rule 56(a)(2) statement that "[e]ach panelist brought a list of questions with him and prior to the examination they reviewed the questions for appropriateness to the Weston Police Department." See Plaintiff's Local Rule 56(a)(2) statement, ¶ 72 (emphasis added).

      b.    There is no evidence to support plaintiff's contention that Chief Land gave Sgt. Daubert "special assignments." (Br. p. 15). In fact, the record shows that unlike Officer Filush, Sgt. Daubert volunteered for extracurricular assignments such as becoming a DARE officer, firearms instructor and COLLECT officer; he wrote grant applications to obtain money for the Police Department as well as a procedures manual. See **Exhibit J**, pp. 53 - 57. "He did it all on his own; volunteered. Nobody

told him to do it." Id. p. 57. See also deposition of Commissioner Goldberg attached as **Exhibit 5** to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, pp. 188-89. Assuming *arguendo* that Chief Land did give Sgt. Daubert "special assignments, plaintiff's perception that Chief Land's motives were discriminatory are mere speculation and not sufficient to defeat summary judgment. Jordan v. Summers, 205 F.3d 337, 343-44 (7th Cir. 2000).

There is no evidence that Sgt. Daubert scored first on the oral examination because he had been given "special assignments" which gave him an unfair advantage on the questions dealing with "technical" skills. (Br. p. 19). Seven categories of questions were asked on the oral examination (Management Judgment, Decisiveness/Initiative, Interpersonal Ability, Oral Communications, Technical Knowledge, Command Presence and Preparation for Position.) See **Exhibit G**, attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment. Only one dealt with technical skills. Id. Of the thirteen questions asked, only two were technology related. See **Exhibit II**, attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment. If the candidates' scores in the category of "Technical Knowledge" were removed from the scoring, the ranking of the candidates would remain unchanged and plaintiff still would have failed to qualify for promotion. See **Exhibit G**, attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment.

    c. The plaintiff has not presented any evidence to support the assertion that Chief Land "influenced" the plaintiff's score by sitting in on the oral examination of all candidates. (Br. p. 14-16). Plaintiff admits in his Local Rule 56(a)(2) statement that "[a]lthough Land was present during the oral examination, he did not participate in the process and he was not present when the panel members deliberated on what scores to award the individuals." ¶ 73. Plaintiff further admits that "Chief Land was not a member of the oral panel and he had no first-hand knowledge of the panel's decision-making process." Id. at ¶ 74.

    4. Plaintiff next argues that Chief Land was "impermissibly bias[ed]." (Br. pp. 16, 27-28). Citing Bickertaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999), plaintiff claims that Chief Land played a "'meaningful role' in determining who would 'qualify' to be considered for the position of Sergeant." (Br. p, 16, 23, 27-28). As evidence of "deep rooted age-based bias" (Br. p. 17), plaintiff cites Chief Land's alleged (1) "young Turk's" comment in 1992; (2) comments on age-related facts at a Board of Finance meeting in 2002; (3) a comment allegedly made to the Commissioners that morale would improve if they "got rid of the old guys"; and (4) a

7

comment allegedly made at a Police Commission meeting that Chief Land did not want "old guys training new guys."[2]

There is no evidence to support plaintiff's contention that Chief Land "[told] the "Commission to 'get rid of the old guys'" (Br. p. 14). Indeed, the evidence shows that Commissioner Goldberg is the only commissioner who allegedly heard the comment that the way to improve morale in the Weston Police Department was to "get rid of the old guys". The plaintiff admits in his Local Rule 56(a)(2) statement that the other Commissioners present at the time "unanimously attested that they had no recollection of Chief Land making an age-based comment." See Local Rule 56(a)(2) ¶ 10.

These comments do not allow for the reasonable inference that Chief Land was biased against older employees. "To prove employment discrimination, the plaintiff must show more than invidious intent. She must also "demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998). "[O]rdinary principles of causation" apply to this inquiry into proximate cause. Id.

There is no evidence that the alleged comments had any impact on the oral examiners. The plaintiff asserts that Chief Land made age-biased comments to the

---

[2] The defendant addressed the four alleged comments in detail in Defendant's Memorandum of Law in Support of Motion for Summary Judgment, pp. 14-23.

Board of Finance and the Police Commissioners but he fails to make a causal connection between the alleged comments and the oral panelists who came from the East Hartford, Orange and Manchester Police Departments. See **Exhibit GG**, attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment. The plaintiff did not even investigate and depose the oral panelists before bringing these spurious allegations.

5. Plaintiff argues that the Town of Weston's articulated reason for failing to promote plaintiff was pretextual. (Br. pp. 20-21). In support of this contention, plaintiff relies on Hurd v. JCB International Credit Card Co. LTD, 923 F.Supp. 492 (S.D.N.Y. 1996). The Court in Hurd found that the plaintiff raised serious questions about the validity of the methodology for the evaluatory methods employed by the defendant. Id. at 501. The plaintiff alleged she was singled out for poor evaluations by (1) failing to take into account her important accomplishments, (2) applying evaluations retroactively to diminish her productivity, and (3) that after the plaintiff was terminated, the defendant ceased using the same standards. As a result, the court found that defendant's proffered reason for terminating the plaintiff for poor sales efforts raised a genuine issue of material fact.

In this case, plaintiff admits that Chief Land "did not participate in the [oral examination] process and he was not present when the panel members deliberated

9

on what scores to award the individuals." See Plaintiff's Local Rule 56(a)(2) statement, ¶ 73. As such, there can be no genuine issue of material fact.

For the reasons above, and in the defendant's prior memorandum of law, the defendant, Town of Weston, respectfully requests that the Court grant its Motion for Summary Judgment.

DEFENDANT,
TOWN OF WESTON

By /s/ Martha Shaw
Martha A. Shaw [ct12855]
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Phone: (860) 249-1361
Fax: (860) 249-7665
E-Mail: mshaw@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via regular U.S. Mail, to the following counsel of record this 18th day of August, 2004.

Gary Phelan, Esquire
Outten & Golden, LLP
Four Landmark Square, Suite 201
Stamford, CT 06901

_____
Martha A. Shaw