**Westlaw.**

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Gregory PETERS, Plaintiff,
v.
CITY OF STAMFORD, Defendant

No. 3:99-CV-764 CFD.

March 17, 2003.

*RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

DRONEY, J.

I. *Introduction*

*1 In this action, plaintiff Gregory Peters ("Peters") alleges that his current employer, the City of Stamford ("Stamford") violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the First and Fourteenth Amendments, and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a-60(a)(1) ("CFEPA"). Specifically, he alleges that Stamford discriminated against him based on his race and retaliated against him on the basis of his opposition to certain enforcement actions of other health inspectors. The relief requested by Peters includes compensatory damages, punitive damages, injunctive relief, and costs and reasonable attorney's fees.

Pending is Stamford's motion for summary judgment [Doc. # 43].

II. *Background* [FN1]

FN1. The following facts are taken from the parties' Local Rule 9(c) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Peters, an African-American, was hired by the Department of Health of Stamford (the "Health Department") on March 13, 1989 as a health inspector. Peters began at the position of "Sanitarian I" and, after an examination, was promoted to "Sanitarian II" on March 13, 1991. On February 7, 1994, Peters left his employment with Stamford to work for the City of Hartford. A few years later, he re-applied for employment with Stamford. On October 28, 1996, Stamford re-hired Peters as a "Provisional Sanitarian II," a temporary position. [FN2] At that time, Peters was denied the permanent position of "Sanitarian II."

FN2. The record does not make clear Peters' job duties. However, they appear to relate to health inspection and other environmental health functions.

On May 6, 1997, Peters entered into a letter agreement with his union and Stamford for a permanent position. In accordance with the letter agreement, Peters became a "Health Inspector II" at level S-13(A) on the pay scale, and another temporary employee, Jane Gibeault ("Gibeault"), a Caucasian, became a "Health Inspector I" at level S-11(E) on the pay scale. The letter agreement did not specify the actual salaries that correlated to the pay scale figures for Peters and Gibeault. The letter agreement also provided for the payment of certain "stipends" in December 1997. [FN3]

FN3. These stipends appear to be payments for completing certain training programs.

Peters and Gibeault secured their new, permanent positions with Stamford without the merit testing and selection process. However, presumably in response to the "waiver" of Peters and Gibeault into these permanent positions, both Peters' and Gibeault's starting salaries were lower than they might have otherwise been if they had tested into their positions. Also, the letter agreement resulted in Gibeault's starting salary being higher than Peters' starting salary, because, though the letter agreement placed Gibeault at a lower grade than Peters on the pay scale, she was at a higher "step" and was thus initially paid more because of the overlapping grade system.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-01934-SRU    Document 80-2    Filed 08/18/2004    Page 2 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 2

Subsequently, however, in May 1998, Peters' salary became higher than Gibeault's, because his "step" in his grade on the pay scale increased.

Peters claims that Stamford's hiring him as a "Provisional Sanitarian II," rather than a permanent "Sanitarian II," paying him a lower starting salary pursuant to the May 6, 1997 letter agreement, and delay in paying him the stipends were the result of discrimination on the basis of his race and retaliation on the basis of his opposition to certain enforcement actions of other Stamford Health Department employees during his previous employment with Stamford. As to retaliation, Peters claims that, during his previous employment with Stamford, he spoke out against certain health inspection activities of his co-workers. Peters claims that he opposed "Sanitarian's wanton disregard of Director of Health closure notice," "selective enforcement activity against Asian operators," "policy of Sanitarian demanding operators purchase equipment from select merchants," "unfair claims for overtime personal work done on City time," "manner in which Sanitarians were assigned overtime," "destruction and removal of information from Department files," "police [sic] of barring non-Caucasions from conducting food service plan review," "falsification of inspection records," and "being pressured to issue permits for projects not in accord with Health regulations." Def's Ex. 4, Response to ¶ 13.

*2 On September 22, 1998, Peters filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), regarding his denial of the permanent position of "Sanitarian II," the lower pay he initially received pursuant to the May 6, 1997 letter agreement, as well as Stamford's delay in paying him the stipends. The CHRO complaint was apparently forwarded to the Equal Employment Opportunity Commission ("EEOC") on October 28, 1998. [FN4]

> FN4. The results of the CHRO and EEOC complaints are not apparent from the record.

Peters filed this action on April 23, 1999, claiming discrimination on the basis of his race and retaliation. Peters alleges violations of Title VII, the First and Fourteenth Amendments, and the CFEPA.

III. *Standard*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " *Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas. Inc.*, 953 F.2d 780, 788 (2d Cir.1992). Additionally "[w]here, as here, the nonmovant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex*, 477 U.S. at 323-24 and *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998)).

The Court exercises caution in granting summary judgment in favor of an employer in employment discrimination cases "when, as here, the employer's intent is at issue." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994)). However, in order to defeat a defendant employer's motion for summary judgment, a plaintiff employee must offer "concrete evidence from which a reasonable juror could return a verdict in his favor" and may demand a trial simply because the central issue is the defendant employer's state of mind. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (internal quotations omitted).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-01934-SRU   Document 80-2   Filed 08/18/2004   Page 3 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 3

IV. *Discussion*

A. *Standing*

*3 At the outset, the Court will address Stamford's argument in its motion for summary judgment that Peters lacks standing to bring any of his causes of action because he "cannot quantify his damages." Def.'s Mem. Supp. Mtn. Summ. J. at 13.

Article III requires the Court to determine whether plaintiff has standing, prior to reaching the merits of the substantive claims. "To bring a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some 'threatened or actual injury resulting from the putatively illegal action....' " *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The Supreme Court has further explained that "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotation marks omitted). Resolving all ambiguities and drawing all inferences in favor of Peters, as the Court must on a motion for summary judgment, the Court concludes that Peters has set forth sufficient evidence of damages, specifically, evidence regarding the pay differential between his and Gibeault's salaries for the period where her salary was higher and the stipends that were allegedly delayed. Accordingly, the Court declines to grant summary judgment on this basis.

B. *Title VII Claims* [FN5]

> FN5. Though it is unclear from the complaint, Peters appears to bring both race discrimination and retaliation claims pursuant to Title VII.

Title VII provides that "[i]t shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Peters alleges that Stamford violated Title VII in two ways: it discriminated against him on the basis of his race and it retaliated against him for opposing certain practices and policies of the Health Department and its employees. Each claim will be examined below.

1. *Discrimination*

As to Peters' Title VII discrimination claim, Stamford makes two arguments in support of its motion for summary judgment: (1) Peters' complaint is untimely, and (2) the alleged adverse employment actions-Stamford's hiring him as a provisional, rather than permanent sanitarian, starting Peters at a lower salary then Gibeault pursuant to the May 6, 1997 letter agreement, and its delay in paying Peters certain stipends-did not occur under circumstances evincing an intent to discriminate, and thus, Peters has not put forward sufficient evidence to establish a prima facie case. Each issue will be discussed below.

a. *Untimeliness*

Generally, discrimination claims under Title VII must be filed with the EEOC within 180 days of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, when one has filed a charge of discrimination in a state or locality that has its own anti-discrimination laws and an enforcement agency, the time period for filing claims with the EEOC is extended to 300 days of the occurrence of the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir.1996). Connecticut has both anti-discrimination laws and an anti-discrimination agency-the CHRO-and Peters filed a charge of discrimination with the CHRO. Thus, the 300 day limit applies.

*4 Here, Peters filed his charge of discrimination with the CHRO on September 22, 1998. [FN6] As a result, incidents of discrimination that occurred before November 28, 1997, 300 days before September 22, 1998, are time-barred. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998).

> FN6. The Court assumes for the purposes of this ruling that Peters' filing with the CHRO controls for purposes of the determining the relevant limitations period.

Peters argues that the continuing violation exception applies in this case. *See* Pl.'s Opp'n Mtn. Summ. J. at 5. The Second Circuit has recognized an exception to the 300-day limitation period in cases involving a "continuing violation." *See Cornwell v. Robinson*, 23

Case 3:02-cv-01934-SRU    Document 80-2    Filed 08/18/2004    Page 4 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 4

F.3d 694, 703-04 (2d Cir.1994).

As an initial matter, a plaintiff may not rely on the continuing violations exception unless he has asserted the theory in prior administrative proceedings. *See Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001), *cert. denied,* 122 S.Ct. 2586 (2002). In his CHRO complaint, Peters alleged that Stamford violated his rights when it designated him as a "Health Inspector II" with a pay grade of S-13(A) on May 6, 1997 and later denied him certain stipends to which he was entitled. Def.'s Ex. 3. Peters also states in his CHRO complaint that he has "and continue[s] to feel aggrieved and humiliated by these circumstances." In the box entitled "Date Most Recent or Continuing Discrimination Took Place," Peters indicated September 22, 1998. While these statements do not clearly indicate Peters' reliance on a continuing violations theory, the Court concludes that they are sufficient to invoke the continuing violations exception here. *Cf. Fitzgerald,* 251 F.3d at 363 (determining that the plaintiff had sufficiently raised the issue where letters from the state agency indicated that the violations alleged began on a date that would otherwise have been time-barred, though in that case the agency also specifically stated that she was seeking to rely on a continuing violations theory).

The Second Circuit had previously held that the continuing violations doctrine extends the statute of limitations for all claims of discriminatory acts committed under an "ongoing policy of discrimination." *Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 82 (2d Cir.2001); *see also Fitzgerald,* 251 F.3d at 359 (holding that a continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice"); *Quinn,* 159 F.3d at 765 ("The continuing violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations."); *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999) (to allege a continuing violation, "the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy").

*5 The Supreme Court has recently clarified the continuing violation exception in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061 (2002). There, the Court foreclosed the use of the continuing violation doctrine to incorporate untimely claims for discrete discriminatory actions even though they may be related to a timely claim. The Court stated:

First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act.... The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan,* 536 U.S. at ----, 122 S.Ct. at 2072. The Court also held, however, that "an employee need only file a charge within 180 or 300 days of any act that is part of [a] hostile work environment" because "incidents comprising a hostile work environment are part of one unlawful employment practice, [and thus] the employer may be liable for all acts that are part of this single claim." *Id.* at 2075. According to the Court, discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 2073.

Here, Stamford's hiring of Peters as a provisional sanitarian on October 28, 1996 is a discrete employment action. *See id.* (discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire"). Accordingly, the continuing violations theory does not apply to this employment action. Nor does Peters' complaint allege a hostile work environment. Accordingly, Peters' Title VII claim with regard to his failure to be hired as a permanent "Sanitarian II" on October 28, 1996 is time-barred. Moreover, Peters appears to have abandoned his claim of discrimination with regard to his October 28, 1996 hire. *See* Peters Dep. at 138 ("Q. Did anyone discriminate against you in hiring you back in October/November of 1996? A. No, that's not my claim.").

Each paycheck issued to Peters pursuant to the May 6, 1997 letter agreement, until the increase in May 1998, is also a discrete employment action. *See id.* at 2071. In *Bazemore v. Friday,* 478 U.S. 385 (1986) (per curiam), the Supreme Court considered a discriminatory salary structure and held that although the salary discrimination began prior to the date that the act was actionable under Title VII, "[e]ach week's

Case 3:02-cv-01934-SRU   Document 80-2   Filed 08/18/2004   Page 5 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 5

paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII...." 478 U.S. at 395. Like termination, failure to promote, or refusal to hire, the issuance of a discriminatory paycheck is "easily identifiable" and "can be pinpointed in time." *Inglis v. Buena Vista Univ.*, 235 F.Supp.2d 1009, 1023 (N.D.Iowa 2002). Accordingly, the continuing violations theory does not apply to the pay issued to Peters pursuant to the May 6, 1997 letter agreement. However, Stamford's issuance of a discriminatory paycheck to Peters may be actionable even though it is part of a discriminatory pay structure that began outside the relevant limitations period. *See id.; Morgan*, 122 S.Ct. at 2071.

*6 As in *Bazemore,* however, those acts of discriminatory payment that fall within the statutory period are actionable only if the discriminatory pay structure was in place within the 300 day limitations period. *See Bazemore*, 478 U.S. at 395; *Inglis*, 235 F.Supp.2d at 1023-24. Here, Peters filed his administrative claim in September 1998, which is within 300 days of when his pay allegedly ceased to be discriminatory-May 1998. *Cf. Inglis*, 235 F.Supp.2d at 1023-25 (holding that Title VII claim was time-barred where administrative claim not brought within 300 days of discontinuance of discriminatory pay structure). Accordingly, each paycheck Peters received within 300 days of September 22, 1998, i.e., after November 28, 1997, that was less than Gibeault's is actionable under Title VII.

Peters has also presented evidence, namely his statements in interrogatory answers under oath, of other allegedly adverse employment actions that occurred after November 28, 1997. Specifically, Peters attests that Stamford failed to pay him certain stipends on several dates following November 28, 1997. [FN7] *See* Def.'s Ex. 4, Response to ¶ 10. According to *Morgan,* Peters' Title VII claims as to any adverse employment actions that occurred after November 28, 1997 are not time-barred. Thus, those stipends are actionable.

> FN7. Peters also states several other discriminatory and/or retaliatory employment actions allegedly occurred after November 28, 1997. Those include: barring him from certain job duties; confiscating certain of his work materials; harassing him; threatening him; unfairly reprimanding him; denying him training; denying him "due process and protection from harassment"; subjecting him to "racially derogatory statements about competence and qualifications of Black Inspectors." Def.'s Ex. 4. However, Peters does not allege these "adverse employment actions" in his CHRO complaint or the instant complaint. Accordingly, the Court will not address them as claimed "adverse employment actions" that resulted because of discrimination or retaliation.

To sum up: as to Peters' allegation as to Stamford's hiring of him as a provisional sanitarian on October 28, 1996, the Court concludes that this claim is time-barred and must be dismissed. As to Peters' claims regarding the May 6, 1997 letter agreement and the stipends, the Court declines to grant summary judgment on the basis that these claims are time-barred. The Court will address the merits of these claims in the following section.

b. *Merits of Discrimination Claim*

Stamford also argues that Peters has failed to establish a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) as to his Title VII claims.

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a plaintiff alleging disparate treatment based on race in violation of Title VII must first establish a prima facie case of discrimination. To establish a prima facie case of race discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for continued employment, (3) an adverse employment action, and (4) circumstances that give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The burden on the plaintiff of presenting a prima facie case under *McDonnell Douglas* is "minimal." *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir.2000) (internal quotation marks omitted).

Once a prima facie case is established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the plaintiff's termination. *See id.* If the employer does so, the plaintiff bears the "ultimate burden" of proving " 'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." ' *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (quoting *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 143 (2000)); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). A plaintiff's prima facie case plus a showing of pretext may defeat a properly supported summary judgment but will not always do so. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir.2001) (citing *Reeves*, 530 U.S. at 146-48). Instead, the court must determine whether the plaintiff's proof could convince a reasonable fact-finder that discrimination motivated his employer. *See id*. In making this determination, the court should consider the strength of the prima facie case, the proof that defendants' explanation was false, and any other probative proof in the record. *See Allah v. City of New York Dep't of Parks & Recreation*, 47 Fed. Appx. 45, *49, 2002 WL 31119698 at * *3 (2d Cir. Sept. 25, 2002).

*\*7* Stamford contends that it is entitled to summary judgment as to Peters' race discrimination claim because Peters has failed to present sufficient evidence of one of the prongs of his prima facie case, namely, that the adverse employment actions occurred under circumstances giving rise to an inference of race discrimination.

However, the Court finds that Peters has satisfied the minimal burden of proving a prima facie case. Stamford does not challenge whether Peters is a member of the protected class of African-Americans, whether Peters was qualified for continued employment, or whether his lower starting salary and stipends constitute adverse employment actions.

As to the final prong, the Court concludes that Peters has satisfied his "minimal" burden of proving circumstances that give rise to an inference of discrimination. It appears from the record that Peters and Gibeault were similarly situated. They were both temporary health inspector employees and appear to have been of roughly the same capability. As well, they were "promoted" to permanent employee status pursuant to the same May 6, 1997 letter agreement. Finally, Stamford does not dispute that Peters' starting salary was lower than Gibeault's. "A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination...." *McGuinness v. McGuinness c. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir.2001) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001)). Additionally, Stamford has not set forth any non-discriminatory reasons for the pay differential. Accordingly, the Court concludes that Peters has established a prima facie case of race discrimination, and Stamford's motion for summary judgment on this claim is denied.

As to the stipends, however, the Court concludes that Stamford has demonstrated a legitimate, non-discriminatory reason for the delay in paying Peters stipends in 1998, and Peters has not demonstrated that this reason was a pretext for discrimination. In the affidavit of Margaret Murray, annexed as Exhibit 1 to Stamford's submission in support of its motion for summary judgment, Murray states that the stipends referred to by Peters are payments for certificates earned from the State of Connecticut. Murray Aff. at ¶ 21. According to Murray, "[a]ll employees seeking payment for such stipends are required to submit copies of the certificates earned before payment is made." *Id*. at ¶ 25. Murray goes on to state that "[o]n or about October, 1998, the plaintiff's stipends were held up because he declined to provide copies of the certificates he allegedly earned, as such are required to pay the stipend." *Id*. at ¶ 22. After the plaintiff provided the copies of certificates, Murray states, "the plaintiff was paid his stipends on March 11, 1999." *Id*. at ¶ 24.

Peters has not presented evidence sufficient to create a genuine issue of material fact "that the legitimate reason[ ] offered by the defendant were not its true reason[ ], but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. That is, Peters has not presented sufficient evidence to suggest that his failure to timely submit the certificates was not the reason for Stamford's delay in paying him the stipends such that a reasonable fact-finder could conclude that discrimination motivated Stamford with regard to the stipends. *See Lizardo*, 270 F.3d at 103 (citing *Reeves*, 530 U.S. at 146-48).

*\*8* Thus, the Court declines to grant summary judgment as to Peters' Title VII claim of race discrimination regarding paychecks received after November 28, 1997 and pursuant to the May 6, 1997 letter agreement. However, summary judgment is granted as to Peters' claim of race discrimination with regard to the stipends.

*2. Retaliation*

Under Title VII, "[i]t also ... [is] an unlawful employment practice for an employer to discriminate against any of his employees .... because [the employee] opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). "The objective of this section is obviously to forbid an employer from retaliating

Case 3:02-cv-01934-SRU   Document 80-2   Filed 08/18/2004   Page 7 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 7

against an employee because of the latter's opposition to an unlawful employment practice." *Fitzgerald*, 251 F.3d at 358 (quotations and citations omitted). To establish a prima facie case of retaliation, the plaintiff must show: (1) participation in a protected activity; [FN8] (2) the employer knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001); *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir.1999). Once a prima facie case is established, the burden of production shifts to the employer to show that a legitimate, nondiscriminatory reason existed for its action. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001).

> FN8. Making informal complaints such as those to management is a protected activity under Title VII. *Gonzalez v. Bratton*, No. 96 CIV. 6330(VM), 97 CIV. 2264(VM), 2000 WL 1191558, at 12 n. 4 (S.D.N.Y. Aug. 22, 2000).

Peters claims that he opposed and spoke out against certain health inspection activities of his co-workers and that Stamford's hiring him as a provisional, rather than permanent, sanitarian on October 28, 1996, the lower pay he initially received in May 1997, and Stamford's delay in paying him certain stipends were in retaliation for such speech.

As to Peters Title VII retaliation claim regarding Stamford's hiring of him as a provisional sanitarian on October 28, 1996, the Court concludes, as above, that claim is time-barred. As to Peters' Title VII retaliation claim regarding the stipends, the Court concludes that, for the reasons discussed above, even assuming Peters has established a prima facie case of retaliation, Stamford has demonstrated a legitimate, non-discriminatory reason for the delay in paying Peters stipends, and he has not demonstrated that this reason was a pretext for retaliation.

As to Peters' retaliation regarding the paychecks received pursuant to the May 6, 1997 letter agreement, the Court concludes that he has failed to establish a prima facie case of retaliation. As to the first prong of the inquiry, Peters stated in his answers to Stamford's supplemental interrogatories that he opposed and spoke out against selective enforcement practices by the Health Department against minorities. Def.'s Ex. 4, Responses to Interrogatories ¶ 13; Supplemental Responses to Interrogatories ¶ 22. Thus, he appears to have engaged in a protected activity. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998) (stating first prong of inquiry to be whether plaintiff "engaged in protected activity by opposing a practice made unlawful by Title VII"). Peters' evidence also indicates that Stamford knew of the protected activity. As to the third prong, Stamford does not dispute that the lower pay he initially received in May 1997 is an adverse employment action.

*9 As to the final prong, however, Peters has not produced any evidence indicating a causal connection between the protected activity and the adverse employment action. Peters' has not presented any direct evidence of such a causal connection. Nor has he presented any indirect evidence. "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. General Elec. Co.*, 252 F.3d 205, 218 (2d Cir.2001) (internal quotation marks omitted); *see also Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). To the extent Peters provided dates of his protected activity, *see* Def.'s Ex. 4, Responses to Interrogatories ¶ 15; Supplemental Responses to Interrogatories ¶ 19, those dates are not in close temporal proximity with the May 6, 1997 letter agreement or the subsequent discriminatory paychecks. *Cf. Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998) (two months between protected activity and allegedly adverse action sufficient to establish causation); *Phillips v. Bowen*, 278 F.3d 103, 109-11 (2d Cir.2002) (in First Amendment retaliation case, plaintiff presented some direct evidence of retaliation, as well as a close temporal relationship between the adverse action and the retaliatory actions, which, when viewed in combination, gave rise to a reasonable inference of retaliation).

Moreover, the fact that Stamford hired Peters after he voiced his opposition to the work practices belies the fact that his lower salary was attributable to retaliation. *Cf. Rand v. CF Industries*, 42 F.3d 1139, 1147 (7th Cir.1994) (finding no reasonable inference of discrimination where discharged attorney was member of protected class when hired). Accordingly, summary judgment must be granted as to Peters' Title VII retaliation claims with regard to the May 6, 1997 letter agreement and the stipends.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-01934-SRU   Document 80-2   Filed 08/18/2004   Page 8 of 9

Not Reported in F.Supp.2d
2003 WL 1343265 (D.Conn.)
(Cite as: 2003 WL 1343265 (D.Conn.))

Page 8

C. *Section 1983 Claims* [FN9]

> FN9. Again, though it is unclear from the complaint, Peters appears to bring both equal protection race discrimination and First Amendment retaliation claims pursuant to 42 U.S.C. § 1983.

1. *Municipal Liability*

As to Peters' § 1983 claims, Stamford argues that Peters has failed to establish the municipal liability of Stamford. Although a city may not be liable under § 1983 for the unconstitutional actions of its employees under the doctrine of *respondeat superior,* it may be held responsible for its own conduct caused by unconstitutional policies. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation. *See Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125, 137 (2d Cir.1999). A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690. A "custom" is a "persistent and widespread discriminatory practice ... so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (citation omitted.).

*10 The policy or custom "need not be contained in an explicitly adopted rule or regulation," but actions by an official whose edicts or acts represent official policy may result in municipal liability under § 1983. *Wimmer,* 176 F.3d at 137. Thus, if the challenged action is directed by an official with "final policymaking authority," the municipality may be liable even in the absence of a broader policy. *See Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-83 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.")). Such a policy may be inferred from circumstantial proof, but the mere assertion that a municipality has such a policy is generally insufficient to support such an inference. *See Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.*

The Court concludes that H. James Haselkamp, Jr.'s role as the Director of Labor Relations for Stamford, [FN10] and his signing of the May 6, 1997 letter agreement on behalf of Stamford, provide a sufficient basis for holding Stamford liable under § 1983. It appears from the record that Haselkamp had final policymaking authority with regard the hiring of Stamford employees and the terms and conditions of their employment. *See Mandell,* 316 F.3d at 385 ("Here, plaintiff challenges as retaliatory employment decisions made by Gallagher, who, as the Suffolk County police commissioner, had authority to set department-wide personnel policies."); *cf. Looby v. City of Hartford,* 152 F.Supp.2d 181, 188 (D.Conn.2001) (finding no evidence that defendant fire chief had power to create policy with respect to employment decisions); *DeLeon v. Little,* 981 F.Supp. 728, 741 (D.Conn.1997) (finding no municipal liability where defendant had "lack of final decisionmaking authority over employment/personnel matters"). Accordingly, the Court declines to dismiss Peters' § 1983 claims against Stamford based on failure to show municipal liability. [FN11]

> FN10. According to the May 6, 1997 letter, Haselkamp was the Director of Labor Relations for Stamford. In the deposition of Peters, counsel for Stamford describes Haselkamp as the "former director of Human Resources." Peters Dep. at 227.

> FN11. This is without prejudice to Stamford presenting evidence to the Court at trial that Haselkamp did not have such authority. However, this is a question of law for the Court to decide, not a question of fact for the jury to resolve. *See Jett v. Dallas Indep. School. Dist.,* 491 U.S. 701, 737 (1989) (whether a person has final decision-making authority is "a legal question to be resolved by the trial judge before the case is submitted to the jury").

2. *Merits of § 1983 Claims*

As the Court found with regard to Peters' Title VII claims, Peters has established a prima facie case of race discrimination with regard to the May 6, 1997 letter agreement, failed to establish a prima facie of race discrimination with regard to the stipends, and failed to establish a prima facie case of retaliation based on his opposition to certain of the Health Department's enforcement actions. Additionally, as noted above, Peters appears to have abandoned his claim of discrimination with regard to Stamford's hiring of him as a provisional sanitarian on October 28, 1996. *See* Peters Dep. at 138 ("Q. Did anyone discriminate against you in hiring you back in October/November of 1996? A. No, that's not my claim."). Accordingly, only Peters' § 1983 race discrimination claim with regard to the May 6, 1997 letter agreement remains in the case.

D. *CFEPA Claim*

**\*11** The CFEPA provides that a claim of discrimination filed pursuant to Conn. Gen.Stat. § 46a-82 must be filed "within one hundred and eighty days after the alleged act of discrimination...." Conn. Gen.Stat. § 46a-82(e); *see Williams v. Commission on Human Rights & Opportunities*, 777 A.2d 645 (Conn.2001). Accordingly, for the reasons noted as to Peters' Title VII claims, the Court concludes that only Peters' race discrimination regarding paychecks received after March 26, 1998 and pursuant to the May 6, 1997 letter agreement are viable. *See Maloney v. Connecticut Orthopedics, P.C.*, 47 F.Supp.2d 244, 247 (D.Conn.1999) (citing *Malasky v. Metal Prods. Corp.*, 689 A.2d 1145 (Conn.App.1997), *cert. denied*, 241 Conn. 906, 695 A.2d 539 (1997)) (federal law on continuing violations theory is applicable to CFEPA).

V. *Conclusion*

For the foregoing reasons, Stamford's motion for summary judgment [Doc. # 43] is GRANTED IN PART, DENIED IN PART. Only Peters' Title VII race discrimination claims with respect to paychecks received after November 28, 1997, Peters CFEPA race discrimination claims with respect to paychecks received after March 26, 1998, and Peters' section 1983 claims with regard to the May 6, 1997 letter agreement remain in the case.

2003 WL 1343265 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works